1 Melinda Jane Steuer (State Bar No. 216105)
LAW OFFICES OF MELINDA JANE STEUER
2 928 Second Street, Ste. 302
Sacramento, CA 95814
3 Telephone:  (916) 930-0045
Facsimile:   (916) 314-4100
4
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN MARSHALL, an individual<br><br>Plaintiff,<br><br>vs.<br><br>DANIEL P. GALVANONI, an individual; DPG INVESTMENTS, LLC, a foreign limited liability company; DPG GOLDEN EAGLE, LLC, a foreign limited liability company; SPRING TREE LENDING, LLC a foreign limited liability company; SPRING TREE HOLDINGS, LLC; SPRING TREE FINANCIAL, LLC; SKIBO HOLDINGS, LLC, a foreign limited liability company; GERALD T. HUDSPETH, an individual; JEROME L. JOSEPH, an individual; WILLIAM J. BROOKSBANK, an individual; and DOES 1 - 100, inclusive,<br><br>Defendants. | Case No. 2:17-cv-00820-KJM-CKD<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT GERALD T. HUDSPETH'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**<br><br>Date:   July 14, 2017<br>Time:  10:00 AM<br><br>Hon. Kimberly Mueller |

## TABLE OF CONTENTS

Page(s)

I.  INTRODUCTION .................................................................................................................4

II. THE STATE OF CALIFORNIA HAS PERSONAL JURISDICTION OVER HUDSPETH BECAUSE HE ENGAGED IN ACTS AND OMISSIONS WHICH CAUSED HARM TO A CALIFORNIA PLAINTIFF ..................................................................................................6

    A. Hudspeth Actively Engaged and Participated in the Tortious Conduct That Is at Issue in Plaintiff's Complaint .................................................7

    B. Plaintiff's Claims Arise out of and/or Relate to Hudspeth's Communications with Plaintiff .................................................................12

    C. Exercising Jurisdiction Over Hudspeth Is Reasonable ...........................................14

III. CONCLUSION ..................................................................................................................16

Case 2:17-cv-00820-KJM-CKD   Document 16-3   Filed 06/30/17   Page 3 of 16

# TABLE OF AUTHORITIES

Page(s)

**CALIFORNIA CASES**

*Gilmore Bank v. Asia Trust New Zealand Ltd.* (2014)
223 Cal. App.4th 1558 ............................................................................................6, 7

*Hall v. Superior Court* (1983)
150 Cal. App.3d 411 ..................................................................................................15

*Quattrone v. Superior Court* (1975)
44 Cal. App.3d 296 ................................................................................7, 11, 14, 15

*Seagate Technology v. A.J. Kogyo Company, Ltd.* (1990)
219 Cal. App.3d 696 ..............................................................................................8, 14

*Taylor-Rush v. Multitech Corporation* (1990)
217 Cal. App.3d 103 ............................................................................................7, 8, 14

*Vons Companies Inc. v. Seabest Foods Inc.* (1996)
14 Cal.4th 434 ......................................................................................6, 12, 13, 14

**FEDERAL CASES**

*Chunghwa Telecom Global v. Medcom* (ND Cal. 2016)
2016 U.S. Dist. LEXIS 138695 at *16-18 ..............................................................8, 14

*Metropolitan Life Insurance Co. v. Neaves* (9th Cir. 1990)
912 F. 2d 1062 ..........................................................................................................6, 7

*Openwave Systems v. Fuld* (ND Cal. 2009)
2009 U.S. Dist. LEXIS 48206 at *34-36 ....................................................................9

*Trinchitella v. Am. Realty Partners LLC* (ED.Cal. 2016)
2000 U.S. Dist. LEXIS 98265 at *16-17 ................................................................8, 14

**U.S SUPREME COURT CASES**

*Burger King Corp. v. Rudzewicz* (1985)
471 U.S. 462 ..........................................................................................6, 7, 12, 14, 15

*McGee v. International Life Ins. Co.* (1957)
355 U.S. 220 ..............................................................................................................7

**STATUTES**

California Code of Civil Procedure §410.10 ...........................................................6, 7

California Corporations Code § 25401 ..................................................................11, 15

California Corporations Code § 25504 ..................................................................11, 15

California Corporations Code § 25504.1 ...............................................................11, 15

Memorandum of Points and Authorities in Opposition to Defendant Gerald T. Hudspeth's Motion to Dismiss for Lack of Personal Jurisdiction
3

## I. INTRODUCTION

The California courts have consistently held that out of state defendants are subject to the jurisdiction of California courts when they have committed wrongful acts or omissions which they know, or have reason to know, will affect a California resident. Such is the case here, with respect to defendant Gerald Hudspeth ("Hudspeth"). As set forth in detail in the Declaration of John Marshall and supporting exhibits, filed herewith, and discussed below, Hudspeth made material omissions, violated the California securities laws, breached his fiduciary duty, and acted negligently in the course of the numerous communications that he had with plaintiff, a California resident, regarding the investments at issue herein.

The instant matter is an investment fraud case by which defendant Daniel Galvanoni ("Galvanoni"), acting in concert with Hudspeth and the other individual named defendants, induced plaintiff John Marshall ("plaintiff") to invest $300,000.00 into entities that the individual defendants owned and controlled, through false representations, false promises, and material omissions. Specifically, Galvanoni falsely represented to plaintiff that the investments at issue were safe, diversified, and stable, that plaintiff would receive substantial interest and a high rate of return from the anticipated profits of the entities into which he had invested, and that the investment managers were highly experienced. Galvanoni also falsely represented to plaintiff that the monies he invested would be fully secured with plaintiff in first position on the purported collateral.

After plaintiff made his initial investment, Galvanoni, acting in concert with Hudspeth and the other individual defendants, induced plaintiff to make additional investments by making false representations and material omissions regarding the performance of plaintiff's existing investment, and the safety and anticipated performance of the additional proposed investments. Subsequently, plaintiff learned that Galvanoni and the other defendants were utilizing the monies which plaintiff had invested for themselves, their family members, and expenses of other unrelated entities which defendants controlled, rather than to make investments into the automobile sub prime loan business as represented. Plaintiff also learned that the investments

were highly risky, that they were not diversified, that the investment managers had no relevant experience, and that he had no security interest whatsoever with respect to his investments.

As discussed in further detail in plaintiff's declaration and below, Hudspeth had dozens of communications with plaintiff regarding the investments at issue. Hudspeth was actively involved, from the outset, in the solicitation of those investments, and the management of those investments. Similarly, before plaintiff made the initial investment at issue, he had at least one conversation and multiple email exchanges with Hudspeth, in which Hudspeth touted his experience, and the quality, safety, profitability, and anticipated performance of the investments at issue. (Declaration of John Marshall ("Marshall Decl.") ¶ 6; Exhibits 1, 2 & 3)  After plaintiff made his initial investment, and before he invested additional monies, he met with Hudspeth in person, and had many more phone conversations and email exchanges with Hudspeth in which Hudspeth promoted himself and the investments at issue. (Marshall Decl. ¶¶ 8-30; Exhibits 4-36)  Plaintiff continued to have telephone conversations and email exchanges with Hudspeth after he made the last of the investments at issue, and before he learned the true facts, in which Hudspeth made material omissions. (Marshall Decl. ¶¶ 31-33; Exhibit 37)

In the course of the many communications which Hudspeth had with plaintiff, both before and after plaintiff invested, Hudspeth reiterated and confirmed the false representations and false promises which Galvanoni had made. (Marshall Decl. ¶¶ 5-33; Exhibits 3-37) Hudspeth omitted to disclose the true facts concerning his background, the investments at issue, the safety and quality of said investments, the use of plaintiff's monies, and the lack of any enforceable security interest in the purported collateral. (Marshall Decl. ¶¶ 5-33; Exhibits 3-37) Hudspeth acknowledged to plaintiff that he owed him a fiduciary duty, but breached that fiduciary duty and acted negligently by failing to disclose material facts, and by failing to act with reasonable care to ensure that plaintiff's best interests were protected. (Marshall Decl. ¶¶ 5-33; Exhibits 3-37)

//

//

Simply put, Hudspeth was not a minor nor incidental player in the wrongful conduct alleged herein. Hudspeth's efforts to minimize his role in the events at issue are belied by plaintiff's declaration and the supporting exhibits, filed herewith.

For these reasons, and as further discussed below, the State of California has personal jurisdiction over Hudspeth because he personally committed tortious acts and omissions which were a substantial factor in causing harm to a California plaintiff.

## II. THE STATE OF CALIFORNIA HAS PERSONAL JURISDICTION OVER HUDSPETH BECAUSE HE ENGAGED IN ACTS AND OMISSIONS WHICH CAUSED HARM TO A CALIFORNIA PLAINTIFF

A federal district court sitting in diversity has personal jurisdiction over a defendant to the extent constitutionally provided by the forum state. (*Metropolitan Life Insurance Co. v. Neaves*, 912 F. 2d 1062, 1065 (9th Cir. 1990).) The California long arm statute, California Code of Civil Procedure §410.10, provides for personal jurisdiction to the full extent allowed by the requirements of due process as defined by the United States Supreme Court. (*Id.*) Where a plaintiff seeks to assert specific jurisdiction[1] over an out-of-state defendant who has not consented to suit in the forum chosen by the plaintiff, due process is satisfied if the defendant has purposefully directed his activities at a resident of the forum state and the litigation results from alleged injuries that arise out of or relate to those activities. (*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985).)

The California courts and the Ninth Circuit Court of Appeals have established a three prong test for determining whether a plaintiff has alleged sufficient minimum contacts to warrant jurisdiction: 1) the nonresident defendant purposefully directed his activities or consummated some transaction with the forum or a resident thereof; or performed some act by which he purposefully availed himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; 2) the claim arose out of or relates to the defendant's forum related activities; and 3) the exercise of jurisdiction is reasonable. (*Vons Companies Inc. v. Seabest Foods Inc.*, 14 Cal.4th 434, 447 (1996); *Gilmore Bank v. Asia Trust*

---

[1] Plaintiff does not assert that the State of California has general jurisdiction over Hudspeth.

*New Zealand Ltd.*, 223 Cal. App.4th 1558, 1568 (2014); *Metropolitan Life, supra*, 912 F.2d at 1065.) As discussed further below, all three of those factors are satisfied with respect to Hudspeth.

### A. Hudspeth Actively Engaged and Participated in the Tortious Conduct That Is at Issue in Plaintiff's Complaint

California has personal jurisdiction over individuals who cause an effect in the State of California, including against a California resident, by an act or omission committed elsewhere. (*McGee v. International Life Ins. Co.*, 355 U.S. 220, 223-224 (1957); *Taylor-Rush v .Multitech Corporation*, 217 Cal. App.3d 103, 112 (1990); Judicial Council Comment to C.C.P. §410.10(9).) Accordingly, a defendant cannot avoid personal jurisdiction merely because he did not *physically* enter the forum state in connection with the conduct at issue. (*Burger King, supra*, 471 U.S. at 476, emphasis in original.)

In that regard, California state and federal district courts have consistently ruled that out of state corporate officers, who engage in wrongful acts and omissions which adversely affect a California plaintiff, are subject to the specific personal jurisdiction of the California courts.

For example, in *Quattrone v. Superior Court*, 44 Cal. App.3d 296 (1975), the plaintiff alleged that the defendant and others had conspired to defraud him by providing him with falsified financial records relating to the operations of one of its subsidiaries. The defendant argued that there was no personal jurisdiction over him because he did not do any business in California, he received no income from California, and he did not solicit any clients in California. In response, plaintiff submitted evidence that the defendant was responsible for preparing the alleged deceptive reports and that he personally benefitted from the deception. The court held that the plaintiff had shown an adequate factual basis for exercising jurisdiction over the defendant. (*Id*. at 304-305) The court further held that jurisdiction was particularly appropriate because the defendant's conduct was a violation of the California Corporations Code, which was a matter that the State of California treats as exceptional and subjects to special regulation. (*Id*. at 306-307)

Similarly, in *Taylor-Rush, supra*, the court held that California had jurisdiction over an individual officer of a foreign corporation, who had not set foot in California, because he had made false statements and material omissions to the plaintiff at a meeting they had in New York, which had been a factor in causing the plaintiff to execute one of the agreements at issue. (*Taylor-Rush, supra*, 217 Cal. App.3d at 114.) The court explained that, although the defendant had only met with the plaintiff in New York, and there had only been one such meeting, the representations and omissions which he made at that meeting constituted tortious conduct that was purposely directed at a California resident, and had a tortious effect in California, thereby establishing sufficient minimum contacts for personal jurisdiction. (*Taylor-Rush, supra*, 217 Cal. App.3d at 114.)

The court reached the same conclusion in *Seagate Technology v. A.J. Kogyo Company, Ltd.*, 219 Cal. App.3d 696 (1990). In *Seagate*, the court held that California had personal jurisdiction over the president and majority shareholder of a foreign company, because that individual had caused the company to issue a letter of credit to a California plaintiff, which the plaintiff claimed was fraudulent. (*Id.* at 704-706.) The court further held that personal jurisdiction over a corporate officer is appropriate whenever that corporate officer authorizes, directs, or actively participates in wrongful conduct that is directed towards a California resident, or causes another to commit such acts. (*Id.* at 702-703.) The court explained:

> It follows that if a corporate officer may be held personally responsible for causing the corporation to act, that act may be imputed to the officer for purposes of establishing personal jurisdiction over him. (*Id.* at 703.)

Federal district courts are in accord. (See e.g. *Chunghwa Telecom Global v. Medcom*, 2016 U.S. Dist. LEXIS 138695 at *16-18 (N.D. Cal. 2016) [holding that an out of state officer of the defendant corporation was subject to personal jurisdiction in California because he knew about and went along with another individual officer's false representations that were made to the California plaintiff, and did not disclose the true facts in the communications which he had with plaintiff]; *Trinchitella v. Am. Realty Partners LLC*, 2000 U.S. Dist. LEXIS 98265 at *16-17 (E.D. Cal. 2016) [holding that evidence that an individual officer of the defendant entity participated in soliciting the California plaintiff to make the investments at issue through mail,

email, and phone calls amounted to continuing efforts to provide services to the plaintiff in California, thereby establishing that he had purposely availed himself of the privilege of conducting activities in California]; *Openwave Systems v. Fuld*, 2009 U.S. Dist. LEXIS 48206 at *34-36 (N.D. Cal. 2009) [holding that the defendants had purposely availed themselves of the California forum because each of the defendants participated in and implemented the plan that caused the specified misrepresentations and omissions to be made to the California plaintiff, and obtained substantial financial benefits from the activities that were conducted in California, and because the defendant's intentional acts caused plaintiff harm in California].)

Here, Hudspeth, acting on behalf of the entity defendants, made material omissions in the course of the many verbal and written communications that he had with plaintiff regarding the investments at issue. (Complaint ¶¶ 89-93; Marshall Decl. ¶¶ 5-33; Exhibits 3-37) Hudspeth was actively involved in soliciting plaintiff to purchase the investments at issue. (Marshall Decl. ¶¶ 5-30; Exhibits 3-36) Hudspeth represented himself as the manager of the investments at issue. (Marshall Decl. ¶¶ 4-30; Exhibits 1-36) Hudspeth was present when Galvanoni made false representations to plaintiff, but never disclosed the true facts. (Marshall Decl. ¶¶ 6, 15, 16, 34) Further, Hudspeth made material omissions before plaintiff made his initial investment, and before plaintiff made subsequent investments. (Marshall Decl. ¶¶ 5-30; Exhibits 3-36)

Specifically, Galvanoni introduced plaintiff to Hudspeth, and told plaintiff that Hudspeth would be managing the automobile subprime loan business which Galvanoni was promoting to plaintiff. (Marshall Decl. ¶¶ 4-6; Exhibits 1, 2 & 3) Before plaintiff made his initial investment in that business, he had a telephone conversation with Hudspeth, in which Hudspeth himself represented that he would be overseeing the company and its operations. (Marshall Decl. ¶6) In that conversation, Hudspeth represented that: he had 40 years of banking experience; he was a very honest person; he would not take plaintiff's investment lightly; the business operations and loans were very solid; and the proposed investment was a great opportunity. (Marshall Decl. ¶6) Hudspeth omitted to disclose the falsity of Galvanoni's representations, or the risks associated with the proposed investment. (Marshall Decl. ¶6)

After plaintiff made the initial investment at issue, and before he invested any additional monies, he had multiple conversations with Hudspeth. (Marshall Decl. ¶ 9) In those conversations, plaintiff told Hudspeth that he wanted to make sure that the loans that were being acquired with his monies were equal or better quality than Wells Fargo underwritten loans so that he could sell them and get his money back if things went south. (Marshall Decl. ¶9) Hudspeth assured plaintiff that all the loans would be equal or better quality than the loans underwritten by Wells Fargo. (Marshall Decl. ¶9) Hudspeth also reiterated that he had a strong background as a banker and that he was personally overseeing and running the company to make sure it was operating efficiently. (Marshall Decl. ¶9) Hudspeth did not disclose to plaintiff in these conversations, nor at any other time, that the monies plaintiff had invested were not secured. (Marshall Decl. ¶9)

After plaintiff had made his initial investment, and before he invested additional monies, Hudspeth also sent plaintiff multiple emails which purported to describe the terms of the investment in the automobile loan portfolio. (Marshall Decl. ¶¶8, 10, 11, 20, 21, 23, 24, 25, 28, 29, 30; Exhibits 4, 5, 6, 9-36)  For example, Hudspeth represented that the loans had a great yield, that he and DPG investments LLC ("DPG") had cherry picked the best contracts, and that the loans had been purchased for about 70% of their value. (Marshall Decl. ¶ 10; Exhibit 5)

On August 4-5, 2015, after plaintiff had made his initial investment, but before he invested additional monies, plaintiff personally met with Hudspeth in Atlanta. (Marshall Decl. ¶¶12-16; Exhibits 7 & 8)  In those meetings, Hudspeth represented that the proposed investments were high quality, safe, and profitable. (Marshall Decl. ¶¶12- 16)  Hudspeth told plaintiff that his investment would be oversecured. (Marshall Decl. ¶¶12-16)  Hudspeth touted his experience, background, and competence. (Marshall Decl. ¶¶12-16)  Hudspeth was also present when Galvanoni told plaintiff that his investments were secured and would continue to be fully secured, but omitted to disclose to plaintiff that Galvanoni's statements were false. (Marshall Decl. ¶¶ 15 & 16)

Before plaintiff made the final investments at issue, he also had numerous additional communications with Hudspeth. (Marshall Decl. ¶¶18-27; Exhibits 9-36)  Specifically,

1  Hudspeth continued to assure plaintiff that: the subprime automobile loan portfolio into which
2  plaintiff had invested was high quality and solid; he was personally managing and overseeing the
3  company and the automobile loan portfolio, and addressing issues that were created by the prior
4  owners of the company; plaintiff's investments were fully secured; and the loans could readily be
5  sold in order to repay plaintiff in full. (Marshall Decl. ¶¶8-27; Exhibits 9-36)  Hudspeth strongly
6  encouraged plaintiff to remain invested. (Marshall Decl. ¶22)  Hudspeth also told plaintiff that
7  the business was highly profitable.  (Marshall Decl. ¶27)

8  After plaintiff had made his final investments, but before he learned the true facts, he had
9  several more conversations with Hudspeth regarding concerns that plaintiff had about
10 Galvanoni's and DPG's activities. (Marshall Decl. ¶¶ 31-33)  Hudspeth acknowledged those
11 concerns, but omitted to disclose the falsity of Galvanoni's representations and promises, or the
12 true facts about the risks of the investments, or that plaintiff lacked any enforceable security
13 interest. (Marshall Decl. ¶¶31-34)  Instead, Hudspeth continued to assure plaintiff that his
14 monies were secured, that the loans were still good, and that plaintiff could get his money back
15 from selling the loans. (Marshall Decl. ¶¶ 31-33)  Hudspeth also advised plaintiff to do a UCC-1
16 filing to protect his purported security interest, without ever disclosing that the UCC-1 filing was
17 ineffective, and would do nothing to protect plaintiff. (Marshall Decl. ¶33; Exhibit 37)

18 In short, Hudspeth had many verbal and written communications with plaintiff in which
19 he made material omissions, and solicited plaintiff to make the investments at issue herein, and
20 to remain invested.  As the authorities above hold, just one communication between a defendant
21 and a California plaintiff in which the defendant makes material omissions is sufficient to show
22 minimum contacts with the forum state for the purpose of personal jurisdiction. Here there were
23 dozens of such communications in which Hudspeth failed to disclose material facts to plaintiff.
24 Further, Hudspeth's material omissions were made in the course of soliciting investments in
25 securities, which is an area that the State of California has subjected to special regulation.
26 (California Corporations Code §§ 25401, 25504 & 25504.1; *Quattrone, supra,* 44 Cal. App.3d at
27 306-307.)

28

Hudspeth does not dispute that he met with plaintiff in Atlanta or that he had verbal and written communications with plaintiff. Hudspeth has not submitted any evidence as to what was stated in those verbal or written communications. Hudspeth asserts only that he was not involved in the management of any of the entities into which plaintiff invested until October of 2015, and that all of his communications with plaintiff occurred after plaintiff had made his initial investment. In addition, Hudspeth asserts, at page 4 of his brief, that the Atlanta meeting occurred in August of 2016. Hudspeth's assertions are not accurate. Hudspeth was a manager of the entities into which plaintiff invested, from the outset. (Marshall Decl. ¶¶4, 5, 6, 8; Exhibits 1, 2, 3 & 4) Plaintiff discussed the proposed investment with Hudspeth before he made his initial investment. (Marshall Decl. ¶6) The Atlanta meeting occurred in August of 2015, not August of 2016. (Marshall Decl. ¶¶ 12-16; Exhibits 7 & 8) Most significantly, minimum contacts are satisfied by plaintiff's showing that Hudspeth made material omissions in his communications with plaintiff, regardless of when such communications occurred.

**B.     Plaintiff's Claims Arise out of and/or Relate to Hudspeth's Communications with Plaintiff**

A claim need not arise directly from the defendant's forum contacts in order to be sufficiently related to the contact to warrant the exercise of specific jurisdiction. (*Vons, supra,* 14 Cal.4th at 452.) As long as the claim bears a substantial connection to the nonresident's forum contacts, the exercise of specific jurisdiction is appropriate. (*Id.*) Further, the plaintiff does not need to show that the defendant's contacts with California caused his injuries and/or claims in order for there to be specific jurisdiction over that defendant. (*Id.* at 462.) As the *Vons* court explained, such a requirement is inconsistent with the holding in *Burger King, supra,* which states in the disjunctive that jurisdiction is proper when litigation results from alleged injuries that arise out of *or relate to* forum activities. (*Vons, supra,* 14 Cal.4th at 462- 464, emphasis in original) Moreover, the *Vons* court held that the "but for" causation test is not meaningful in situations where there were several concurrent, independent causes of a plaintiff's injury. (*Id.* at 467.) The *Vons* court explained that, just as a tortfeasor does not escape liability for his or her negligence on the ground that the same harm would have occurred without such

negligence, a defendant should not escape jurisdiction simply because a forum contact is but one of several concurrent, independent causes of a plaintiff's injury. (*Id.*) The *Vons* court further explained that the United States Supreme Court has not been concerned with causation in the context of jurisdiction, but rather has spoken of a relationship between the cause of action and the contacts in the forum, and has used relatively broad terms to describe the necessary relationship. (*Id.* at 468, summarizing cases) The *Vons* court concluded that the appropriate test for specific jurisdiction is whether the defendant's forum contacts and the plaintiff's claim are sufficiently related so that it is fair to subject the defendant to jurisdiction in California. (*Id.* at 468 -469.)

Here, the standard set forth by the California Supreme Court in *Vons, supra*, is satisfied because plaintiff's claims arise out of and are related to Hudspeth's material omissions in connection with the communications that Hudspeth had with plaintiff, a California resident. (Complaint ¶¶89-97, 112, 113, 116, 119-129, 138-142; Marshall Decl. ¶¶2-34; Exhibits 1-37) Plaintiff has also alleged in the Complaint, and stated in his declaration, that he relied upon Hudspeth, and the representations and omissions that Hudspeth made, in making the investments at issue herein, and in remaining invested. (Complaint ¶¶ 52, 96, 97, 129; Marshall Decl. ¶34) Accordingly, the causes of action against Hudspeth for material omissions, violations of the California securities laws, breaches of fiduciary duty, and negligence are related to and arise out of Hudspeth's forum related conduct in omitting to disclose material facts to plaintiff in the many communications which they had.

Hudspeth's assertion that personal jurisdiction may only be exercised over a nonresident defendant if that defendant was the sole cause of the harm is not supported by authority and is contrary to the California Supreme Court's decision in *Vons, supra*. As the *Vons* court held, the fact that there are other tortfeasors whose actions and omissions were also a substantial factor in causing the alleged harm is not a valid basis for excusing Hudspeth from either liability or personal jurisdiction. Indeed, multiple courts have held that personal jurisdiction is appropriate over nonresident individuals who engaged or participated in tortious acts and omissions regarding the transactions at issue, which were directed toward a California plaintiff,

1 notwithstanding the existence of other defendants who were also alleged to have caused harm to
2 the plaintiff. (*Seagate, supra*, 219 Cal. App.3d at 702-706; *Taylor-Rush, supra*, 217 Cal. App.3d
3 at 114; *Quattrone, supra*, 44 Cal. App.3d at 304-307; *Chunghwa, supra*, 2016 U.S. Dist. LEXIS
4 at *16-18)

Hudspeth also asserts that the Complaint only alleges reliance upon Galvanoni.
Hudspeth's assertion is not accurate. The Complaint contains multiple allegations that plaintiff
relied upon Hudspeth with respect to the investments at issue. (Complaint ¶¶ 52, 96, 97, 129)
Further, plaintiff has attested that he relied upon Hudspeth. (Marshall Decl. ¶34)

### C. Exercising Jurisdiction Over Hudspeth Is Reasonable

Once it has been decided that a defendant purposefully established minimum contacts within the forum state, those contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with fair play and substantial justice. (*Burger King, supra*, 471 U.S. at 476.) The factors to be considered include: the extent of the defendant's purposeful interjection into the forum state; the burden on the defendant of defending in the forum state; the extent of the conflict with the sovereignty of the defendant state; the forum state's interest in adjudicating the dispute; the most efficient resolution of the controversy; the importance of the forum to the plaintiff's interest in convenient and effective relief; and the existence of an alternative forum. (*Id.* at 476 - 477; *Vons, supra*, 14 Cal.4th at 476; *Chunghwa, supra*, 2016 U.S. Dist. LEXIS at *18-20; *Trinchitella, supra*, 2000 U.S. Dist. LEXIS 98265 at *21.) Where a defendant who has purposefully directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable. (*Burger King, supra*, 471 U.S. at 477; *Vons, supra*, 14 Cal.4th at 477.) Further, such considerations usually may be accommodated through means short of finding jurisdiction unconstitutional. (*Burger King, supra*, 471 U.S. at 477; *Vons, supra*, 14 Cal.4th at 477.)

Here, Hudspeth has not provided any basis as to why exercising jurisdiction over him would be unreasonable, other than to reiterate his inaccurate assertions that he did not purposely

1  direct any activities at plaintiff. Accordingly, Hudspeth has failed to satisfy his heavy burden of
2  showing that jurisdiction would be unreasonable.

3  Further, it is apparent, from applying the relevant factors, that it would not be
4  unreasonable for California to exercise jurisdiction over Hudspeth. As discussed above,
5  plaintiff's evidence shows that Hudspeth purposefully interjected himself into California through
6  the many communications that he had with plaintiff and his material omissions concerning the
7  investments at issue.

8  The burden upon Hudspeth is minimal because he already has California counsel who is
9  concurrently representing all of the other nine defendants. Further, the burden upon plaintiff to
10  litigate in Georgia would be far greater than the burden upon Hudspeth of litigating in
11  California, because it would require plaintiff to litigate virtually identical claims in multiple fora,
12  thereby exposing him to greater expense and the possibility of conflicting rulings of law and fact.
13  This is particularly true here, because Hudspeth is the only one of the ten defendants who claims
14  that he should be sued in Georgia.

15  Hudspeth has not identified any conflict between Georgia and California law that would
16  impact this dispute.

17  California has a strong interest in adjudicating this dispute because of its public policy, as
18  set forth by statute and judicial decision, of protecting its citizens from fraud and deception in
19  securities transactions such as the ones at issue herein, and because California is presumed to
20  have a manifest interest in providing its residents with a convenient forum for redressing injuries
21  inflicted by out of state defendants. (California Corporations Code §§25401, 25504 & 25504.1;
22  *Hall v. Superior Court,* 150 Cal. App.3d 411, 417-419 (1983); *Quattrone, supra,* 44 Cal. App.3d
23  at 306-307; *Burger King, supra,* 471 U.S. at 473.) As previously discussed, plaintiff is a
24  California resident. (Marshall Decl. ¶ 2)

25  There are an equal or greater number of witnesses in California and/or Arizona than there
26  are in Georgia.

27  It is clearly more efficient to resolve the controversy in one proceeding in California, than
28  it would be to require plaintiff to engage in multiple proceedings in multiple states. Further, the

California forum is important to plaintiff's interest in convenient and effective relief because it allows him to litigate all of his claims in one proceeding, and in the state in which he resides.

Lastly, Hudspeth has not identified an alternate forum in which all ten defendants would be subject to jurisdiction.

Consequently, Hudspeth has failed to meet his burden of showing that the exercise of jurisdiction over him would be unreasonable.

### III. CONCLUSION

For the foregoing reasons and authorities, plaintiff John Marshall respectfully requests that this honorable court deny defendant Gerald Hudspeth's motion to dismiss for lack of personal jurisdiction.

Dated: June 28, 2017          **LAW OFFICES OF MELINDA JANE STEUER**

By: _____
Melinda Jane Steuer
Attorney for Plaintiff