UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN MARSHALL, | No. 2:17-cv-00820-KJM-CKD |
| Plaintiff, | |
| v. | ORDER |
| DAN P. GALVANONI, et al., | |
| Defendants. | |

       A disgruntled investor sues six companies and four individuals over an investment debacle that he says cost him $300,000. Defendant Dan Galvanoni allegedly used puffery and lies to lure plaintiff John Marshall to invest in his company's loan portfolio and then broke his promise to pay plaintiff back or acknowledge plaintiff's priority investor status. Before the court are four motions to dismiss: Three individual defendants move to dismiss for lack of personal jurisdiction and defendants jointly move to dismiss certain claims as facially implausible. The court held a hearing on all four motions. July 14, 2017 Hr'g Mins., ECF No. 21. For the reasons below, the court GRANTS all four motions and DISMISSES plaintiff's complaint, with leave to amend.

I.      BACKGROUND

    A.      Plaintiff's Allegations

    Plaintiff sues a group of Arizona and Georgia companies and individual executives for misrepresenting their car loan portfolio, fraudulently inducing plaintiff to invest in it and then refusing to honor his repayment rights. Compl. ¶¶ 2-11, 28-32, ECF No. 2 at 15-70. Defendant Galvanoni, as the head of the fraudulent operation, enticed plaintiff to invest in the portfolio after erroneous assurances that plaintiff "would earn substantial interest[] and there would be enough collateral to repay him in full if the loans defaulted." *Id*. ¶¶ 28-29. Relying on these assurances, plaintiff invested a total of $300,000 in several intervals between June 2015 and March 2016. *Id*. ¶¶ 36, 38, 43. Because Galvanoni continuously and falsely reported the portfolio's health, and because Galvanoni and his colleagues held themselves out as having extensive investment knowledge, "plaintiff reposed great trust and confidence" in them and continued investing against his own intuition. *Id*. ¶¶ 35-36, 39, 40, 42, 52. Each investment plaintiff made was based on verbal assurances rather than signed agreements. *Id.* ¶ 45.

    Later plaintiff discovered that Galvanoni, despite their agreement, had neither invested plaintiff's funds in car loans nor executed the documents giving plaintiff a legally enforceable interest. *Id*. ¶¶ 46, 47, 50. Instead, Galvanoni siphoned plaintiff's money off to Galvanoni's family and staff. *Id.* ¶ 46. Plaintiff then tried to liquidate his investments, but has yet to receive a single payment. *Id.* ¶¶ 48, 54.

    B.      Parties, Claims and Motions

    On March 9, 2017, plaintiff filed suit in state court and defendants then removed the case to federal court based on diversity jurisdiction. Removal, ECF No. 2 (filed April 18, 2017). Plaintiff names as defendants five related companies: DPG Investments, LLC; DPG Golden Eagle, LLC; Spring Tree Lending, LLC; Spring Tree Holdings, LLC; and Skibo Holdings, LLC. Compl. ¶¶ 2-9. He also sues the following four executives: Daniel Galvanoni, Gerald Hudspeth, Jerome Joseph and William Brooksbank. *Id.* ¶¶ 2-11.

    Plaintiff brings the following claims, numbered here as in the complaint. He brings nine claims against the companies and Galvanoni: (1) Fraud: Intentional misrepresentation;

(2) Negligent misrepresentation; (3) Fraud: False promise; (5) Violation of California Corporations Code section 25401[1]; (10) Breach of oral contract; (11) Breach of the implied covenant of good faith and fair dealing; (12) Rescission; (13) Money had and received; and (14) Money lent. *Id.* ¶¶ 33-87, 104-110, 144-68. He brings five additional claims against all defendants: (4) Omissions; (6 & 7) Violations of California Corporations Code sections 25504[2] and 25504.1[3]; (8) Breach of fiduciary duty; and (9) Professional negligence. *Id.* ¶¶ 88-103, 111-43.

Individual defendants Brooksbank, Joseph and Hudspeth move to dismiss under Federal Rule of Civil Procedure 12(b)(2) for lack of specific personal jurisdiction. Brooksbank Mot., ECF No. 9; Joseph Mot., ECF No. 10; Hudspeth Mot., ECF No. 11. All named defendants jointly move to dismiss claims one through four, eight and nine as facially implausible under Federal Rule of Civil Procedure 12(b)(6). Joint Mot., ECF No. 7. Plaintiff opposes all motions. Joint Opp'n, ECF No. 16; Opp'n to Brooksbank, ECF No. 15-2; Opp'n to Joseph, ECF No. 15-1; Opp'n to Hudspeth, ECF No. 15-3.

II.     PERSONAL JURISDICTION

    A.    Legal Standard

A federal court must ensure it has personal jurisdiction over every party. *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007). Defendants Joseph, Brooksbank and Hudspeth each contest the court's personal jurisdiction over them

---

[1] "It is unlawful for any person to offer or sell a security in this state . . . by means of any written or oral communication that includes an untrue statement of a material fact or omits to state a material fact necessary to make the statements made, in the light of the circumstances under which the statements were made, not misleading." Cal. Corp. Code § 25401.

[2] This section attaches joint and several liability over every person who directly or indirectly controls or materially aids "the act or transaction constituting the violation." Cal. Corp. Code § 25504. Here, the relevant alleged violation is selling securities through material misstatements or omissions. Cal. Corp. Code § 25401.

[3] "Any person who materially assists in [] violat[ing specified code sections] . . . . with intent to deceive or defraud, is jointly and severally liable with any other person liable under this chapter for such violation." Cal. Corp. Code § 25504.1.

because they say all relevant conduct happened outside California, and they live and work outside California.

When a defendant moves to dismiss for lack of personal jurisdiction it is the plaintiff's burden to show jurisdiction is appropriate. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (citation omitted). The court asks whether [the plaintiff's] pleadings make a prima facie showing of personal jurisdiction." *Id.* (citation and quotation marks omitted). Where the defense presents evidence that contradicts the jurisdictional allegations in the complaint, the plaintiff must go beyond the pleadings and present affirmative proof of personal jurisdiction through affidavits and declarations. *AT&T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996). So although the complaint's uncontroverted allegations are presumed true, *id.* at 588, the plaintiff cannot "simply rest on the bare allegations of its complaint," *Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977).

To assess personal jurisdiction, a federal court applies the test of the state in which it sits. *Schwarzenegger*, 374 F.3d at 800 (citation omitted). California's test, which mirrors federal due process requirements, mandates "minimum contacts" with California. *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945) (citation omitted); *Schwarzenegger*, 374 F.3d at 800-01 (citation omitted); *see also* Cal. Code Civ. P. § 410.10 ("A court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States."). There are two avenues through which a plaintiff may establish the requisite minimum contacts, general jurisdiction or specific jurisdiction. *See Helicopteros Nacionales de Colombia S.A. v. Hall*, 466 U.S. 408, 414 nn.8-9 (1984). Plaintiff here relies only on the latter.

California's specific personal jurisdiction test requires plaintiff to show (1) each defendant purposefully directed his or her activities to California or purposefully availed himself of California's forum, and (2) plaintiff's claims arise from or relate to those activities. *Schwarzenegger*, 374 F.3d at 802. If plaintiff makes both showings, the burden shifts to defendants to show haling them into court here would be unreasonable. *Id.*

B. Discussion

Plaintiff alleges on information and belief that "Galvanoni, Hudspeth, Brooksbank, and Joseph solicited and/or effected the securities transactions" he made with them from June 2015 to March 2016. Compl. ¶ 51. Hudspeth, Brooksbank and Joseph argue the court does not have personal jurisdiction over them because they each live and work outside California, each works for a company that has a limited California presence, their alleged correspondence with plaintiff was sent from outside California, and the bulk of plaintiff's complaint centers on Galvanoni's conduct directed to California and not theirs. *See* Brooksbank Mot. Ex. 1 (Brooksbank Decl.) ¶ 3, ECF No. 9 at 15-20 (lives and works in Arizona); Joseph Mot. Ex. 1 at 1 (Joseph Decl.) ¶¶ 3, 9, ECF No. 10 (same); Hudspeth Mot., Ex. 1 (Hudspeth Decl.) ¶¶ 3, 9, ECF No. 11 (lives and works in Georgia). Establishing purposeful "direction" or "availment," therefore, requires plaintiff to show these defendants committed intentional acts aimed at California that they knew would likely cause harm here, and show a causal connection between those intentional acts and the claims against them. *Schwarzenegger*, 374 F.3d at 802-03.

As explained below, plaintiff has done neither. The complaint pleads it was Galvanoni's actions alone that solicited plaintiff's trust and funds. *See, e.g.*, Compl. ¶ 28 ("Galvanoni solicited [p]laintiff to make the first of the investments at issue herein"); *id.* ¶ 39 ("Galvanoni convinced [p]laintiff to stay invested and to invest additional monies"); *id.* ¶ 40 (plaintiff "agreed . . . to invest an additional $100,000.00 into DPG/DPG-GE, based on the representations and assurances from D. Galvanoni and other personnel employed by [d]efendants"). The sporadic references to Hudspeth, Brooksbank and Joseph as well as "other [unidentified] personnel employed by defendants," without any allegations showing the three blamed individuals' involvement, is too conclusory and vague to invoke this court's power over them. *See Amba Mktg. Sys.*, 551 F.2d at 787 (plaintiff cannot "simply rest on the bare allegations of its complaint").

In his opposition briefs, plaintiff attempts to link his bare jurisdictional allegations to emails each defendant sent to him in California. Opp'n to Brooksbank at 6-11; Opp'n to Joseph at 5-10; Opp'n to Hudspeth at 7-11. But plaintiff has not shown this correspondence

caused his harm, and as discussed below, the emails contradict his allegation that these defendants were involved in soliciting his investments. For example, plaintiff attaches an email he sent to all three defendants months after his final investment that states, "Joe [Joseph] and others, I just want to give a little bit of background to what has taken place over this last year and half. Dan [Galvanoni] solicited me to invest and loan/invest money to him . . . ," and then details plaintiff's negotiations with Galvanoni. *See* Pl.'s Decl. Ex. 2 at 3, Opp'n to Joseph (email dated Aug. 7, 2016). This email undermines plaintiff's allegation that Hudspeth, Joseph and Brooksbank solicited plaintiff's investments. It suggests instead plaintiff's view that they were unaware of his negotiations with Galvanoni and needed to be briefed.

Individualized arguments plaintiff makes regarding each defendant, discussed below, also do not establish personal jurisdictional over these three defendants.

1. Joseph

Plaintiff faults Joseph for his fraudulent involvement in plaintiff's investments, yet the first interaction they had was by email initiated by plaintiff four months after plaintiff's final investment. Joseph Opp'n, Ex. 1 at 2 (email dated July 21, 2016). Plaintiff's opening line in the email to Joseph reads, "you may not be up to speed. I have loaned/invested $300,000 plus. My money was to go into loans and be secured by those loans." *Id*. Plaintiff's own words suggest Joseph did not solicit his investments. Galvanoni's email to plaintiff that same day said, "Joe [Joseph] is handling the info for you and all our shareholders now." *Id.* at 3. Joseph's only communications with plaintiff related to plaintiff's claims were as a conduit, relaying messages from Galvanoni after plaintiff's initial investment. Joseph Decl. ¶¶ 12-13. While Joseph had some substantive discussions with plaintiff in 2015, those discussions were about business unrelated to this jurisdiction analysis. *Id*. ¶ 10. Plaintiff has not established this court's power over Joseph.

2. Brooksbank

Plaintiff hinges his jurisdictional arguments as to Brooksbank on the "multiple iterations of a draft agreement" Brooksbank emailed him that "purported to memorialize the terms of [plaintiff's] investment." Compl. ¶ 34. Although plaintiff cites emails as examples of

6

Brooksbank's purposefully directing harmful conduct to him in California, several of the emails plaintiff cites do not originate with Brooksbank; rather, they were forwarded by Galvanoni. *See* Brooksbank Opp'n at 5 (citing Pl.'s Decl. Exs. 1-4). Even if Brooksbank had sent these emails, plaintiff has not shown how they induced plaintiff's investments. Plaintiff admits he never signed the draft agreements Brooksbank sent. Compl. ¶ 34. Plaintiff argues he nonetheless relied on the information and projections Brooksbank also emailed, Pl.'s Decl. ¶ 12, attached to Brooksbank Opp'n, but these emails show Brooksbank merely packaging projections as Galvanoni's messenger, not as an independent decision-maker. *See, e.g.*, *id.*, Ex. 5 (email to plaintiff stating "Dan [Galvanoni] thought you might offer a 10% cumulative preferred coupon . . . I suggest you discuss the possible range of terms for each investor with Dan."). Plaintiff has not adequately shown his investment decisions were attributable to any of Brooksbank's activity directed to California. Plaintiff has not established this court's jurisdiction over Brooksbank.

    3. <u>Hudspeth</u>

Plaintiff's allegations as to Hudspeth are likewise unavailing. Although plaintiff alleges Hudspeth, along with the others, initially solicited plaintiff's investment, Compl. ¶ 51, Hudspeth joined the entities' management team only in October 2015, months after plaintiff made his initial investments. Hudspeth Decl. ¶¶ 9-11. Plaintiff also alleges he "talked to Hudsepth and other personnel employed by [d]efendants about the status of his investments in early 2016." Compl. ¶ 41. But by this time plaintiff had already made his investments; his after-the-fact status checks with Hudspeth do not show Hudspeth purposefully directed potentially harmful activity to plaintiff in California, let alone that this activity spawned plaintiff's claims against him. Plaintiff has not established this court's jurisdiction over Hudspeth.

 C. <u>Conclusion</u>

In sum, based on the current allegations, the court cannot exercise personal jurisdiction over Joseph, Brooksbank or Hudspeth.

III. FAILURE TO STATE A CLAIM

The remaining defendants, Galvanoni and the five named companies, jointly move to dismiss plaintiff's claims for fraud, misrepresentation, breach of fiduciary duty and professional negligence.

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a claim "based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). Although a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), that statement "must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). A plausible claim requires more than "an unadorned, the-defendant-unlawfully-harmed-me accusation" or "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Id*. Although the court must construe the complaint in the plaintiff's favor and accept all factual allegations as true, *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007), the court need not accept as true "'a legal conclusion couched as a factual allegation,'" *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (citation omitted), or "allegations that contradict matters properly subject to judicial notice" or to material referenced in the complaint. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988-89 (9th Cir. 2001).

Defendants seek to dismiss plaintiff's fraud-based claims under the economic loss doctrine, plaintiff's fiduciary breach claim for failing to allege a fiduciary relationship and plaintiff's professional negligence claim for failing to allege any professional services agreement. Joint Mot. at 2-7, 10-14.

A. Economic Loss Doctrine

Defendants argue the economic loss doctrine bars plaintiff's fraud-based claims of intentional and negligent misrepresentation, false promises, and fraudulent omissions because their factual underpinnings are the same as plaintiff's breach of contract claim. *Id*. at 2-6. Plaintiff argues the doctrine does not apply because defendants' alleged fraudulent acts are distinct from their contractual obligations. Joint Opp'n at 9.

Put simply, "the economic loss rule 'prevent[s] the law of contract and the law of tort from dissolving one into the other.'" *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979, 988 (2004) (rule precludes recovery for "purely economic loss due to disappointed expectations, unless [the plaintiff] can demonstrate harm above and beyond a broken contractual promise.") (citation omitted). The doctrine's underlying tenet is that tort remedies are inappropriate vehicles to enforce contractual agreements. When a plaintiff links its fraud claim to a party's alleged failure to comply with a contractual duty, the proper claim is breach of contract, not fraud.

As with most rules, there are exceptions. As relevant here, a plaintiff can recover in both tort law and contract law where the defendant breaches a legal duty in tort that is independent of the breached contract. *Id.* at 989-91. *Robinson Helicopter*, which first recognized this exception, involved a helicopter manufacturers' contract breach, in the making of nonconforming clutches, and a related tortious act of issuing false certificates that the clutches did in fact conform to specifications. *Id.* The court held the economic loss rule did not bar the tort law claim because issuing the false certificates was unquestionably an "affirmative intentional misrepresentation" that amounted to a "tortious conduct [] separate from the breach itself[.]" *Id.* at 991.

*Robinson Helicopter*'s economic loss rule exception is narrow. To benefit from the exception, the tortious claim must allege an affirmative misrepresentation distinct from the contract breach, and the claim must allege damages beyond what the contract breach caused. *Id.* at 893; *Cty. of Santa Clara v. Atl. Richfield Co.*, 137 Cal. App. 4th 292, 328 (2006) (interpreting *Robinson Helicopter*); *cf. BNSF Ry. Co. v. San Joaquin Valley R.R. Co.*, No. 1:08-cv-01086, 2011 WL 3328398, at *9 (E.D. Cal. Aug. 2, 2011) (dismissing fraud claim under economic loss doctrine where misrepresentation claim was an "inseparable component" of the alleged contract breach).

Here, because plaintiff's fraud and contract claims as pled are inseparable, the *Robinson Helicopter* exception does not apply. Plaintiff's fraud claims allege defendants fraudulently induced plaintiff to invest in their car loan portfolio through affirmative and

intentional misrepresentations.  Unlike in *Robinson Helicopter*, where the fraud claim relied on the separate affirmative act of issuing false compliance certificates that was distinct from the act that breached the contract, namely the making of nonconforming helicopter clutches, plaintiff's fraud claims here duplicate his contract claims: The legal theory, factual allegations and relief sought under his fraud-based tort claims mirror those sought under his breach of contract claims. *See* Compl. ¶¶ 147(A)-(E); 56(A)-(E), (H); 75(A)-(F); 93(B), (E), (H), *and id.* ¶¶ 70, 87, 103, 149 (seeking identical relief on all claims).  The economic loss rule applies to bar the non-contract claims.  The court DISMISSES claims 1, 2, 3 and 4.

Defendants alternatively move to dismiss plaintiff's fraud-based claims for not meeting Rule 9(b)'s heightened pleading standard.  Joint Mot. at 7-9.  Because the economic loss rule bars each fraud-based claim, the court does not reach this Rule 9(b) analysis.

B.  Professional Negligence

Defendants also move to dismiss plaintiff's professional negligence claim, arguing defendants never provided or agreed to provide professional services.  Plaintiff contends defendants implicitly agreed to provide professional brokering services.  Joint Opp'n at 19.

To withstand dismissal, plaintiff must allege defendants provided specified professional services that created a duty to satisfy a standard of care under tort law.  *In re Daisy Sys. Corp.*, 97 F.3d 1171, 1175 (9th Cir. 1996) ("To establish a claim for professional negligence, a plaintiff must demonstrate [] the duty of the professional to use such skill, prudence and diligence as other members of his profession commonly possess and exercise[.]") (citing *Jackson v. Johnson*, 5 Cal. App. 4th 1350, 1355 (1992)).

Plaintiff alleges defendants "held themselves out to be professionals in [] securities, investments, banking and financing" and that plaintiff retained them for these services. Compl. ¶¶ 137-38.  Merely alleging defendants advertised superior knowledge in a given field does not show they agreed to provide professional services imposing a duty under tort law.  *Kim v. Westmoore Partners, Inc.*, 201 Cal. App. 4th 267, 284 (2011) (emphasizing focus is on what parties agreed to, not on what services parties offer generally).  Plaintiff has pled neither the requisite agreement to provide professional services nor the details to support a claim such

services were provided. Rather, the complaint shows only a creditor-debtor investment agreement with defendants. *See* Compl. ¶ 145. Creditor-debtor relationships do not trigger the tort law duties required for a professional negligence claim. *See Kim*, 201 Cal. App. 4th at 284 (dismissing professional negligence claim where plaintiff and defendant had creditor-debtor relationship). Because plaintiff's professional negligence claim essentially restates his contract claim and does not allege a distinct agreement to provide professional investment broker services, the court DISMISSES claim 9.

### C. Fiduciary Claim

Defendants argue plaintiff's fiduciary breach claim fails as matter of law because defendants owed plaintiff no such duty. A fiduciary relationship is "any relation existing between parties to a transaction wherein one of the parties is in duty bound to act with the utmost good faith for the benefit of the other party." *Cleveland v. Johnson*, 209 Cal. App. 4th 1315, 1338 (2012) (citation and quotation marks omitted). To withstand dismissal, plaintiff must show either defendants' knowing agreement to become a fiduciary, or the law's involuntary imposition of a fiduciary duty upon defendants. *City of Hope Nat'l Med. Ctr. v. Genentech, Inc.*, 43 Cal. 4th 375, 386 (2004).

Only certain legal relationships trigger automatic fiduciary duties. *See Gilman v. Dalby*, 176 Cal. App. 4th 606, 614 (2009). Examples include joint ventures, partnerships and agency relationships. *Genentech*, 43 Cal. 4th at 386. A plaintiff cannot generally "turn an ordinary breach of contract claim into a breach of fiduciary duty." *Gilman*, 176 Cal. App. 4th at 614 (citing *Wolfe v. Superior Court*, 107 Cal. App. 4th 25, 30 (2003)). Fiduciary duties attach to a contractual relationship only when the relationship requires that the fiduciary act with undivided loyalty on behalf of the beneficiary and never profit or advantage from the parties' dealings. *See Wolfe*, 107 Cal. App. at 30.

Here, plaintiff has shown only a creditor-debtor relationship, which gives rise to no automatic fiduciary obligations. He pleads no greater statement of trust and expertise than is expected in any creditor relationship. *See, e.g.*, Compl. ¶ 145 (alleging he agreed to invest money with defendants in exchange for a secured interest and annual payments of his principal plus

interest). "Every contract requires one party to repose an element of trust and confidence in the other to perform." *Wolf*, 107 Cal. App. 4th at 31. In his opposition, plaintiff embellishes his fiduciary relationship to defendants, characterizing himself as an equity owner and non-managing partner of the defendant entities, yet he cites no plausible support for this characterization. *See* Joint Opp'n at 17. He also attempts to characterize Galvanoni as a "promotor," a role which can induce unique fiduciary obligations, *see id.*, yet nowhere in the complaint does plaintiff plausibly support this conclusory label.

The court DISMISSES claim 8.

IV. LEAVE TO AMEND

Plaintiff has requested leave to amend his complaint. The federal rules mandate that leave to amend "be freely given when justice so requires." Fed. R. Civ. P. 15(a). "This policy is to be applied with extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (citation and quotation marks omitted). Before granting leave, a court considers any potential bad faith, delay, or futility regarding the proposed amendment, and the potential prejudice to the opposing party. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Smith v. Pac. Prop. Dev. Co.*, 358 F.3d 1097, 1101 (9th Cir. 2004). "The party opposing amendment bears the burden of showing prejudice." *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 187 (9th Cir. 1987). Absent prejudice, there is a strong presumption in favor of granting leave to amend. *Eminence Capital*, 316 F.3d at 1052.

Here, plaintiff may be able to cure his pleading deficiencies as to each claim and each defendant this order dismisses and defendants have not shown any undue prejudice that allowing amendment may cause. Accordingly, the court will GRANT plaintiff fourteen days to amend his complaint.

The following eight claims as currently pled may be included in any amended complaint: Violation of California Corporations Code §§ 25401, 25504, 25504.1 (claims 5, 6, 7); Breach of oral contract (claim 10); Breach of the implied covenant of good faith and fair dealing (claim 11); Rescission (claim 12); Money had and received (claim 13); Money lent (claim 14). The following defendants also may remain as named: DPG Investments, LLC; DPG Golden

12

Eagle, LLC; Spring Tree Lending, LLC; Spring Tree Holdings, LLC; Skibo Holdings, LLC; and Daniel P. Galvanoni.

V. <u>CONCLUSION</u>

The court GRANTS defendants' motions to dismiss as follows, in that it:

- DISMISSES the entire complaint against Joseph, Brooksbank and Hudspeth for lack of specific personal jurisdiction;
- DISMISSES claims 1, 2, 3 and 4 under the economic loss doctrine because plaintiff's fraud-based claims and contract claims derive from identical conduct;
- DISMISSES claim 9 because the complaint does not adequately show defendants affirmatively agreed to provide professional services;
- DISMISSES claim 8 because the complaint does not establish the requisite fiduciary relationship; and
- GRANTS plaintiff fourteen days to amend claims 1, 2, 3, 4, 8 and 9, as well as his jurisdictional allegations as to defendants Joseph, Brooksbank and Hudspeth.

This resolves ECF Nos. 7, 9, 10, 11.

IT IS SO ORDERED.

DATED: November 7, 2017.

_____
UNITED STATES DISTRICT JUDGE