CLARK HILL LLP
Bradford G. Hughes (SBN 247141)
bhughes@ClarkHill.com
Tiffany B. Hunter (SBN 306382)
thunter@ClarkHill.com
1055 West Seventh Street, Suite 2400
Los Angeles, CA 90017
Telephone:   (213) 891-9100
Facsimile:    (213) 488-1178

KAUFMAN & FORMAN, P.C.
Alex B. Kaufman (SBN GA 136097)
abk@kauflaw.net
Matthew D. Treco (SBN GA 802181)
mdt@kauflaw.net
8215 Roswell Rd., Building 800
Atlanta, Georgia 30350-6445
Telephone: 770.390.9200
Facsimile: 770.395.6720

Attorneys for Defendants DANIEL P. GALVANONI; DPG
INVESTMENTS, LLC; DPG GOLDEN EAGLE, LLC;
SPRING TREE LENDING, LLC; SPRING TREE
HOLDINGS, LLC; SPRING TREE FINANCIAL, LLC; and
SKIBO HOLDINGS, LLC

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN MARSHALL, an individual,<br><br>Plaintiff,<br><br>v.<br><br>DANIEL P. GALVANONI, an individual; DPG INVESTMENTS, LLC, a foreign limited liability company; DPG GOLDEN EAGLE, LLC, a foreign limited liability company; SPRING TREE LENDING, LLC, a foreign limited liability company; SPRING TREE HOLDINGS, LLC, a foreign limited liability company; SPRING TREE FINANCIAL, LLC, a foreign limited liability company; SKIBO HOLDINGS, LLC, a foreign limited liability company; GERALD T. HUDSPETH, an individual; JEROME L. JOSEPH, an individual; WILLIAM J. BROOKSBANK, an individual; AND DOES 1-100, inclusive,<br><br>Defendants. | Case No. 2:17-CV-00820-KJM-CKD<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PROTECTIVE ORDER RE: THIRD PARTY DEPOSITIONS SUBPOENAS TO: (1) ARMSTRONG & ASSOCIATES INSURANCE SERVICES; (2) SEAN BOYD; (3) BRIGHAM YOUNG UNIVERSITY; (4) UNIVERSITY OF CALIFORNIA BERKLEY; (5) DANIEL C. COHEN; (6) VUJADIN JOVIC; (7) SUSAN MARSHALL; & (8) TODD OWEN**<br><br>Date:        June 5, 2019<br>Time:        10:00 a.m.<br>Courtroom:  Courtroom 24, 8th Floor<br><br>Judge:       Hon. Carolyn K. Delaney |

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PROTECTIVE ORDER
ClarkHill\93764\327708\221665941.v1-5/22/19

# <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ................................................................................. 1

II.   RELEVANT FACTS & PROCEDURAL HISTORY ..................................... 2

    A.    Plaintiff Testifies That He Is Not A Sophisticated Investor ................ 2

    B.    Plaintiff Testifies That He Has Memory Loss Issues .......................... 2

    C.    Plaintiff Testifies That He Has Previously Investment Losses and That He Has Reported Those Investments to the SEC ......................................................................................... 3

    D.    Plaintiff Testifies That One Wire Transfer to the Defendants for Investment Came From His Daughter's Account .......................... 3

    E.    Defendants Issue Subpoena ........................................................... 3

III.  THE MOVING PARTY BEARS THE BURDEN TO DEMONSTRATE GOOD CAUSE FOR A PROTECTIVE ORDER ......................................................................................... 4

IV.   PLAINTIFF HAS FAILED TO DEMONSTRATE GOOD CAUSE FOR A PROTECTIVE ORDER ......................................... 4

V.    DEFENDANTS' SUBPOENAS SEEK DOCUMENTS THAT ARE RELEVANT TO THE PARTIES' CLAIMS AND DEFENSES ..................................................................................... 5

    A.    The Armstrong & Associates Records Are Relevant to Plaintiff's Claim that he was an Unsophisticated Investor ................ 5

    B.    Documents Sought from Sean Boyd, C.P.A. Pertain to Plaintiff's Sophistication as an Investor ............................................ 6

    C.    The Subpoenas to BYU and UC Berkeley Go To Plaintiff's Sophistication and Credibility ....................................................... 8

    D.    The Records of Dr. Daniel C. Cohen Are Relevant to Plaintiff's Credibility and Claims of Memory Issues and Dyslexia ...................................................................................... 9

    E.    The Testimony of Investment Partner Vujadin Jovic Is Relevant to Plaintiff's Sophistication as an Investor ........................ 9

    F.    The Subpoena to Depose Susan Marshall Seeks Information Regarding Plaintiff's Investing Experience and Sources of Funding ..................................................................................... 10

    G.    The Deposition And Records of Investment Partner Chris Morrow Go To Plaintiff's Sophistication as an Investor and Financial Knowledge ................................................................... 11

2:17-CV-00820-KJM-CKD
DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PROTECTIVE ORDER
ClarkHill\93764\327708\221665941.v1-5/22/19

H.   The Deposition and Records of Investment Partner Todd
     Owen Relate to Plaintiff's Sophistication as an Investor ..................12

VI.   PLAINTIFF FAILED TO INCLUDE  THE REQUIRED
      CERTIFICATION OF GOOD FAITH MEET AND CONFER..................13

VII.   CONCLUSION ............................................................13

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PROTECTIVE ORDER
ClarkHill\93764\327708\221665941.v1-5/22/19

# TABLE OF AUTHORITIES

## Cases

*Blankenship v. Hearst Corp.*
  519 F.2d 418 (9th Cir. 1975)..................................................................4

*Foltz v. State Farm Mutual Auto. Ins. Co.*
  331 F.3d 1122 (9th Cir. 2003)................................................................4

*Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*
  307 F.3d 1206 (9th Cir. 2002)................................................................4

## Statutes

FED. R. CIV. PROC. 26(b)(1) .....................................................................4

FED. R. CIV. PROC. 26(c)(1) .................................................................4, 13

## Other Authorities

ADV. COMM. NOTES TO 2000 AMENDMENT TO FRCP 26(b)(1) ................................4

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PROTECTIVE ORDER

1    **I.        <u>INTRODUCTION</u>**

2              By way of the instant procedurally defective Motion for Protective Order, Plaintiff

3    John Marshall seeks to prohibit the Defendants from engaging in discovery on relevant

4    witnesses, all of whom were identified by Plaintiff at his deposition and in written

5    discovery.  Plaintiff, a juris doctorate with extensive business and investment experience,

6    including managing a real estate investment portfolio worth tens of millions of dollars,

7    seeks to recover damages for alleged fraudulent investments claiming, amongst other

8    things, that he is an unsophisticated investor who lacked sufficient knowledge to evaluate

9    the risks and benefits of the underlying financial transactions.  Further, Plaintiff now

10   claims that he suffers from memory difficulty and various learning disabilities that

11   impacted his ability to understand the investment transactions.

12             Plaintiff's Motion fails as it falls far short of meeting Plaintiff's burden to

13   establish good cause through specific facts.  The motion ignores that the information

14   sought by way of each subpoena is relevant and proportional to the claims of Plaintiff and

15   the issues involved in this litigation.  Indeed, each subpoena seeks relevant information

16   pertaining to issues Plaintiff himself has brought into the stream of litigation by way of

17   his Complaint and subsequent deposition testimony, including specifically that he is an

18   unsophisticated investor, suffers from dyslexia and memory issues, and that he does not

19   know where his investment funds originated.  The information requested is not only

20   relevant and proportional to the issue of Plaintiff's sophistication as an investor but is

21   also relevant to Plaintiff's credibility as a witness and the weight of his testimony.

22             Plaintiff's motion is nothing more than a thinly veiled attempt to stonewall

23   Defendants' legitimate use of the discovery process and prevent any third party discovery

24   whatsoever.  In only three pages, Plaintiff attempts to challenge the nine lawfully issued

25   subpoenas while citing neither fact nor law to support his conclusory arguments that

26   these standard discovery requests are somehow irrelevant.  Plaintiff further ignores Code

27   provisions regarding necessary elements to be included in a motion for protective order.

28   The brevity of these arguments make clear that Plaintiff has not even attempted to meet

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PROTECTIVE ORDER

1  his burden of particularity for a protective order, ostensibly because he is unable to, and

2  could not be bothered to comply with the required elements of a proper motion for

3  protective order.  Defendants therefore ask that the Court deny this patently frivolous

4  motion and allow the subpoenas to stand.

5  **II.    RELEVANT FACTS & PROCEDURAL HISTORY**

6         Plaintiff's Second Amended Complaint alleges that Defendants breached various

7  duties owed to Plaintiff arising out of his investments with Defendants.  Defendants'

8  answer raises various defenses, including the affirmative defense for Sophisticated

9  Investor.

10     **A.    Plaintiff Testifies That He Is Not A Sophisticated Investor**

11         Plaintiff testified at his deposition on March 14, 2019 that he does not consider

12  himself a sophisticated investor.  [Hughes Dec., Ex. A, 30:24-31:1.]  In fact, Plaintiff

13  testified that he did not know what the word "sophisticated" meant, despite having a

14  $35,000,000 real estate portfolio. [Hughes, Dec., Ex. A, 266:11-267:18.]

15         Despite Plaintiff's representation that he is an unsophisticated investor, Plaintiff

16  confirmed that he attended Brigham Young University for law school and University of

17  California, Berkeley for his undergraduate degree.  Plaintiff also testified that he has used

18  and uses the designation "J.D." for Juris Doctor on his business correspondence, although

19  he cannot recall why he does so.  [Hughes Dec., Ex. A, 19:3-20.]

20     **B.    Plaintiff Testifies That He Has Memory Loss Issues**

21         Plaintiff further testified that he suffers from memory loss that apparently affect

22  his ability to comprehend and evaluate financial transactions.  [Hughes Dec., Ex. A,

23  71:14-15; 72:9-10; 80:18-22; 129:8-9; 176:10-11; 208:6-13; 208:25-209:1; 275:12-25;

24  276:1-22; 213:1-11.]  In an ostensible effort to substantiate his claims of memory loss,

25  Plaintiff specifically identified Dr. Daniel C. Cohen as the doctor he sees for treatment of

26  his memory and mental conditions.  [Hughes Dec., Ex. A., 304:15-18.]

27

28

**C.     Plaintiff Testifies That He Has Previously Investment Losses and That He Has Reported Those Investments to the SEC**

Plaintiff testified that he participated in numerous past investments with Mr. Todd Owen, Mr. Vujadin Jovic, and Mr. Chris Morrow.  [Hughes Dec., Ex. A, 242:1-19; 301:18-25; 298:18-299:24; 299:25-300:23.]  In written discovery, Plaintiff likewise identified Mr. Jovic as an investor with whom he had prior, relevant investment experience.  [Hughes Dec., ¶ 13.]  Plaintiff testified at deposition that he has contacted the Securities and Exchange Commission or the FBI with respect to Mr. Todd Owen and Mr. Chris Morrow because he lost money with those individuals.  Plaintiff contacted the SEC and the FBI regarding the Defendants in this case. [Hughes Dec., Ex. A., 297: 8-19.]

**D.     Plaintiff Testifies That One Wire Transfer to the Defendants for Investment Came From His Daughter's Account**

Plaintiff testified at deposition that one of the wire transfers that he made in the amount of $25,000 to the Defendants originated from his daughter Madison's account at Patelco Credit Union. [Hughes Dec., Ex. A, 131:11-22; 132-99-12.] Plaintiff testified that he did not discuss the funds being taken out of Madison's account with his ex-wife and, "[b]ut the money that is my money, I can·invest my money, and I didn't discuss with others." [Hughes Dec., Ex. A, 241:10-15.]

**E.     Defendants Issue Subpoena**

In light of Plaintiff's testimony, Defendants served subpoenas for records and/or deposition on April 25, 2019 to (1) Armstrong & Associates Insurance Services, (2) Brigham Young University School of Law, (3) University of California Berkeley, (4) Dr. Daniel Cohen, (5) Sean Boyd C.P.A, (6) Susan Marshall, (7) Todd Owen, (8) Christian Morrow, and (9) Vujadin Jovic (collectively, the "Subpoenas").  [Hughes Dec., ¶¶ 11, 12.]  Plaintiff subsequently demanded that Defendants withdraw seven of the nine Subpoenas and limit the remaining Subpoenas significantly.  [*Id.*, ¶ 14.]  Defendants attempted to meet and confer regarding the scope of the Subpoenas, even agreeing to limit the request.  [*Id.*, ¶ 15.]  Plaintiff filed the instant Motion to Quash/Modify the

1 Subpoenas.

2 **III.    THE MOVING PARTY BEARS THE BURDEN TO DEMONSTRATE**

3 **GOOD CAUSE FOR A PROTECTIVE ORDER**

4        It is well established that the scope of discovery is broad.  Each party to an action

5 has the right to discover all relevant information pertaining to any claim or defense raised

6 by any party, as well as the overall credibility of any witness and proportional to the

7 needs of the case.  FED. R. CIV. PROC. 26(b)(1).  This includes information that a party

8 may use to support its denial or rebuttal of the claims or defenses of another party.  See

9 ADV. COMM. NOTES TO 2000 AMENDMENT TO FRCP 26(b)(1).

10        Protective orders may be granted when there exists "good cause" to protect a party

11 of person from annoyance, embarrassment, oppression, or undue burden or expense.

12 FED. R. CIV. PROC. 26(c)(1).  The party moving for a protective order bears the burden of

13 demonstrating good cause, and must do so by showing that a specific prejudice or harm

14 will result if no protective order is granted.  *Phillips ex rel. Estates of Byrd v. Gen.*

15 *Motors Corp.*, 307 F.3d 1206, 1210-1211 (9th Cir. 2002); *Foltz v. State Farm Mutual*

16 *Auto. Ins. Co.*, 331 F.3d 1122, 1131 (9th Cir. 2003).  Broad allegations of harm,

17 unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule

18 26(c) test.  *Foltz*, 331 F.3d at 1130 (internal quotes omitted).  Indeed, the moving party

19 must articulate "specific facts" showing a particular and specific need for the order.

20 *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975).

21 **IV.    PLAINTIFF HAS FAILED TO DEMONSTRATE GOOD CAUSE FOR A**

22 **PROTECTIVE ORDER**

23        Plaintiff has failed to meet his burden of demonstrating specific facts to show

24 good cause for the issuance of a protective order.  In fact, Plaintiff's motion is based

25 solely on broad allegations, devoid of any facts (specific or otherwise) or legal authorities

26 whatsoever to demonstrate annoyance, embarrassment, oppression, or undue burden or

27 expense.  Such unsupported conclusory allegations of harm are insufficient to warrant a

28 protective order.  *Foltz*, supra, 331 F.3d at 1130.

In the 3-5 lines of argument Plaintiff affords each Subpoena, Plaintiff cites no law and states no facts to show how any subpoena causes annoyance, embarrassment, oppression, or undue burden or expense either to Plaintiff, or to the party to whom the subpoena is issued.  On their face the statements in the Motion are insufficient and fall grossly short of the particularity requirement for protective orders.

Ultimately, Plaintiff is unable to meet his burden because the subpoenas at issue do not result in the need to protect any party or person from annoyance, embarrassment, oppression, or undue burden or expense.  Each and every subpoena issued seeks relevant information for a legitimate purpose, proportionate to the claims at issue, and well within the scope of appropriate discovery, that will allow Defendants to adequately litigate their position.

## V.   DEFENDANTS' SUBPOENAS SEEK DOCUMENTS THAT ARE RELEVANT TO THE PARTIES' CLAIMS AND DEFENSES

Plaintiff's Motion for Protective Order should be denied because the Subpoenas seek documents and depositions which are relevant to the parties' claims and defenses and proportional to the needs to the case.  The Subpoenas seek documents regarding prior investments made by Plaintiff, the source of funds Plaintiff allegedly invested into Defendants, Plaintiff's overall sophistication as an investor and knowledge of commercial investment matters, and Plaintiff's direct testimony that he suffers from memory issues and mental impairment.  These documents are relevant and proportional to this matter because they pertain to Defendants' affirmative defense that Plaintiff was a sophisticated investor, they bear importance on the nature and extent of Plaintiff's claims of investment fraud, and they go to Plaintiff's overall credibility as a witness.

### A.   The Armstrong & Associates Records Are Relevant to Plaintiff's Claim that he was an Unsophisticated Investor

The subpoena to Armstrong & Associates is relevant to Plaintiff's claim that he was an unsophisticated investor and is proportional to the issues at stake in the action and the amount in controversy.  Throughout this litigation, wherein Plaintiff seeks hundreds

1    of thousands of dollars in damages arising from eighteen (18) causes of action, Plaintiff

2    has repeatedly characterized himself as merely an active investor in DPG Investments,

3    with little expertise.  [Hughes Dec., Ex. "A, " Deposition of John Marshall ("Marshall

4    Depo." 30:24-31:9, 266:23-267:19.]  Nonetheless, he included a "J.D." designation in his

5    signature block and made representations that he was an experienced businessman when

6    recruiting potential investors for DPG and its subsidiaries.  [Hughes Dec., Ex. "A,"

7    Marshall Depo. 19:16-20:10, 70:24.]  Plaintiff himself has raised the issue of whether or

8    not he is a sophisticated investor.  Further, Plaintiff utilized his professional e-mail

9    account for nearly every communication with Defendants regarding the investments

10   underlying the his Complaint.  [Hughes Dec., Ex. "A, " Marshall Depo. 70:24-72:7,

11   207:15-25; 257:23-258:22.]

12          The subpoena to Plaintiff's employer seeks records of Plaintiff's employment as a

13   licensed commercial insurance broker, including personnel records, disciplinary records,

14   and any records of misuse of company resources.   Such employment records will

15   demonstrate whether or not Plaintiff was truly a sophisticated investor by evidencing the

16   extent of his business, any training or expertise he may have.   Moreover, despite

17   Plaintiff's baseless contention that this subpoena is intended only to annoy, embarrass,

18   harass, or unduly burden, the fact remains that Plaintiff brought his place of employment

19   and potential information therein within the scope of his claim by utilizing his

20   professional e-mail account for nearly all correspondence pertaining to investments,

21   thereby waiving any purported privacy concerns.   Because the information sought is

22   relevant to Plaintiff's own claim that he was an unsophisticated investor, his experience

23   in commercial and financial matters, and his own testimony that he was unaware of the

24   risk he undertook, the Motion for Protective Order should be denied.

25      **B.      Documents Sought from Sean Boyd, C.P.A. Pertain to Plaintiff's**

26              **Sophistication as an Investor**

27          The Motion for Protective Order should be denied because the subpoena to Sean

28   Boyd is , are relevant and proportional to the parties' claims and defenses because the

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PROTECTIVE ORDER
ClarkHill\93764\327708\221665941.v1-5/22/19

bank records bear on Plaintiff's sophistication as an investor and Plaintiff's source of funds for the alleged subject investments.   This subpoena seeks the production of financial information evidencing Plaintiff's *investment* history.   The records sought are relevant to Plaintiff's claims that he is an unsophisticated investor because the information will confirm or refute the claims that Plaintiff is not a high-net-worth investor who is considered to have depth of experience and market knowledge of commercial and financial issues.   Plaintiff served discovery responses in which he identified prior investments that he made and he testified as to prior investments and commercial transactions in which he participated.  The nature and scope of his financial affairs are thus relevant to Plaintiff's purported lack of sophistication, as this information bears on whether Plaintiff had sufficient knowledge and experience in commercial transactions to evaluate the risks and merits of his alleged investments.   Moreover, the financial records sought by this subpoena are relevant to establishing the source of several of Plaintiff's investments with Defendant DPG Investments, which Plaintiff was unable to recall in his deposition.  [Hughes Dec., Ex. "A, " Marshall Depo. 131:8-132:15, 240:10-242:24, 254:3-5.]

On balance these documents outweigh any alleged privacy interest Plaintiff may have.  Moreover, Plaintiff waived his privacy rights when he disclosed his bank and tax information to Defendants on the Personal Financial Statement he prepared, as well as during the course of this litigation.

Plaintiff's position that the subpoena seeks privileged tax returns is wholly improper and in bad faith as to Defendants' agreement in the meet and confer process that they would limit the scope of the subpoena so as to exclude tax returns, in order to address Plaintiff's alleged confidentiality concern.  [Hughes Dec., ¶ 19.]  Plaintiff's bad faith in bringing the instant motion is further evidenced by Plaintiff asserting that the documents sought are irrelevant, but have also already been produced by Plaintiff. Indeed, Plaintiff concedes the relevance of these documents when he claimed that the documents sought are "duplicative."   [Plaintiff's Motion, 2:8-9.] Because Plaintiff

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PROTECTIVE ORDER

1  concedes the documents are relevant and not privileged, and inasmuch as Plaintiff has

2  failed to allege any specific harm, the motion should be denied.

3          **C.      The Subpoenas to BYU and UC Berkeley Go To Plaintiff's**

4                        **Sophistication and Credibility**

5          The subpoenas of Plaintiff's educational institutions are proper because they seek

6  information directly related to Plaintiff's credibility and his sophistication as an investor.

7  Plaintiff has claimed that he was not a sophisticated investor because he suffers from

8  dyslexia and an unspecified memory condition.  [Hughes Dec., Ex. "A, " Marshall Depo.

9  72:9-10, 80:19-22, 129:8-9, 176:9-11, 208:8-13, 208:25-209:1, 275:22-277:24, 307:12-

10  25.]  Plaintiff stated in his deposition that he has suffered from dyslexia his entire life,

11  including during his undergraduate and law school studies.    [Id.]    Despite these

12  conditions, Plaintiff earned a bachelor's degree from Berkeley and a law degree from

13  B.Y.U.   [Hughes Dec., Ex. "A, " Marshall Depo. 19:3-20:10, 231:15-23, 276:1-22.]

14  Plaintiff relied on his law degree, and the representation of sophistication, during the

15  course of his professional career and investments by including a "J.D." designation

16  within his professional e-mail signature block.  [Hughes Dec, Ex "A," Marshall Depo

17  19:16-20:10, 70:24.]

18          As Plaintiff concedes, the academic records from both BYU Law and UC

19  Berkeley is relevant to establishing the extent of Plaintiff's legal knowledge and,

20  ultimately, whether he was a sophisticated investor with knowledge of securities and/or

21  contract law.   Plaintiff's academic performance in courses pertaining to securities law,

22  business transactions, and tax law is likewise relevant as this is evidence that would

23  refute or support Plaintiff's claim that he lacked sufficient knowledge to weigh potential

24  risks and benefits of investment opportunities.   This information also goes to the overall

25  credibility of Plaintiff's claims about the existence of a written loan/investment

26  agreement with Defendants, which serves the basis for his fraud claims.   Plaintiff's

27  motion for protective order to limit the scope of these subpoenas must therefore be

28  denied.

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PROTECTIVE ORDER

### D.   The Records of Dr. Daniel C. Cohen Are Relevant to Plaintiff's Credibility and Claims of Memory Issues and Dyslexia

The records sought from Dr. Daniel Cohen are relevant to Plaintiff's credibility and sophistication as an investor because Plaintiff testified that he suffers from memory issues and dyslexia that prevented him from understanding the nature and risks associated with investment opportunities.

During his deposition, Plaintiff repeatedly stated that he has difficulty reading and writing and with his memory and understanding of business transactions.  [Hughes Dec., Ex. "A, " Marshall Depo. 72:9-10, 80:19-22, 129:8-9, 176:9-11, 208:8-13, 208:25-209:1, 213:25-214:15, 275:22-277:24, 304:15-305:15, 307:12-25.]  Plaintiff has alleged that he was merely an active investor with little understanding of the investment agreement he entered into with Defendants, Plaintiff's medical records are relevant to establishing Plaintiff's cognitive ability and ultimately speak to his sophistication as an investor.

Plaintiff's claim regarding privacy is untenable inasmuch as he himself has put his medical history and condition into the stream of litigation and identified Dr. Cohen as the only medical provider with whom he has sought treatment for these conditions.

Moreover, Defendants have repeatedly agreed to limit the scope of this subpoena, in both their written response to Plaintiff's meet and confer letter on May 3, 2019 and in the telephonic conference on May 15, 2019, to include only records pertaining to Plaintiff's memory condition, dyslexia, and issues of cognitive impairment, which is what is sought by this improper Motion. [Plaintiff's Motion, 2: 20-21.]  Plaintiff's motion is not brought in good faith, lacks substantial justification, and is moot in light of Defendants' prior agreement to modify.

### E.   The Testimony of Investment Partner Vujadin Jovic Is Relevant to Plaintiff's Sophistication as an Investor

The investment records sought from Vujadin Jovic are relevant and proportional to the parties' claims and defenses because the nature and extent of Plaintiff's prior investments, financial transactions, and business dealings bears on his sophistication as

1    an investor.

2         Plaintiff admits that he lost money during an investment with Mr. Jovic. [Hughes

3    Dec., Ex. "A, " Marshall Depo. 298:18-299:24.]  The testimony and documents sought

4    from Mr. Jovic pertaining to their investment relationship, are therefore relevant to

5    establishing the nature and extent of Plaintiff's prior investments, including his

6    involvement in business funding, whether he considered himself a lender or investor,

7    whether he could weigh the risks and benefits of investment opportunities, and whether

8    he executed agreements in those ventures.  This information all goes directly to the

9    weight and credibility of Plaintiff's contentions regarding his lack of sophistication in

10   investments.

11        Moreover, Plaintiff concedes the relevance of the information sought as he

12   identified his prior investments with Mr. Jovic and stated he would produce such

13   documents. [Hughes Dec., ¶ 13.]  Notwithstanding his representation, Plaintiff has failed

14   to produce any such documents, and now instead seeks to further avoid Defendants'

15   discovery of the information through third party depositions.  Because records and

16   information regarding prior investments pertains to Plaintiff's investing experience and

17   sophistication as an investor, Plaintiff's Motion to quash the Subpoena to Mr. Jovic

18   should be denied.

19        **F.    The Subpoena to Depose Susan Marshall Seeks Information Regarding**

20        **Plaintiff's Investing Experience and Sources of Funding**

21        The information records sought from Susan Marshall are relevant and proportional

22   to the parties' claims and defenses because Ms. Marshall is expected to have knowledge

23   pertaining to the nature and extent of Plaintiff's prior investments, his sophistication as an

24   investor, and his memory and dyslexia conditions.

25        Plaintiff has made clear that he is either unwilling or unable to identify the source

26   of at least some of the funds he invested with Defendants. [Hughes Dec., Ex. "A, "

27   Marshall Depo. 131:8-132:15, 240:10-242:24, 254:3-5.] Plaintiff specifically admitted

28   during his deposition that at least one wire transfer was made from a bank account

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PROTECTIVE ORDER
ClarkHill\93764\327708\221665941.v1-5/22/19

labeled in his daughter's name, but subsequently stated it was his account. [Hughes Dec., Ex. "A, " Marshall Depo. 131:8-22, 132:9-12.]   Any notice or communications Susan Marshall had with Plaintiff regarding the use of their daughter's savings funds in Plaintiff's personal business deals is directly relevant to Plaintiff's sophistication as an investor and may further establish whether Plaintiff considered himself a lender or investor with Defendants.

This information further goes to the credibility and weight of Plaintiff's contentions.   Plaintiff's claim in the moving papers that he has not spoken to his wife since 2003, yet, Plaintiff's counsel admitted during meet and confer discussions that she provided a template for objections to Plaintiff who subsequently gave and spoke to Ms. Marshall about the objections.  [Hughes Dec., ¶ 21.]  Plaintiff's counsel also identified text messages that she reviewed in which Plaintiff spoke to Ms. Marshall about this litigation.  [*Id.*]  The Subpoena to Ms. Marshall is thus relevant to Plaintiff's credibility as a witness because of the inconsistencies between Plaintiff's testimony, claims, and actions.

### G.     The Deposition And Records of Investment Partner Chris Morrow Go To Plaintiff's Sophistication as an Investor and Financial Knowledge

The records sought from Chris Morrow are relevant and proportional to the parties' claims and defenses because the information pertains to Plaintiff's sophistication as an investor, understanding of financial and business transactions, and ability to assess the potential risks and benefits of the transactions underlying the Complaint.

As with the subpoena to Vujadin Jovic, discussed above, Plaintiff specifically identified Mr. Morrow at deposition and admits that he lost money in prior investment deals with Mr. Morrow.   [Hughes Dec., Ex. "A, " Marshall Depo. 299:25-300:23.] Plaintiff also claims that he did not report Mr. Morrow to law enforcement, as he did with Defendant Daniel Galvanoni.  [Hughes Dec., Ex. "A, " Marshall Depo. 300:15-23.]  The testimony and documents sought by the subpoena are relevant to establishing the nature and extent of these prior investments, Plaintiff's involvement in those prior investment

deals, his involvement in business funding, whether he considered himself a lender or investor, and whether he executed agreements in those ventures. This information speaks to the credibility and weight of Plaintiff's testimony that he was merely an inactive investor with little investment expertise. Because the information sought is relevant to refuting or supporting Plaintiff's claims that he was an unsophisticated investor, the Motion for Protective Order should be denied.

**H.      The Deposition and Records of Investment Partner Todd Owen Relate to Plaintiff's Sophistication as an Investor**

The investment records sought from Todd Owen are relevant and proportional to the parties' claims and defenses because the nature and extent of Plaintiff's prior investments, financial transactions, and business dealings bears on his sophistication as an investor. As was the case with the prior individuals with whom Plaintiff had investment relationships, Plaintiff specifically identifies Mr. Owen at deposition and admits that he lost money in prior investment deals with Mr. Owen. [Hughes Dec., Ex. "A, " Marshall Depo. 301:18-302:5.] The testimony and documents requested by the deposition subpoena to Mr. Owen are pertinent to Plaintiff's sophistication as an investor and go to his claims that despite his prior investment relationships, he lacked sufficient knowledge to understand the risks and benefits associated with the investments giving rise to his Complaint herein. including the nature and extent of his prior investments and his involvement therein. The records and information from Mr. Own thus bear directly on Plaintiff's knowledge and experience in financial and business matters such that he could sufficiently evaluate the risks and benefits of the subject investments. Plaintiff's claim that these records protected by his right to privacy is untenable given that he identified prior investments with Mr. Jovic in his verified discovery responses as relevant but excluded these. All of Plaintiff's investment experience is relevant to the parties' claims and defenses because it is the weight of this experience and knowledge that bears on Plaintiff's sophistication. This information is necessary to establish the credibility and weight of Plaintiff's claim that he was merely an inactive or unsophisticated investor and

1  thus, Plaintiff's Motion for Protective Order should be denied.

2  **VI.  <u>PLAINTIFF FAILED TO INCLUDE  THE REQUIRED CERTIFICATION</u>**

3  **<u>OF GOOD FAITH MEET AND CONFER</u>**

4      Federal Rules of Civil Procedure Rule 26(c)(1) make clear that a motion for

5  protective order "must include a certification that the movant has in good faith conferred

6  or attempted to confer with other affected parties in an effort to resolve the dispute

7  without court action."  Plaintiff's Motion, which is not supported by a Declaration,

8  exhibits, or any evidence whatsoever, is further silent as to any effort regarding a good

9  faith meet and confer.  Simply put, Plaintiff is unable to state he met and conferred in

10 good faith as the basis for the Motion is to inhibit lawful discovery.  The Motion is

11 conspicuously silent as to *any* offers of limitations made by Defendants, clearly

12 evidencing Plaintiff's bad faith in bringing the instant Motion.

13 **VII.  <u>CONCLUSION</u>**

14      Plaintiff has failed to make a clear, specific showing of good cause in support of

15 its motion for protective order as to each of the above subpoenas.  Furthermore, each of

16 the subpoenas issued by Defendants is relevant and proportional to the needs of this case.

17 Plaintiff's motion for protective order must therefore be denied in its entirety.

18

19 Dated:   May 22, 2019          CLARK HILL LLP

20

21                        By: _____

22                           Bradford G. Hughes
                            Tiffany B. Hunter

23

24                        Attorneys for defendants DANIEL P.
                          GALVANONI; DPG INVESTMENTS, LLC;
25                        DPG GOLDEN EAGLE, LLC; SPRING TREE
                          LENDING, LLC; SPRING TREE HOLDINGS,
26                        LLC; SPRING TREE FINANCIAL, LLC; and
                          SKIBO HOLDINGS, LLC

27

28

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PROTECTIVE ORDER
ClarkHill\93764\327708\221665941.v1-5/22/19

## DECLARATION OF BRADFORD G. HUGHES

I, Bradford G. Hughes, declare as follows:

1.     I am an attorney at law, duly licensed to practice before the courts of the State of California.  I am a Partner with the law firm of Clark Hill LLP, attorneys of record for defendants Daniel P. Galvanoni, DPG Investments, LLC, DPG Golden Eagle, LLC, Spring Tree Lending, LLC, Spring Tree Holdings, LLC, Spring Tree Financial, LLC, and SkiBo Holdings, LLC in the above referenced matter.

2.     I submit this Declaration in support of Defendants' Opposition to Plaintiff's Motion for Protective Order Re: Third Party Depositions Subpoenas and/or Subpoenas Duces Tecum Issued to Armstrong & Associates Insurance Services, Sean Boyd, Brigham Young University, University of California-Berkeley, Daniel C. Cohen, Vujadin Jovic, Susan Marshall, Christian Morrow, and Todd Owen.

3.     I have personal knowledge of the facts set forth herein and if called to testify could and would competently testify thereto.

4.     Plaintiff's Second Amended Complaint alleges that Defendants breached various duties owed to Plaintiff arising out of his investments with Defendants. Defendants' answer raises various defenses, including the affirmative defense for Sophisticated Investor.

5.     On March 14, 2019, Plaintiff was deposed in Sacramento, California. Attached hereto as Exhibit "A" is a true and correct copy of the excerpt of Plaintiff's deposition.

**A.     Plaintiff Testifies That He Is Not A Sophisticated Investor**

6.     Plaintiff testified at his deposition on March 14, 2019 that he does not consider himself a sophisticated investor.  Ex. A, 30:24-31:1.  In fact, Plaintiff testified that he did not know what the word "sophisticated" meant, despite having a $35,000,000 real estate portfolio. Ex. A, 266:11-267:18.

7.     Despite Plaintiff's representation that he is an unsophisticated investor, Plaintiff confirmed that he attended Brigham Young University for law school and

1  University of California, Berkeley for his undergraduate degree.  Plaintiff also testified

2  that he has used and uses the designation "J.D." for Juris Doctor on his business

3  correspondence, although he cannot recall why he does so.  Ex. A, 19:3-20.

4      **B.**    **Plaintiff Testifies That He Has Memory Loss Issues**

5      8.    Plaintiff further testified that he suffers from memory loss that apparently

6  affect his ability to comprehend and evaluate financial transactions.  Ex. A, 71:14-15;

7  72:9-10; 80:18-22; 129:8-9; 176:10-11; 208:6-13; 208:25-209:1; 275:12-25; 276:1-22;

8  213:1-11.  In an ostensible effort to substantiate his claims of memory loss, Plaintiff

9  specifically identified Dr. Daniel C. Cohen as the doctor he sees for treatment of his

10  memory and mental conditions.  Ex. A., 304:15-18.

11      **C.**    **Plaintiff Testifies That He Has Previously Investment Losses and That**

12          **He Has Reported Those Investments to the SEC**

13      9.    Plaintiff testified that he participated in numerous past investments with

14  Mr. Todd Owen, Mr. Vujadin Jovic, and Mr. Chris Morrow.  Ex. A, 242:1-19; 301:18-25;

15  298:18-299:24; 299:25-300:23.  In written discovery, Plaintiff likewise identified Mr.

16  Jovic as an investor with whom he had prior, relevant investment experience.  Plaintiff

17  testified at deposition that he has contacted the Securities and Exchange Commission or

18  the FBI with respect to Mr. Todd Owen and Mr. Chris Morrow because he lost money

19  with those individuals.  Plaintiff contacted the SEC and the FBI regarding the Defendants

20  in this case. Ex. A., 297: 8-19.

21      **D.**    **Plaintiff Testifies That One Wire Transfer to the Defendants for**

22          **Investment Came From His Daughter's Account**

23      10.    Plaintiff testified at deposition that one of the wire transfers that he

24  made in the amount of $25,000 to the Defendants originated from his daughter

25  Madison's account at Patelco Credit Union. Ex. A, 131:11-22; 132-99-12. Plaintiff

26  testified that he did not discuss the funds being taken out of Madison's account

27  with his ex-wife and, "[b]ut the money that is my money, I can·invest my money,

28  and I didn't discuss with others." Ex. A, 241:10-15.

11.    Based on the testimony of Plaintiff and the issues raised in discovery, Defendants issued subpoenas duces tecum on April 25, 2019 to Armstrong & Associates Insurance Service, Brigham Young University School of Law, University of California Berkeley, California Department of Insurance, and Dr. Daniel Cohen.  The production date for these subpoenas was set for May 16, 2019.

12.    Additionally, on April 25, 2019, Defendants issued deposition subpoenas with related requests for production of documents to Sean Boyd C.P.A., Susan Marshall, Todd Owen, Christian Morrow, and Vujadin Jovic.  The depositions of Sean Boyd, Susan Marshall, and Vujadin Jovic were set for May 16, 2019.  The depositions of Christian Morrow and Todd Owen were set for May 17, 2019.

13.    Attached hereto as Exhibit "B" is a true and correct copy of Plaintiff's Responses to Defendant Daniel Galvanoni's Special Interrogatories, Set One, to Plaintiff John Marshall.  In response to Special Interrogatory Number One, Plaintiff identified Vujadin Jovic as a relevant individual and agreed to produce investment records between him and with Mr. Jovic.  [Ex. B, 2:23-27.]

14.    On April 29, 2019, counsel for Plaintiff delivered a meet and confer letter to my office requesting that Defendants withdraw seven of the ten subpoenas in their entirety and limit the remaining subpoenas.  Attached hereto as Exhibit "C" is a true and correct copy of Plaintiff's April 29, 2019 meet and confer letter.

15.    On May 3, 2019, I sent a letter to opposing counsel, in which agreed to narrow the scope of the subpoena to Dr. Cohen to seek only documents pertaining to Plaintiff's memory and dyslexia conditions.  I did not receive any response to my May 3, 2019 letter.  Attached hereto as Exhibit "C" is a true and correct copy of Defendant's May 3, 2019 letter to opposing counsel.

16.    On May 1, 2019, Sean Boyd and Susan Marshall served objections to their subpoenas for depositions and related requests for production of documents.  My office had not been able to effectuate service upon these deponents at that time, and has been unable to effectuate service through the present date.

17.     On May 2, 2019, Armstrong & Associates served objections to its subpoena duces tecum.

18.     On May 7, 2019, Plaintiff filed the instant Motion for Protective Order and Motion to Quash, pertaining to all of the above subpoenas except for that issued to the California Department of Insurance.

19.     Counsel for all parties conferred telephonically regarding the instant motions.  During the conference, Defendants made the following concessions:

a.     Defendants agreed to withdraw and re-serve the subpoena to Dr. Cohen to limit the production of documents to those pertaining to Plaintiff's memory condition, dyslexia, and any other learning disability;

b.     Defendants also agreed to exclude documents pertaining to Plaintiff's tax returns from the subpoena to Sean Boyd;

c.     Defendants further agreed to limit the subpoena to Susan Marshall to exclude from production divorce records pertaining to child custody matters and instead seek only financial records; and

d.     Defendants also agreed to limit the subpoena to Todd Owen to exclude customer information and trade secret information.

20.     Plaintiff declined these concessions, and no agreement was reached as to any of the subpoenas during the telephonic conference.

21.     During the May 15, 2019 telephonic conference, the parties also discussed the objections served by Sean Boyd, Susan Marshall, and Armstrong & Associates.  In this conversation, Plaintiff's counsel stated that she did not prepare the objections served by any of these subpoena-deponents.  Plaintiff's counsel, however, stated that she provided Plaintiff with a template for the objections.  She further stated that she saw text messages between Plaintiff and Ms. Marshall regarding this matter.

///

///

///

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PROTECTIVE ORDER
ClarkHill\93764\327708\221665941.v1-5/22/19

1         I declare under the penalty of perjury under the law of the United States of

2    America that the foregoing is true and correct.

3         Executed on this 22nd day of May, 2019 in Los Angeles, California.

4

5                                       _____

6                                        Bradford G. Hughes

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PROTECTIVE ORDER

ClarkHill\93764\327708\221665941.v1-5/22/19