1  CLARK HILL LLP
   Bradford G. Hughes (SBN 247141)
2  bhughes@ClarkHill.com
   Tiffany B. Hunter (SBN 306382)
3  thunter@ClarkHill.com
   1055 West Seventh Street, Suite 2400
4  Los Angeles, CA 90017
   Telephone:   (213) 891-9100
5  Facsimile:   (213) 488-1178

6  KAUFMAN & FORMAN, P.C.
   Alex B. Kaufman (SBN GA 136097)
7  abk@kauflaw.net
   Matthew D. Treco (SBN GA 802181)
8  mdt@kauflaw.net
   8215 Roswell Rd., Building 800
9  Atlanta, Georgia 30350-6445
   Telephone: 770.390.9200
10 Facsimile: 770.395.6720

11 Attorneys for Defendants DANIEL P. GALVANONI; DPG
   INVESTMENTS, LLC; DPG GOLDEN EAGLE, LLC;
12 SPRING TREE LENDING, LLC; SPRING TREE
   HOLDINGS, LLC; SPRING TREE FINANCIAL, LLC; and
13 SKIBO HOLDINGS, LLC

14              UNITED STATES DISTRICT COURT

15              EASTERN DISTRICT OF CALIFORNIA

16

17

18 | JOHN MARSHALL, an individual, | Case No. 2:17-CV-00820-KJM-CKD |
   
19 |                    Plaintiff, | **DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO QUASH AND/OR MODIFY THIRD PARTY DEPOSITIONS SUBPOENAS TO: (1) ARMSTRONG & ASSOCIATES INSURANCE SERVICES; (2) SEAN BOYD; (3) BRIGHAM YOUNG UNIVERSITY; (4) UNIVERSITY OF CALIFORNIA BERKLEY; (5) DANIEL C. COHEN; (6) VUJADIN JOVIC; (7) SUSAN MARSHALL; & (8) TODD OWEN** |
   
20 |    v. | |
   
21 | DANIEL P. GALVANONI, an individual; DPG INVESTMENTS, LLC, a foreign limited liability company; DPG GOLDEN EAGLE, LLC, a foreign limited liability company; SPRING TREE LENDING, LLC, a foreign limited liability company; SPRING TREE HOLDINGS, LLC, a foreign limited liability company; SPRING TREE FINANCIAL, LLC, a foreign limited liability company; SKIBO HOLDINGS, LLC, a foreign limited liability company; GERALD T. HUDSPETH, an individual; JEROME L. JOSEPH, an individual; WILLIAM J. BROOKSBANK, an individual; AND DOES 1-100, inclusive, | |
   
25 | | Date:           June 5, 2019 |
26 | | Time:          10:00 a.m. |
   | | Courtroom:   Courtroom 24, 8th Floor |
27 | | |
   | | Judge:         Hon. Carolyn K. Delaney |
28 |                  Defendants. | |

1                                   2:17-CV-00820-KJM-CKD

# TABLE OF CONTENTS

I.      INTRODUCTION ............................................................................. 1

II.     RELEVANT FACTS & PROCEDURAL HISTORY ................................ 2

    A.   Plaintiff Testifies That He Is Not A Sophisticated Investor ................ 2

    B.   Plaintiff Testifies That He Has Memory Loss Issues ......................... 2

    C.   Plaintiff Testifies That He Has Previously Investment Losses and That He Has Reported Those Investments to the SEC ............................................................................................. 3

    D.   Plaintiff Testifies That One Wire Transfer to the Defendants for Investment Came From His Daughter's Account ........................... 3

    E.   Defendants Issue Subpoena ............................................................. 3

III.    IT IS IMPROPER TO QUASH OR MODIFY A SUBPOENA THAT SEEKS NON-PRIVILEGED DOCUMENTS THAT ARE RELEVANT TO THE PARTIES' CLAIMS OR DEFENSES .................... 4

IV.     THE DOCUMENTS SOUGHT ARE NOT PROTECTED BY PRIVILEGE OR OTHER BASIS FOR PROTECTION ................................ 4

V.      DEFENDANTS' SUBPOENAS SEEK DOCUMENTS THAT ARE RELEVANT TO THE PARTIES' CLAIMS AND DEFENSES ............ 5

    A.   The Armstrong & Associates Records Are Relevant to Plaintiff's Claim that he was an Unsophisticated Investor ................. 5

    B.   Documents Sought from Sean Boyd Pertain to Plaintiff's Sophistication as an Investor ................................................................ 7

    C.   The Subpoenas to BYU Law and UC Berkley Bear on Plaintiff's Credibility and his Sophistication as an Investor ............... 8

    D.   The Records from Dr. Daniel Cohen Bear Directly on Plaintiff's Credibility and Testimony that he suffers from Memory Issues and Dyslexia ........................................................... 10

    E.   The Investment Records from Vujadin Jovic Relate to Plaintiff's Sophistication as an Investor .......................................... 10

    F.   The Information and Records from Susan Marshall Relate to Plaintiff's Investing Experience and Source of Funding ................... 11

    G.   The Subpoena to Chris Morrow is Relevant to Plaintiff's Sophistication as an Investor and Financial Knowledge ................... 12

    H.   The Investment Records from Todd Owen Relate to

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO QUASH THIRD PARTY SUBPOENAS
ClarkHill\93764\327708\221663539.v1-5/22/19

         Plaintiff's Sophistication as an Investor ............................................. 13

VI.    CONCLUSION ............................................................................ 14


## TABLE OF AUTHORITIES
### Cases

*Moon v. SCP Pool Corp.*
    232 F.R.D. 633(C.D. Cal. 2005) ............................................................. 4

*Ragge v. MCA/Universal* Studios
    165 F.R.D. 601 (N.D. Cal. 1986) ............................................................. 4

*Rubin v. Regents of Univ. of Calif.*
    114 F.R.D. 1 (N.D. Cal. 1986) ............................................................... 4

### Statutes

Fed. R. Civ. Proc. 26(b)(1) ...................................................................... 4

Fed. R. Civ. Proc. 45(3)(A)(iii) ................................................................. 4

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO QUASH THIRD PARTY SUBPOENAS
ClarkHill\93764\327708\221663539.v1-5/22/19

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.    INTRODUCTION

3        By way of the instant Motion to Quash, Plaintiff John Marshall seeks to prohibit

4   the Defendants from engaging in discovery on relevant witnesses, all of whom were

5   identified by Plaintiff at his deposition and in written discovery.  Plaintiff, a juris

6   doctorate with extensive business and investment experience, including managing a real

7   estate investment portfolio worth tens of millions of dollars, seeks to recover damages for

8   alleged fraudulent investments claiming, amongst other things, that he is an

9   unsophisticated investor who lacked sufficient knowledge to evaluate the risks and

10  benefits of the underlying financial transactions.  Further, Plaintiff now claims that he

11  suffers from memory difficulty and various learning disabilities that impacted his ability

12  to understand the investment transactions.

13       Upon discovering the above information at Plaintiff's deposition, defendants

14  issued deposition subpoenas for records and the personal attendance of those witnesses

15  that Plaintiff identified.  Plaintiff immediately filed the instant Motion to Quash,

16  ostensibly seeking to preclude Defendants from discovering information and materials

17  from third parties that pertain directly to Plaintiff's claims and Defendants' defenses,

18  including, Plaintiff's conspicuous sophistication as an investor.

19       Plaintiff's Motion to Quash/Modify the Subpoenas should be denied because the

20  records and information sought are relevant and proportional to the parties' claims and

21  defenses and outweighs any purported privacy interest Plaintiff has in these records.

22  Defendants' Subpoenas seek documents regarding prior investments made by Plaintiff,

23  the source of funds Plaintiff allegedly invested into Defendants, Plaintiff's overall

24  sophistication as an investor and knowledge of commercial investment matters, and

25  Plaintiff's own testimony that he suffers from memory issues and mental impairment that

26  affect his ability to understand financial and business issues.  The documents sought are

27  proportional to the needs of the case because Plaintiff has identified at least **eight** third

28  party witnesses as having relevant information concerning his finances, purported lack of

sophistication and knowledge, and his memory issues.  The information requested is not only relevant and proportional to the issue of Plaintiff's sophistication as an investor but is also relevant to Plaintiff's credibility as a witness and the weight of his testimony. Because the information and materials sought is relevant and proportional to the parties' claims and defenses, including Plaintiff's credibility as a witness, Plaintiff's Motions to Quash/Modify should be denied.

## II.   RELEVANT FACTS & PROCEDURAL HISTORY

Plaintiff's Second Amended Complaint alleges that Defendants breached various duties owed to Plaintiff arising out of his investments with Defendants.  Defendants' answer raises various defenses, including the affirmative defense for Sophisticated Investor.

### A.     Plaintiff Testifies That He Is Not A Sophisticated Investor

Plaintiff testified at his deposition on March 14, 2019 that he does not consider himself a sophisticated investor.  [Hughes Dec., Ex. A, 30:24-31:1.]  In fact, Plaintiff testified that he did not know what the word "sophisticated" meant, despite having a $35,000,000 real estate portfolio. [Hughes, Dec., Ex. A, 266:11-267:18.]

Despite Plaintiff's representation that he is an unsophisticated investor, Plaintiff confirmed that he attended Brigham Young University for law school and University of California, Berkeley for his undergraduate degree.  Plaintiff also testified that he has used and uses the designation "J.D." for Juris Doctor on his business correspondence, although he cannot recall why he does so.  [Hughes Dec., Ex. A, 19:3-20.]

### B.     Plaintiff Testifies That He Has Memory Loss Issues

Plaintiff further testified that he suffers from memory loss that apparently affect his ability to comprehend and evaluate financial transactions.  [Hughes Dec., Ex. A, 71:14-15; 72:9-10; 80:18-22; 129:8-9; 176:10-11; 208:6-13; 208:25-209:1; 275:12-25; 276:1-22; 213:1-11.]  In an ostensible effort to substantiate his claims of memory loss, Plaintiff specifically identified Dr. Daniel C. Cohen as the doctor he sees for treatment of his memory and mental conditions.  [Hughes Dec., Ex. A., 304:15-18.]

### C.   Plaintiff Testifies That He Has Previously Investment Losses and That He Has Reported Those Investments to the SEC

Plaintiff testified that he participated in numerous past investments with Mr. Todd Owen, Mr. Vujadin Jovic, and Mr. Chris Morrow.  [Hughes Dec., Ex. A, 242:1-19; 301:18-25; 298:18-299:24; 299:25-300:23.]  In written discovery, Plaintiff likewise identified Mr. Jovic as an investor with whom he had prior, relevant investment experience.  [Hughes Dec., ¶ 13.]  Plaintiff testified at deposition that he has contacted the Securities and Exchange Commission or the FBI with respect to Mr. Todd Owen and Mr. Chris Morrow because he lost money with those individuals.  Plaintiff contacted the SEC and the FBI regarding the Defendants in this case. [Hughes Dec., Ex. A., 297: 8-19.]

### D.   Plaintiff Testifies That One Wire Transfer to the Defendants for Investment Came From His Daughter's Account

Plaintiff testified at deposition that one of the wire transfers that he made in the amount of $25,000 to the Defendants originated from his daughter Madison's account at Patelco Credit Union. [Hughes Dec., Ex. A, 131:11-22; 132-99-12.] Plaintiff testified that he did not discuss the funds being taken out of Madison's account with his ex-wife and, "[b]ut the money that is my money, I can·invest my money, and I didn't discuss with others." [Hughes Dec., Ex. A, 241:10-15.]

### E.   Defendants Issue Subpoena

In light of Plaintiff's testimony, Defendants served subpoenas for records and/or deposition on April 25, 2019 to (1) Armstrong & Associates Insurance Services, (2) Brigham Young University School of Law, (3) University of California Berkeley, (4) Dr. Daniel Cohen, (5) Sean Boyd C.P.A, (6) Susan Marshall, (7) Todd Owen, (8) Christian Morrow, and (9) Vujadin Jovic (collectively, the "Subpoenas"). [Hughes Dec., ¶¶ 11,12.] Plaintiff subsequently demanded that Defendants withdraw seven of the nine Subpoenas and limit the remaining Subpoenas significantly.  [*Id.*, ¶ 14.]  Defendants attempted to meet and confer regarding the scope of the Subpoenas, even agreeing to limit the request. [*Id.*, ¶ 15.]  Plaintiff filed the instant Motion to Quash/Modify the Subpoenas.

### III.   IT IS IMPROPER TO QUASH OR MODIFY A SUBPOENA THAT SEEKS NON-PRIVILEGED DOCUMENTS THAT ARE RELEVANT TO THE PARTIES' CLAIMS OR DEFENSES

It is improper to quash or modify a subpoena that seeks non-privileged documents that are relevant to the parties' claims or defenses because a party lacks standing to quash or modify a subpoena served upon a third party unless the subpoena seeks disclosure of privileged or other protected materials.  Fed. R. Civ. Proc. 45(3)(A)(iii).  Indeed, a federal court may only quash or modify a subpoena if the subpoena requests production of privileged documents or disclosure of trade secret or other confidential commercial information.  *Id.*  Where a subpoena only seeks production of documents and materials that are "relevant to the claim or defense of any party" and "not privileged," the subpoena is proper and cannot be modified or quashed.  Fed. R. Civ. Proc. 26(b)(1).

A party moving to modify or quash a subpoena carries the initial and heavy burden of persuasion to demonstrate that the documents sought by the subpoena are improper because of privilege or irrelevance.  *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 637 (C.D. Cal. 2005).  Although a party may have a right to prevent discovery of matters constitutionally recognized as being private, this right does not allow a party to preclude discovery of any matters that might implicate private matters.  *Ragge v. MCA/Universal* Studios, 165 F.R.D. 601, 604  (C.D. Cal. 1995); *Rubin v. Regents of Univ. of Calif.*, 114 F.R.D. 1, 2 (N.D. Cal. 1986).  When a party asserts a privilege based in privacy, the need for the materials sought must be balanced against the asserted privacy interest.  *Id.*

### IV.   THE DOCUMENTS SOUGHT ARE NOT PROTECTED BY PRIVILEGE OR OTHER BASIS FOR PROTECTION

Plaintiff's Motion should be denied because Plaintiff has failed to satisfy his burden of establishing that the documents sought by the Subpoenas are subject to privilege or other basis for protection.  The purported privacy right that Plaintiff asserts to preclude Defendants from discovering relevant information is not a sufficient basis on which to modify, much less quash, the Subpoenas because even if Plaintiff had a privacy

right in the documents sought, Defendants have agreed during meet and confer discussions to limit the scope of the Subpoenas to exclude certain private and proprietary matters.  The importance of the remaining materials sought by Defendants' Subpoenas outweigh any purported privacy interest Plaintiff may have because the requested documents are relevant to Plaintiff's claims and Defendants' affirmative defenses and proportional to the needs of the case.

## V.   DEFENDANTS' SUBPOENAS SEEK DOCUMENTS THAT ARE RELEVANT TO THE PARTIES' CLAIMS AND DEFENSES

Plaintiff's Motion to quash or modify the Subpoenas should be denied because the Subpoenas seek documents that are relevant to the parties' claims and defenses and proportional to the needs to the case.  The Subpoenas seek documents regarding prior investments made by Plaintiff, the source of funds Plaintiff allegedly invested into Defendants, Plaintiff's overall sophistication as an investor and knowledge of commercial investment matters, and Plaintiff's own testimony that he suffers from memory issues and mental impairment.  These documents are relevant and proportional to this matter because they pertain to Defendants' affirmative defense that Plaintiff was a sophisticated investor, they bear importance on the nature and extent of Plaintiff's claims of investment fraud, and they go to Plaintiff's overall credibility as a witness.

### A.   The Armstrong & Associates Records Are Relevant to Plaintiff's Claim that he was an Unsophisticated Investor

The Subpoena to Armstrong & Associates is both relevant and proportional to the parties' claims and defenses because the documents sought pertain to Plaintiff's own claim that he was an unsophisticated investor.  The documents Defendants seek from Armstrong & Associates relate to Plaintiff's employment as a licensed commercial insurance broker.  These documents are relevant to the claims and defenses raised by the parties because this information relates to Plaintiff's claim that he was an unsophisticated investor.   Plaintiff testified at his deposition that he does not consider himself a sophisticated investor.  [Ex. A, 30:24-31:1. ]  In fact, Plaintiff testified that he did not

know what the word "sophisticated" meant, despite having a $35,000,000 real estate portfolio, [Ex. A, 266:11-267:18], and despite spending "many" years as a licensed commercial insurance broker [Ex. A, 37:17-38:5].  Documents produced in discovery demonstrate that Plaintiff used his email address from Armstrong & Associates to recruit potential investors for DPG Investments, LLC and its subsidiaries.  The employment records sought from Armstrong & Associates are therefore relevant to the claims and defenses because they pertain to the extent and nature of Plaintiff's commercial experience and transactional work, his training and expertise in commercial and financial matters, and the overall quality of his work—the latter of which weighs on his credibility issues that he put at issue when he testified that he suffers from memory loss that apparently affect his ability to comprehend and evaluate financial and commercial transactions.  [Ex. A, 71:14-15; 72:9-10; 80:18-22; 129:8-9; 176:10-11; 208:6-13; 208:25-209:1; 275:12-25; 276:1-22; 213:1-11.]

Not only do the records sought by the Subpoena outweigh Plaintiff's purported privacy interest because of the relevance of the records, but Plaintiff also waived any privacy claims as to these records because Plaintiff has already produced some documents from Armstrong & Associates in discovery.  Plaintiff cannot seek to preclude Defendants legitimate discovery efforts by claiming privacy in records he has already produced.  This is particularly true given that he used his employer's email to correspond with Defendants and recruit potential investors.  Even if Plaintiff had a privacy right in some of these records, the information sought is relevant to Plaintiff's claims and testimony that he has "difficulty reading and writing" [Ex. A, 72:9-10; 80:21-22], "struggle[s] with [his] learning disability" [Ex. A, 275:24-25] and suffers from dyslexia [Ex. A, 276:1-7] that apparently affects his ability to evaluate and comprehend complex commercial transactions.  Given that Plaintiff seeks to use these mental impairments as evidence of his lack of sophistication and his purported susceptibility, the employment records are essential to Defendants ability to assess whether Plaintiff's alleged mental conditions affected his ability to engage in commercial transactions.  All of this

information pertains to the parties' claims and defenses and goes directly to the weight of Plaintiff's own testimony regarding his sophistication.

Because the Subpoena to Armstrong & Associates seeks documents that bear on Plaintiff's sophistication as an investor, his experience in commercial and financial matters, and his own testimony that he is unsophisticated and suffers from mental impairments, Plaintiff's efforts to preclude Defendants' discovery should be denied.

**B.    Documents Sought from Sean Boyd Pertain to Plaintiff's Sophistication as an Investor**

The documents sought from Sean Boyd, CPA, are relevant and proportional to the parties' claims and defenses because the bank records bear on Plaintiff's sophistication as an investor and Plaintiff's source of funds for the alleged subject investments.  Indeed, **<u>Plaintiff concedes the relevance of these documents when he claims that the documents sought are "duplicative."</u>**  [Plaintiff's Motion, 2:8-9.]  The records sought are relevant to Plaintiff's claims that he is an unsophisticated investor [Ex. A, 30:24-31:1] and that he does not even know what the word "sophisticated" meant, despite having a $35,000,000 real estate portfolio [Ex. A, 266:11-267:18].  The financial records from Mr. Boyd will confirm or refute the claims that Plaintiff is not a high-net-worth investor who is considered to have depth of experience and market knowledge of commercial and financial issues.

The records are also relevant to Plaintiff's investment experience because Plaintiff both served verified discovery responses in which he identified prior investments that he made [Hughes Dec., ¶ 13] and testified about his $35,000,000 real estate portfolio [Ex. A, 266:11-267:18] and involvement with prior investments that resulted in losses in excess of $575,000 [Ex., A, 299:19-300:9].  The nature and scope of his financial affairs are thus relevant to Plaintiff's purported lack of sophistication, as this information bears on whether Plaintiff had sufficient knowledge and experience in commercial transactions to evaluate the risks and merits of his alleged investments with Defendants.

The documents sought by the Subpoena to Sean Boyd also outweigh any privacy right claimed by Plaintiff because Plaintiff waived his privacy rights when he disclosed his bank and tax information to Defendants on the Personal Financial Statement he prepared, as well as during the course of this litigation.  Given the prior disclosures, which directly relate to the ability of Plaintiff to take advantage of investment opportunities, Plaintiff cannot legitimately claim that his right to privacy trumps Defendants' legitimate interest in assessing the nature and extent of Plaintiff's sophistication as an investor.

The records that Defendants seek are further relevant and proportional to the claim given Plaintiff's own testimony that he was unable to identify the source of the funds that he allegedly invested into Defendants.  [Ex. 241:10-15.] Plaintiff's financial records thus bear on his sophistication because this information pertains to Plaintiff's financial strength and his ability to ensure that his investments are sufficiently diversified and monitored regularly.

Finally, Plaintiff's claim that the documents sought by the Subpoena seek privileged tax returns is untenable inasmuch as the Subpoena does not expressly request these records.  Indeed, Defendants even <u>agreed during meet and confer discussions with Plaintiff's counsel to expressly exclude tax records</u> from the Subpoena but Plaintiff's counsel refused to accept this proposal.  [Hughes Dec., ¶ 19.]

## C.   The Subpoenas to BYU Law and UC Berkley Bear on Plaintiff's Credibility and his Sophistication as an Investor

Plaintiff's Motion to modify the Subpoenas to BYU Law and UC Berkley should be denied because the records sought from these entities goes directly to Plaintiff's credibility and his sophistication as an investor.  Plaintiff claims that he was an unsophisticated investor [Ex. A, 30:24-31:1], does not know what the word "sophisticated" meant [Ex. A, Ex. A, 266:11-267:18] **<u>and yet</u>**, he was a college graduate from a prestigious university who included a "J.D." designation in his e-mail signature block [Ex. A, 19:3-20] when soliciting potential investors and communicating with

1  Defendants about the subject financial matters underlying Plaintiff's operative complaint.

2  As Plaintiff concedes in his moving papers, the academic records from both BYU Law

3  and UC Berkeley are relevant to establishing the extent of Plaintiff's legal knowledge

4  and, ultimately, whether he was a sophisticated investor with knowledge of securities

5  and/or contract law.  Plaintiff's academic performance in courses pertaining to securities

6  law, business transactions, and tax law is likewise relevant as this is evidence that would

7  refute or support Plaintiff's claim that he lacked sufficient knowledge to weigh potential

8  risks and benefits of investment opportunities.  This information also goes to the overall

9  credibility of Plaintiff's claims about the existence of a written loan/investment

10  agreement with Defendants, which serves the basis for his fraud claims.

11       The academic records are likewise relevant and proportional to Plaintiff's

12  credibility and his claims that he suffers from memory loss that apparently affect his

13  ability to comprehend and evaluate financial transactions.  [Ex. A, 71:14-15; 72:9-10;

14  80:18-22; 129:8-9; 176:10-11; 208:6-13; 208:25-209:1; 275:12-25; 276:1-22; 213:1-11. ]

15  Plaintiff testified that he obtained academic accommodations  at both BYU and UC

16  Berkley because of his "learning disabilities," "difficulty with reading and writing," and

17  "dyslexia." [Ex. A, 275:24-276:22.]   The academic records are thus directly relevant to

18  evaluating the weight of Plaintiff's testimony and his overall credibility.  This is

19  especially true in light of the fact that Plaintiff testified that he specifically told Mr.

20  Galvanoni that he "struggled with understanding, reading, and writing" before he

21  invested money.  [Ex. A, 276:24-277:3.]   Plaintiff's academic performance in college

22  and legal courses is something that is affected by his alleged mental conditions and thus,

23  this information goes to the weight of Plaintiff's testimony and his overall credibility as a

24  witness.  Because the information sought is relevant and proportional to the parties'

25  claims and defenses, including Plaintiff's credibility, the Motion to modify these

26  Subpoenas should be denied.

27  ///

28  ///

1

**D.     The Records from Dr. Daniel Cohen Bear Directly on Plaintiff's**

2     **Credibility and Testimony that he suffers from Memory Issues and**

3     **Dyslexia**

4          The records sought from Dr. Daniel Cohen are relevant to Plaintiff's credibility

5     and sophistication as an investor because Plaintiff testified that he suffers from memory

6     issues and dyslexia that prevented him from understanding the nature and risks associated

7     with investment opportunities.  Indeed, Plaintiff placed his memory at issue when he

8     testified at deposition, no less than 10 times, that he suffers from memory loss that

9     apparently affect his ability to comprehend and evaluate financial transactions.  [Ex. A,

10    71:14-15; 72:9-10; 80:18-22; 129:8-9; 176:10-11; 208:6-13; 208:25-209:1; 275:12-25;

11    276:1-22; 213:1-11. ]  Plaintiff's claim of privacy is untenable given that he specifically

12    identified Dr. Cohen as the only medical provider from whom he sought treatment for his

13    mental conditions.  [Ex. A., 304:15-18. ]  This information goes to the weight of

14    Plaintiff's testimony and his overall credibility as it provides objective information about

15    the nature and extent of Plaintiff's alleged "learning disabilities" and difficulty

16    understanding, which in turn, bears on his sophistication as an investor and ability to

17    evaluate potential risks and benefits associated with investments, which Plaintiff claims

18    he could not do.  Defendants expressly agreed to limit the Subpoena to Dr. Cohen to seek

19    only those records that pertain to Plaintiff's memory issues and dyslexia, thus rendering

20    Plaintiff's Motion to modify this Subpoena moot.

21    **E.     The Investment Records from Vujadin Jovic Relate to Plaintiff's**

22    **Sophistication as an Investor**

23         The investment records sought from Vujadin Jovic are relevant and proportional to

24    the parties' claims and defenses because the nature and extent of Plaintiff's prior

25    investments, financial transactions, and business dealings bears on his sophistication as

26    an investor.  Plaintiff testified that he participated in investments and financial

27    transactions with Mr. Jovic involving at least $500,000 [Ex. A,  299:11-24]  and yet,

28    Plaintiff nevertheless claims that he was an "unsophisticated" investor [Ex. A, 30:24-

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO QUASH THIRD PARTY SUBPOENAS
ClarkHill\93764\327708\221663539.v1-5/22/19

31:1] with insufficient financial and business knowledge.  The testimony and documents sought from Mr. Jovic are therefore relevant to establishing the nature and extent of Plaintiff's prior investments, including his experience and involvement in commercial funding and financial transactions; whether Plaintiff considered himself a lender or investor with respect to the subject investments; whether Plaintiff could weigh the risks and benefits of investment opportunities; and whether he executed written agreements in the outside investments with Mr. Jovic in which he participated.  Indeed, **<u>Plaintiff concedes the relevance of this information in his responses to written discovery, which identify his prior investments with Mr. Jovic and state that Plaintiff would produce these records</u>**.  [Hughes Dec., ¶ 13.]  Because records and information regarding prior investments pertains to Plaintiff's investing experience and sophistication as an investor, Plaintiff's Motion to quash the Subpoena to Mr. Jovic should be denied.

### F.      The Information and Records from Susan Marshall Relate to Plaintiff's Investing Experience and Source of Funding

The information records sought from Susan Marshall are relevant and proportional to the parties' claims and defenses because Ms. Marshall is expected to have knowledge pertaining to the nature and extent of Plaintiff's prior investments, his sophistication as an investor, and his memory and dyslexia conditions.  Plaintiff testified at deposition that he is unable to identify the source of funds he used in connection with the underlying investments.  [Ex. A, 131:11-22; 132-99-12.]  Indeed, Plaintiff testified that one of the wire transfers he made for $25,000 to Defendants originated from his minor daughter's account at Patelco Credit Union. [Ex. A, 131:11-22; 132-99-12.]  Plaintiff testified that he did not discuss the funds being taken out of Madison's account with his ex-wife and, "the money that is my money, I can invest my money, and I didn't discuss with others." [Ex. A, 241:10-15.]   Any notice or communications Susan Marshall had with Plaintiff regarding the use of their daughter's savings in Plaintiff's personal business deals is directly relevant to Plaintiff's sophistication as an investor and goes to whether Plaintiff considered himself a lender or investor in his deals with DPG Investments, LLC.  Indeed,

1    it is unreasonable to conclude, as Plaintiff urges this Court to do, that he was

2    "unsophisticated" and had difficulty understanding, reading, and writing but nonetheless

3    used $25,000 of his minor daughter's money without discussing this use with his ex-wife

4    Susan Marshall.  This information is directly relevant to Plaintiff's claims, credibility,

5    and purported "unsophistication."

6         The information from Ms. Marshall likewise bears on Plaintiff's credibility given

7    his claim that he has an acrimonious relationship with Ms. Marshall and does not

8    communicate with her at all.  Plaintiff's counsel admitted during meet and confer

9    discussions that she provided a template for objections to Plaintiff, who subsequently

10   gave and spoke to Ms. Marshall about the objections.  [Hughes Dec., ¶ 21.]  Plaintiff's

11   counsel also identified text messages that she reviewed in which Plaintiff spoke to Ms.

12   Marshall about this litigation.  [*Id.*]  The Subpoena to Ms. Marshall is thus relevant to

13   Plaintiff's credibility as a witness because of the inconsistencies between Plaintiff's

14   testimony, claims, and actions.

15        **G.    The Subpoena to Chris Morrow is Relevant to Plaintiff's**

16             **Sophistication as an Investor and Financial Knowledge**

17        The records sought from Chris Morrow are relevant and proportional to the

18   parties' claims and defenses because the information pertains to Plaintiff's sophistication

19   as an investor, understanding of financial and business transactions, and ability to assess

20   the potential risks and benefits of the transactions underlying his operative complaint.

21   Plaintiff specifically identified Mr. Morrow as an individual Plaintiff transacted with on

22   prior investments, including investments in which Plaintiff lost money of approximately

23   $75,000.  [Ex. A, 300:2-9.]  (This is in addition to the approximately $500,000 in

24   investments that Plaintiff made with Mr. Jovic [Ex. A, 299:11-22] and Plaintiff's

25   $35,000,000 real estate portfolio [Ex. A, 266:11-267:18.]   The nature and extent of these

26   prior investments and Plaintiff's participation in these financial transactions goes directly

27   to Plaintiff's overall understanding of investment opportunities.  This information also

28   speaks to the credibility and relative weight of Plaintiff's testimony that he was a passive

1   investor in the subject financial transactions with no investment experience and

2   "unsophisticated" [Ex. A, 30:24-31:1].  Because this information is relevant to refuting or

3   supporting Plaintiff's claims that he was an unsophisticated investor, Plaintiff's Motion to

4   Quash the Subpoena to Mr. Morrow should be denied.

5          **H.      The Investment Records from Todd Owen Relate to Plaintiff's**

6                   **Sophistication as an Investor**

7          The investment records sought from Todd Owen are relevant and proportional to

8   the parties' claims and defenses because the nature and extent of Plaintiff's prior

9   investments, financial transactions, and business dealings bears on his sophistication as

10  an investor.  Plaintiff testified that he participated in investments Mr. Owen [Ex. A,

11  301:15-20]—among numerous other individuals—but claims that he lacked sufficient

12  knowledge to understand the risks and benefits associated with the underlying subject

13  transactions.  The records and information from Mr. Own thus bear directly on Plaintiff's

14  claim that he "unsophisticated" [Ex. A, 30:24-31:1] and lacks knowledge and experience

15  in financial and business matters such that he could sufficiently evaluate the risks and

16  benefits of the subject investments.

17         Plaintiff's claim that these records are protected by his right to privacy is

18  untenable given that he identified prior investments with Mr. Jovic in his verified

19  discovery responses as relevant but excluded these.  [See Hughes Dec., Ex. 13.]  All of

20  Plaintiff's investment experience is relevant to the parties' claims and defenses because it

21  is the weight of this experience and knowledge that bears on Plaintiff's sophistication.

22  This information is necessary to establish the credibility and weight of Plaintiff's claim

23  that he was merely an inactive or unsophisticated investor.

24  ///

25  ///

26  ///

27  ///

28  ///

1  **VI.**   **CONCLUSION**

2         Inasmuch as the records sought by the Subpoenas are relevant and proportional to

3  Plaintiff's claims of fraud and his lack of sophistication as an investor, Plaintiff's Motion

4  to Quash/Modify should be denied.

5  Dated:   May 22, 2019                            CLARK HILL LLP

6

7

8                                       By: _____
                                             Bradford G. Hughes
9                                            Tiffany B. Hunter

10                                      Attorneys for defendants DANIEL P.
                                        GALVANONI; DPG INVESTMENTS, LLC;
11                                      DPG GOLDEN EAGLE, LLC; SPRING TREE
                                        LENDING, LLC; SPRING TREE HOLDINGS,
12                                      LLC; SPRING TREE FINANCIAL, LLC; and
                                        SKIBO HOLDINGS, LLC

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO QUASH THIRD PARTY SUBPOENAS
ClarkHill\93764\327708\221663539.v1-5/22/19

## DECLARATION OF BRADFORD G. HUGHES

I, Bradford G. Hughes, declare as follows:

1.     I am an attorney at law, duly licensed to practice before the courts of the State of California.  I am a Partner with the law firm of Clark Hill LLP, attorneys of record for defendants Daniel P. Galvanoni, DPG Investments, LLC, DPG Golden Eagle, LLC, Spring Tree Lending, LLC, Spring Tree Holdings, LLC, Spring Tree Financial, LLC, and SkiBo Holdings, LLC in the above referenced matter.

2.     I submit this Declaration in support of Defendants' Opposition to Plaintiff's Motion to Quash and/or Modify Third Party Depositions Subpoenas and/or Subpoenas Duces Tecum Issued to Armstrong & Associates Insurance Services, Sean Boyd, Brigham Young University, University of California-Berkeley, Daniel C. Cohen, Vujadin Jovic, Susan Marshall, Christian Morrow, and Todd Owen.

3.     I have personal knowledge of the facts set forth herein and if called to testify could and would competently testify thereto.

4.     Plaintiff's Second Amended Complaint alleges that Defendants breached various duties owed to Plaintiff arising out of his investments with Defendants. Defendants' answer raises various defenses, including the affirmative defense for Sophisticated Investor.

5.     On March 14, 2019, Plaintiff was deposed in Sacramento, California. Attached hereto as Exhibit "A" is a true and correct copy of the excerpt of Plaintiff's deposition.

### A.     Plaintiff Testifies That He Is Not A Sophisticated Investor

6.     Plaintiff testified at his deposition on March 14, 2019 that he does not consider himself a sophisticated investor.  Ex. A, 30:24-31:1.  In fact, Plaintiff testified that he did not know what the word "sophisticated" meant, despite having a $35,000,000 real estate portfolio. Ex. A, 266:11-267:18.

7.     Despite Plaintiff's representation that he is an unsophisticated investor, Plaintiff confirmed that he attended Brigham Young University for law school and

University of California, Berkeley for his undergraduate degree.  Plaintiff also testified that he has used and uses the designation "J.D." for Juris Doctor on his business correspondence, although he cannot recall why he does so.  Ex. A, 19:3-20.

**B.     Plaintiff Testifies That He Has Memory Loss Issues**

8.     Plaintiff further testified that he suffers from memory loss that apparently affect his ability to comprehend and evaluate financial transactions.  Ex. A, 71:14-15; 72:9-10; 80:18-22; 129:8-9; 176:10-11; 208:6-13; 208:25-209:1; 275:12-25; 276:1-22; 213:1-11.  In an ostensible effort to substantiate his claims of memory loss, Plaintiff specifically identified Dr. Daniel C. Cohen as the doctor he sees for treatment of his memory and mental conditions.  Ex. A., 304:15-18.

**C.     Plaintiff Testifies That He Has Previously Investment Losses and That He Has Reported Those Investments to the SEC**

9.     Plaintiff testified that he participated in numerous past investments with Mr. Todd Owen, Mr. Vujadin Jovic, and Mr. Chris Morrow.  Ex. A, 242:1-19; 301:18-25; 298:18-299:24; 299:25-300:23.  In written discovery, Plaintiff likewise identified Mr. Jovic as an investor with whom he had prior, relevant investment experience.  Plaintiff testified at deposition that he has contacted the Securities and Exchange Commission or the FBI with respect to Mr. Todd Owen and Mr. Chris Morrow because he lost money with those individuals.  Plaintiff contacted the SEC and the FBI regarding the Defendants in this case. Ex. A., 297: 8-19.

**D.     Plaintiff Testifies That One Wire Transfer to the Defendants for Investment Came From His Daughter's Account**

10.     Plaintiff testified at deposition that one of the wire transfers that he made in the amount of $25,000 to the Defendants originated from his daughter Madison's account at Patelco Credit Union. Ex. A, 131:11-22; 132-99-12. Plaintiff testified that he did not discuss the funds being taken out of Madison's account with his ex-wife and, "[b]ut the money that is my money, I can·invest my money, and I didn't discuss with others." Ex. A, 241:10-15.

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO QUASH THIRD PARTY SUBPOENAS
ClarkHill\93764\327708\221663539.v1-5/22/19

11.     Based on the testimony of Plaintiff and the issues raised in discovery, Defendants issued subpoenas duces tecum on April 25, 2019 to Armstrong & Associates Insurance Service, Brigham Young University School of Law, University of California Berkeley, California Department of Insurance, and Dr. Daniel Cohen.  The production date for these subpoenas was set for May 16, 2019.

12.     Additionally, on April 25, 2019, Defendants issued deposition subpoenas with related requests for production of documents to Sean Boyd C.P.A., Susan Marshall, Todd Owen, Christian Morrow, and Vujadin Jovic.  The depositions of Sean Boyd, Susan Marshall, and Vujadin Jovic were set for May 16, 2019.  The depositions of Christian Morrow and Todd Owen were set for May 17, 2019.

13.     Attached hereto as Exhibit "B" is a true and correct copy of Plaintiff's Responses to Defendant Daniel Galvanoni's Special Interrogatories, Set One, to Plaintiff John Marshall.  In response to Special Interrogatory Number One, Plaintiff identified Vujadin Jovic as a relevant individual and agreed to produce investment records between him and with Mr. Jovic.  [Ex. B, 2:23-27.]

14.     On April 29, 2019, counsel for Plaintiff delivered a meet and confer letter to my office requesting that Defendants withdraw seven of the ten subpoenas in their entirety and limit the remaining subpoenas.  Attached hereto as Exhibit "C" is a true and correct copy of Plaintiff's April 29, 2019 meet and confer letter.

15.     On May 3, 2019, I sent a letter to opposing counsel, in which agreed to narrow the scope of the subpoena to Dr. Cohen to seek only documents pertaining to Plaintiff's memory and dyslexia conditions.  I did not receive any response to my May 3, 2019 letter.  Attached hereto as Exhibit "C" is a true and correct copy of Defendant's May 3, 2019 letter to opposing counsel.

16.     On May 1, 2019, Sean Boyd and Susan Marshall served objections to their subpoenas for depositions and related requests for production of documents.  My office had not been able to effectuate service upon these deponents at that time, and has been unable to effectuate service through the present date.

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO QUASH THIRD PARTY SUBPOENAS
ClarkHill\93764\327708\221663539.v1-5/22/19

17.     On May 2, 2019, Armstrong & Associates served objections to its subpoena duces tecum.

18.     On May 7, 2019, Plaintiff filed the instant Motion for Protective Order and Motion to Quash, pertaining to all of the above subpoenas except for that issued to the California Department of Insurance.

19.     Counsel for all parties conferred telephonically regarding the instant motions.  During the conference, Defendants made the following concessions:

a.     Defendants agreed to withdraw and re-serve the subpoena to Dr. Cohen to limit the production of documents to those pertaining to Plaintiff's memory condition, dyslexia, and any other learning disability;

b.     Defendants also agreed to exclude documents pertaining to Plaintiff's tax returns from the subpoena to Sean Boyd;

c.     Defendants further agreed to limit the subpoena to Susan Marshall to exclude from production divorce records pertaining to child custody matters and instead seek only financial records; and

d.     Defendants also agreed to limit the subpoena to Todd Owen to exclude customer information and trade secret information.

20.     Plaintiff declined these concessions, and no agreement was reached as to any of the subpoenas during the telephonic conference.

///

///

///

///

///

///

///

///

///

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO QUASH THIRD PARTY SUBPOENAS
ClarkHill\93764\327708\221663539.v1-5/22/19

21.     During the May 15, 2019 telephonic conference, the parties also discussed the objections served by Sean Boyd, Susan Marshall, and Armstrong & Associates.   In this conversation, Plaintiff's counsel stated that she did not prepare the objections served by any of these subpoena-deponents.   Plaintiff's counsel, however, stated that she provided Plaintiff with a template for the objections.  She further stated that she saw text messages between Plaintiff and Ms. Marshall regarding this matter.

I declare under the penalty of perjury under the law of the United States of America that the foregoing is true and correct.

Executed on this 22nd day of May, 2019 in Los Angeles, California.

Bradford G. Hughes

19                                      2:17-CV-00820-KJM-CKD