Melinda Jane Steuer (SBN: 216105)
The Law Offices of Melinda Jane Steuer
928 Second Street, Suite 302
Sacramento, CA 95814
Telephone: (916) 930-0045
Facsimile: (916) 314-4100

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN MARSHALL, an individual<br><br>Plaintiff,<br><br>vs.<br><br>DANIEL P. GALVANONI, an individual; DPG INVESTMENTS, LLC, a foreign limited liability company; DPG GOLDEN EAGLE, LLC, a foreign limited liability company; SPRING TREE LENDING, LLC, a foreign limited liability company; SPRING TREE HOLDINGS, LLC; SPRING TREE FINANCIAL, LLC; SKIBO HOLDINGS, LLC; a foreign limited liability company; GERALD T. HUDSPETH, an individual; JEROME L. JOSEPH, an individual; WILLIAM J. BROOKSBANK, an individual; and DOES 1-100, inclusive,<br><br>Defendants. | Case No.: 2:17-cv-00820-KJM-CKD<br><br>**JOINT STATEMENT REGARDING DISCOVERY DISAGREEMENT AS TO PLAINTIFF'S MOTION TO QUASH AND/OR MODIFY THIRD PARTY SUBPOENAS AND/OR SUBPOENAS DUCES TECUM ISSUED TO ARMSTRONG & ASSOCIATES INSURANCE SERVICES, SEAN BOYD, BRIGHAM YOUNG UNIVERSITY, UNIVERSITY OF CALIFORNIA-BERKELEY, DANIEL C. COHEN, VUJADIN JOVIC, SUSAN MARSHALL, CHRISTIAN MORROW & TODD OWEN**<br><br>**Date:** **June 5, 2019**<br>**Time:** **10:00 A.M.**<br>**Dept:** **Courtroom 24, 8th Floor**<br>**Judge:**  **Hon. Carolyn K. Delane**y |

# TABLE OF CONTENTS

**Page(s)**

DISCOVERY DISPUTES

I.  **ARMSTRONG & ASSOCIATES INSURANCE SERVICES** ……………...…..4

PLAINTIFF'S ARGUMENTS …………………………………………4

   A.   Summary of Grounds for Motion to Quash …………………………4

   B.   Summary of the Case and Procedural History …………………..……4

   C.   Legal Discussion ……………………………………………………6

      1.   The Subpoena to Armstrong Seeks Private and Confidential Information Which Is not Relevant to This Matter ………………………….....6

      2.   The Subpoena Is Overly Broad …………………………………10

      3.   Compliance With the Subpoena Would Be Unduly Burdensome …………10

      4.   If Any of Plaintiff's Employment Records Were Relevant, They Could Be Obtained Directly from Plaintiff………………………………………11

DEFENDANT'S ARGUMENTS ……………………………………………11

II.  **SEAN BOYD** ………………………………………………17

PLAINTIFF'S ARGUMENTS ……………………………………..18

   A.  Summary of Grounds for Motion to Modify …………………………18

   B.  Legal Discussion ………………………………………………18

DEFENDANT'S ARGUMENTS ……………………………………20

III.  **SUBPOENAS DUCES TECUM TO BRIGHAM YOUNG UNIVERSITY AND UNIVERSITY OF CALIFORNIA-BERKELEY** …………………………22

PLAINTIFF'S ARGUMENTS ………………………………………22

   A.  Summary of Grounds for Motion to Modify …………………………22

   B.  Legal Discussion ………………………………………………22

DEFENDANT'S ARGUMENTS ……………………………………23

IV.  **SUBPOENA DUCES TECUM TO DANIEL COHEN, M.D.** ………………25

PLAINTIFF'S ARGUMENTS ………………………………………25

A. Summary of Grounds for Motion to Modify ……………………………………25

B. Legal Discussion ………………………………………………………………26

DEFENDANT'S ARGUMENTS …………………………………………………26

**V. DEPOSITION SUBPOENA TO VUJADIN JOVIC** ……………………………27

A. Summary of Grounds for Motion to Quash ……………………………………29

B. Legal Discussion ………………………………………………………………29

DEFENDANTS' ARGUMENTS …………………………………………………31

**VI. DEPOSITION SUBPOENA TO SUSAN MARSHALL** ……………………………32

PLAINTIFF'S ARGUMENTS …………………………………………………33

A. Summary of Grounds for Motion to Quash ………………………………………33

B. Legal Discussion ………………………………………………………………34

DEFENDANTS' ARGUMENTS …………………………………………………35

**VII. DEPOSITION SUBPOENA TO CHRISTIAN MORROW** ……………………37

PLAINTIFF'S ARGUMENTS …………………………………………………38

A. Summary of Grounds for Motion to Modify ……………………………………38

B. Legal Discussion ………………………………………………………………38

DEFENDANTS' ARGUMENTS …………………………………………………39

**VIII. DEPOSITION SUBPOENA TO TODD OWEN** ……………………………40

A. Summary of Grounds for Motion to Modify ……………………………………41

B. Legal Discussion …………………………………………………………………41

DEFENDANTS' ARGUMENTS …………………………………………………41

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

Pursuant to Rule 251 of the Local Rules of the United States District Court for the Eastern District of California, Plaintiff John Marshall ("Plaintiff") and Defendants Daniel P. Galvanoni, DPG Investments, LLC, DPG Golden Eagle, LLC, Spring Tree Lending, LLC, Spring Tree Holdings, LLC, Spring Tree Financial, LLC, and Skibo Holdings, LLC (collectively "Defendants") hereby submit this Joint Statement re Discovery Disagreement.

This discovery dispute arises from Plaintiff's Motion to Quash/Modify third-party subpoenas issued to Armstrong & Associates Insurance Services, Sean Boyd, Brigham Young University, University of California Berkeley, Daniel C. Cohen, Vujadin Jovic, Susan Marshall, Christian Morrow, and Todd Owen.  The motion is scheduled to be heard on June 5, 2019.

## DISCOVERY DISPUTES

### I.   ARMSTRONG & ASSOCIATES INSURANCE SERVICES

The subpoena *duces tecum* to Armstrong & Associates Insurance Services requests the following documents: "All employment, disciplinary, and financial records of or pertaining to John Marshall in your possession, custody, or control."

## PLAINTIFF'S ARGUMENTS

### A.  Summary of Grounds for Motion to Quash

Plaintiff seeks an order quashing the subpoena duces tecum to his employer, Armstrong & Associates Insurance Services, Inc. ("Armstrong"), in its entirety on the grounds that it seeks personnel and employment records which are private and confidential; it seeks protected trade secret and confidential information pertaining to his insurance customers; none of the information sought is relevant; the subpoena is overly broad in time frame and scope; compliance would impose an undue burden upon Plaintiff and Armstrong; and, if any of the requested documents were relevant, they could be obtained from the Plaintiff.  Armstrong also served timely objections to this subpoena upon similar grounds.  (Exhs. 13 & 16 to Declaration of Melinda Jane Steuer ("Steuer Decl."))

### B.   Summary of the Case and Procedural History

This case arises out of fraud, breaches of fiduciary duty, negligence and breach of contract with respect to investments totaling $300,000.00, which Plaintiff John Marshall made in

Defendants' sub-prime automobile loan business between June of 2015 and March of 2016. Plaintiff alleges that Defendant Daniel Galvanoni induced him to make the investments at issue by making false representations and material omissions regarding the use of Plaintiff's monies, the safety of the investments, the background and qualifications of the personnel running the business, the due diligence which was done with respect to the business, and the security for Plaintiff's investments.  Plaintiff also alleges that Defendants breached their promises to fully secure Plaintiff's investments with sub-prime automobile loans.  Plaintiff further alleges that some, if not all, of the monies he invested were withdrawn by Mr. Galvanoni for his own personal use, or used to make payments to Mr. Galvanoni's family members and other insiders of the Defendant entities.  Lastly, Plaintiff alleges that Defendants never repaid any of his principal and did not pay him any of the promised interest.  Plaintiff's allegations are supported by bank statements, numerous emails from Mr. Galvanoni, and the testimony of third-party Westley Anderson, as well as by Plaintiff's testimony.

The subpoenas at issue go far beyond the scope of what is relevant to this investment dispute by demanding all of Plaintiff's employment records, his divorce records from 2003, his medical records, his academic records from over thirty years ago, the entirety of his financial records, and every communication with three other individuals with whom he made investment, with no limitation on time frame or scope.  Plaintiff reasonably believes that these subpoenas are a conscious effort by Defendants to fulfill Mr. Galvanoni's threats that he would seek to cause Plaintiff to lose his job, involve Plaintiff's ex-wife and create dissension with Plaintiff's children, embarrass Plaintiff, and stir up acrimony with other individuals with whom Plaintiff has invested.  (Declaration of John Marshall ("Marshall Decl.") ¶ 8)

The speciousness of these subpoenas is borne out by the fact that Plaintiff does not allege that he has lost income as a result of the investments at issue, nor that he lacked the financial means to make those investments.  Plaintiff has also produced or agreed to produce extensive information about his financial situation and other investments, which goes far beyond the scope and time frame of what is relevant to this case, in an effort to accommodate Defendants. Specifically, Plaintiff has provided Defendants with highly detailed information regarding his

income, assets and liabilities, and answered interrogatories seeking the amount of his income during 2013-2015.  (Steuer Decl. ¶ 2)  In addition, moving counsel has agreed to produce Plaintiff's W-2s and 1099s for 2013-2016, Plaintiff's profit and loss statements for 2013-2016; investment contracts between Mr. Marshall and/or Fortam, LLC [an entity owned by Mr. Marshall] and Vujadin Jovic and/or LOA Properties, Inc. [an entity owned by Mr. Jovic]; and Mr. Marshall's brokerage account statements going back to 2008, subject to a protective order. (Steuer Decl. ¶ 2; Exh. 1 to Steuer Decl.)

For these reasons, and as further discussed below, the subpoenas at issue should be quashed and/or modified because they seek privileged, private and irrelevant information; they are grossly overbroad as to time frame and scope; and any relevant information has been acquired or could be acquired from the Plaintiff.

### C.  Legal Discussion

#### 1.  The Subpoena to Armstrong Seeks Private and Confidential Information Which Is not Relevant to This Matter

Upon a timely motion, the court must quash or modify a subpoena that requires the disclosure of privileged or other protected matter, or subjects a person to undue burden. (F.R.C.P. 45(c)(3)(A)(iii)(iv).)   A party has a personal privacy right with respect to information regarding his employment, including information contained in his personnel files and employment records, that is sufficient to confer standing to move to quash a subpoena for his employment records that was served on a third party.  (*EEOC v. Tex. Roadhouse, Inc.,* 303 F.R.D. 1, 2 (D. Mass. 2014); *Crispin v. Christian Audigier,* 717 F. Supp.2d 965, 974 (C.D. Cal. 2010); *Warnke v. CVS Corp,* 265 F.R.D. 64, 66 (E.D. N.Y. 2010); *Richards v. Convergys Corp*., 2007 U.S. Dist. LEXIS 9131 at *4-6 (D. Utah 2007).)   The court may also quash a subpoena that requires the disclosure of a trade secret or other confidential commercial information.  (F.R.C.P. Rule 45(c)(3)(B).)

The courts, in determining whether to quash a subpoena, have the right and obligation to examine requests in a subpoena issued to a non-party to ascertain whether they are overly broad or seek irrelevant information.  (*Barkley v. Cal. Corr. Health Care Servs.,* 2017 U.S. Dist. LEXIS 67017 at *4-5 (E.D. Cal. 2017); *Tex. Roadhouse, supra,* 303 F.R.D. at 2; *Hendricks v.*

1   *Total Quality Logistics,* 275 F.R.D. 251, 253 (S.D. OH 2011); *Warnke, supra,* 265 F.R.D. at 66;

2   *Moon v. SCP Pool Corp.,* 232 F.R.D. 633, 637 (C.D. Cal. 2005).)   If the relevancy of the

3   discovery sought is not apparent on the face of the request, the party seeking the discovery has

4   the burden to show why the request is relevant.   (*Hendricks, supra,* 275 F.R.D. at 253.)   In

5   deciding whether or not to quash a subpoena, the trial court weighs the Defendants' need for the

6   information, the availability of other means of obtaining it, and the burden of compliance.   (*Tex.*

7   *Roadhouse, supra,* 303 F.R.D. at 2.)

8        In that regard, the courts have consistently quashed subpoenas seeking the Plaintiff's

9   personnel and employment records from current employers on relevance grounds, including in

10   employment cases.   (See e.g. *Scott v. Multicare Health Sys.,* 2019 U.S. Dist. LEXIS 61787 at *4-

11   5 (W.D. Wash. 2019), [holding that a subpoena to the Plaintiff's current employer for the

12   Plaintiff's performance and disciplinary-related personnel records was not relevant to the

13   Plaintiff's claims of wrongful termination and retaliation by a prior employer]; *Reed v. Madison*

14   *City,* 2016 U.S. Dist. LEXIS 189314 at *4-6 (S.D. Miss. 2016), [holding that a subpoena to the

15   Plaintiff's current employer for the Plaintiff's personnel records should be quashed because the

16   Plaintiff's job performance at another employer had only attenuated relevance to her claims of

17   wrongful termination, and was not relevant to the issue of the Plaintiff's credibility]; *Blotzer v.*

18   *L-3 Communs. Corp.,* 287 F.R.D. 507, 509-510 (D. Ariz. 2012), [holding that a subpoena to the

19   Plaintiff's current employer which sought the entirety of the Plaintiff's personnel file and

20   employment records should be quashed because none of the records were relevant to the

21   Plaintiff's claim that the Defendant had failed to pay him overtime]; *Hendricks, supra,* 275

22   F.R.D. at 253-254 [holding that a subpoena seeking Plaintiff's employment records from his

23   current employer should be quashed because such documents had little to no bearing on the

24   ultimate question of whether Plaintiffs were exempt from overtime requirements while employed

25   by Defendant].)

26        Here, the subpoena to Armstrong seeks the entirety of Plaintiff's personnel and

27   employment records from his current employer.   As the authorities above hold, such records are

28   private and confidential.   Further, Plaintiff's employment records encompass private and

Joint Statement Regarding Discovery Disagreement as to Plaintiff's Motion to Quash and/or Modify Third
Party Subpoenas and/or Subpoenas Duces Tecum Issued to Armstrong & Associates Insurance Services, Sean Boyd,
Brigham Young University, University of California-Berkeley, Daniel C. Cohen, Vujadin Jovic, Susan Marshall,
Christian Morrow & Todd Owen
7

protected trade secret information pertaining to Plaintiff's insurance customers because Plaintiff is an insurance agent who owns his own book of business.  (Marshall Decl. ¶ 12)  Plaintiff is particularly sensitive to Defendants' demand for this information because Mr. Galvanoni has threatened to contact Armstrong, cause Plaintiff to lose his job, and ruin Plaintiff financially, and because Defendants' counsel threatened to contact Plaintiff's customers when some of their information was inadvertently produced by Plaintiff's counsel's office.  (Marshall Decl. ¶ 9; Steuer Decl. ¶ 4; Exh. 2 to Steuer Decl.)

The requested documents have no conceivable relevance to this case.  As the authorities above hold, employment records from a Plaintiff's current employer are not even deemed to be relevant in employment related cases, where the Plaintiff's job performance and/or income are at issue.  Here, the potential relevance is more remote, because the instant matter is an investment case whereby Plaintiff is seeking rescission and/or damages for his investment losses.  It is not an employment matter.  Plaintiff's employment status and job performance are not at issue. Plaintiff is also not seeking to recoup lost income.

Defendants' assertion that they need to acquire all of Plaintiff's confidential employment and customer records to show his investment sophistication is without merit.   Plaintiff is a commercial insurance agent who sells property, casualty, and workers compensation insurance. (Marshall Decl. ¶ 2)  His employment status, including the type of insurance he is licensed to sell, is a matter of public record.  (Marshall Decl. ¶ 2; Exh. 1 to Marshall Decl.)  As those public records reflect, Plaintiff is not licensed to sell any insurance products which require a securities license.  There is nothing regarding the insurance products which Plaintiff is licensed to sell that would lead to the conclusion that Plaintiff was or is knowledgeable about the automobile sub-prime loan business.  Most importantly, Defendants do not need any, let alone all, of Plaintiff's employment records to support their argument that Plaintiff's job as a commercial insurance agent causes him to be a "sophisticated" investor.  Defendants' assertion that Plaintiff's employment records are relevant to show that Plaintiff does not suffer from memory loss is equally specious.  First, Plaintiff did not testify that his memory issues impacted his ability to comprehend and evaluate the investments at issue.  Plaintiff testified that he struggles with

reading and writing due to his dyslexia.  (Exh. 20 to Steuer Decl. at pp. 71:10-15, 72:9-10, 80:21-22, 129:8-9, 176:10-11, 208:8-11, 208:25-209:1, 275:22-276:10)  However, Plaintiff did not testify and has not claimed that his dyslexia has prevented him from being able to sell commercial property, casualty and workers compensation insurance.  Accordingly, there are no "credibility" issues with respect to Plaintiff's dyslexia that would be rebutted by his employment records.

Defendants also assert that Plaintiff waived privacy rights by producing some Armstrong documents in discovery.  This assertion is disingenuous in the extreme.  The documents in question were **inadvertently** produced in discovery by Plaintiff's counsel's office.  (Steuer Decl. ¶ 4)  The inadvertent production of documents is not a waiver.  (*Rico v. Mitsubishi Motors Corp.,* 42 Cal.4th 807, 817-819 (2007); *State Comp. Ins. Fund v. WPS, Inc.,* 70 Cal. App.4th 644, 653 (1999); *O'Mary v. Mitsubishi Electronics America, Inc.,* 59 Cal. App.4th 563, 577 (1997).)

Likewise, Defendants' assertion that Plaintiff waived all privacy rights with respect to his personnel records and customer information by sending them emails from his Armstrong address is unsupported by any authority and completely lacking in merit.  Plaintiff suffers from dyslexia.  (Marshall Decl. ¶ 4)  He has therefore used his Armstrong email address for most purposes over the last several years because it runs through Outlook and is therefore easier for Plaintiff to read than his personal webmail address.  (Marshall Decl. ¶ 6)  That does not constitute a waiver of Plaintiff's privacy rights, Plaintiff's and Armstrong's trade secrets, nor the privacy rights of Plaintiff's customers.  Indeed, Plaintiff is not an officer nor manager of Armstrong.  (Marshall Decl. ¶ 5)  Plaintiff never stated nor indicated that he was acting on behalf of Armstrong in his interactions with the Defendants, except for the limited purpose of looking into potential insurance coverage for the Defendant entities.  (Marshall Decl. ¶ 7)  Further,  Defendants have not presented any evidence that Plaintiff "recruited" potential investors in Defendants' subprime automobile loan business, let alone that he did so on behalf of Armstrong.

On the contrary, Plaintiff testified that he did not actively seek out potential investors.  (Exh. 20 to Steuer Decl. at p. 273:14-20)  Most importantly, there is no evidence that Plaintiff disclosed any information from his personnel files to Defendants, or that he intentionally

disclosed customer information to the Defendants, or that he waived any privacy or trade secret protections.

Simply put, there is no valid reason why Defendants should be allowed to engage in a fishing expedition through the entirety of Plaintiff's confidential personnel, employment and customer records in order to defend themselves in this investment dispute.

### 2. The Subpoena Is Overly Broad

The courts have consistently held that subpoenas which seek the entirety of a Plaintiff's employment and/or personnel records without limitation are overly broad on their face and should be quashed on those grounds. (*Cones v. Parexel Int'l Corp.,* 2018 U.S. Dist. LEXIS 145565 at *9 (S.D. Cal. 2018); *Tex. Roadhouse, supra,* 303 F.R.D. at 3-4; *Blotzer, supra,* 287 F.R.D. at 510; *Hendricks, supra,* 275 F.R.D. at 254; *Badr v. Liberty Mut. Group, Inc.,* 2007 U.S. Dist. LEXIS 73437 at *7-8 (D. Conn. 2007); *Richards, supra,* 2007 U.S. Dist. LEXIS 9131 at *14-19.

Such is the case here. The subpoena to Armstrong seeks "all employment, disciplinary, and financial records of or pertaining to John Marshall." (Exh. 4 to Steuer Decl.) It is clearly overly broad.

### 3. Compliance With the Subpoena Would Be Unduly Burdensome

As discussed above, the burden of compliance is a relevant factor in determining whether to quash a subpoena. (*Tex. Roadhouse, supra,* 303 F.R.D. at 2.) Here, compliance with the subpoena would be highly burdensome upon both Plaintiff and his employer because it would require many hours of time by Plaintiff and/or Armstrong that would interfere with Plaintiff's and Armstrong's ability to conduct their insurance business. (Marshall Decl. ¶¶ 11 & 13)

### 4. If Any of Plaintiff's Employment Records Were Relevant, They Could Be Obtained Directly from Plaintiff

The courts have recognized that subpoenas directed at litigants' employers should only be used as a last resort because they can be a tool for harassment and have a direct negative effect on litigants' relationships with their employers. (*Reed, supra,* 2016 U.S. Dist. LEXIS 189314 at *9; *Tex. Roadhouse, supra,* 303 F.R.D. at 2; *Warnke, supra,* 265 F.R.D. at 69.) The courts have

Joint Statement Regarding Discovery Disagreement as to Plaintiff's Motion to Quash and/or Modify Third Party Subpoenas and/or Subpoenas Duces Tecum Issued to Armstrong & Associates Insurance Services, Sean Boyd, Brigham Young University, University of California-Berkeley, Daniel C. Cohen, Vujadin Jovic, Susan Marshall, Christian Morrow & Todd Owen

10

1  therefore quashed subpoenas to employers which seek records that the Plaintiff is able to

2  provide.  (See e.g. *Tex. Roadhouse, supra,* 303 F.R.D. at 3-4; *Warnke, supra,* 265 F.R.D. at 69-

3  70; *Richards, supra,* 2007 U.S. Dist. LEXIS 9131 at *17-18.)

4      Here, none of the records Defendants seek from Armstrong are relevant, for the reasons

5  discussed above.  Further, if any such records were relevant, Plaintiff could provide them.

6  Defendants, however, have not requested those records from Plaintiff.  Instead, they have sought

7  to harass and embarrass Plaintiff by subpoenaing those records from his employer.  That should

8  not be allowed.

9                          **DEFENDANTS' ARGUMENTS**

10     **A.    Summary of the Case and Procedural History.**

11     This action pertains to an investment agreement between Plaintiff and Defendants.

12  Plaintiff, a juris doctorate with extensive business and investment experience, including

13  managing a real estate investment portfolio worth tens of millions of dollars, seeks to recover

14  damages for alleged fraudulent investments.  Plaintiff's Second Amended Complaint alleges that

15  Defendants breached various duties owed to Plaintiff arising out of his investments with

16  Defendants.  Defendants' Answer raises various defenses, including the affirmative defense for

17  Sophisticated Investor.  Plaintiff now claims that he suffers from memory difficulty and various

18  learning disabilities that impacted his ability to understand the investment transactions.

19     On April 25, 2019, Defendants issued subpoenas *duces tecum* to Armstrong & Associates

20  Insurance Services ("Armstrong"), Brigham Young University School of Law ("B.Y.U."),

21  University of California Berkeley ("U.C. Berkeley"), California Department of Insurance, and

22  Dr. Daniel Cohen ("Dr. Cohen") with a production date of May 16, 2019.  [Declaration of

23  Bradford G. Hughes ("Hughes Dec.") ¶11.]  Defendants also issued deposition subpoenas and

24  related requests for production of documents on April 25, 2019 to Sean Boyd C.P.A, Susan

25  Marshall, Todd Owen, Christian Morrow, and Vujadin Jovic.  [Hughes Dec. ¶ 12.]  The

26  depositions of Sean Boyd, Susan Marshall, and Vujadin Jovic were set for May 16, 2019; and the

27  depositions of Christian Morrow and Todd Owen were set for May 17, 2019.  [*Id.*]

28

Joint Statement Regarding Discovery Disagreement as to Plaintiff's Motion to Quash and/or Modify Third
Party Subpoenas and/or Subpoenas Duces Tecum Issued to Armstrong & Associates Insurance Services, Sean Boyd,
Brigham Young University, University of California-Berkeley, Daniel C. Cohen, Vujadin Jovic, Susan Marshall,
Christian Morrow & Todd Owen

On April 29, 2019, Plaintiff provided Defendants with a meet and confer letter, requesting that Defendants withdraw seven of the ten subpoenas in their entirety and limit the remaining subpoenas.  [Hughes Dec. ¶ 14, Ex. C.]  Specifically, Plaintiff requested that the subpoena to Armstrong & Associates in its entirety; limit the scope  of the subpoena to Sean Boyd C.P.A. to exclude tax returns and bank records; withdraw the subpoenas to B.Y.U. and U.C. Berkeley in their entirety; withdraw the subpoena to the California Department of Insurance in its entirety; limit the scope of the subpoena to Dr. Cohen to documents pertaining to Plaintiff's memory and/or any impairment thereof; withdraw the deposition subpoenas to Vujadin Jovic, Susan Marshall, and Christian Morrow in their entirety; and limit the scope of the deposition subpoena to Todd Owen to documents and communications pertaining to the sub-prime automobile loan business giving rise to this action.  [*Id.*]

Defendants responded to Plaintiff's meet and confer letter on May 3, 2019.  [Hughes Dec. ¶ 15, Ex. D.]  Defendants agreed to narrow the scope of the subpoena issued to Dr. Cohen to seek ***only*** documents pertaining to Plaintiff's memory and dyslexia.  [*Id.*]  Defendants declined to withdraw the remaining subpoenas, ***although the defendants have limited the scope of the subpoenas***.  [*Id.*]  Defendants did not receive a response to the May 3, 2019 letter.  [*Id.*]

On May 1, 2019, Sean Boyd and Susan Marshall served objections to their subpoenas for depositions and related requests for production of documents.  [Hughes Dec. ¶ 16.]  Defendants had been unable to effectuate service upon these deponents at that time, and have been unable to effectuate service through the present date.  [*Id.*]  On May 2, 2019, Armstrong & Associates served objections to its subpoena *duces tecum*.  [Hughes Dec. ¶ 17.]  On May 7, 2019, Plaintiff filed the instant Motion for Protective Order and Motion to Quash.  [Hughes Dec. ¶ 18.]

The parties conferred telephonically regarding these motions on May 15, 2019.  [Hughes Dec. ¶ 19.]  During the conference, Defendants agreed to:

(1) Withdraw and re-serve the subpoena to Dr. Daniel Cohen to limit the production of documents to those pertaining to Plaintiff's memory condition, dyslexia, and any other learning disability;

(2) Exclude Plaintiff's tax returns from the subpoena to Sean Boyd, Plaintiff's accountant;

(3) Narrow the subpoena to Susan Marshall to exclude from production divorce records pertaining to child custody matters and instead seek only financial records;

(4) Narrow the subpoena to Armstrong & Associates such that the materials sought did not include any proprietary information of the company, exclude any customer lists or information; and

(5) Limit the subpoena to Todd Owen to exclude any customer information and trade secret information that he could possibly have that is unrelated to this investment.  [Hughes Dec. ¶ 19(a)-(d).]

Plaintiff declined these concessions, and no agreement was reached as to any of the subpoenas.  [Hughes Dec. ¶ 20.]

During the May 15, 2019 telephonic conference, the parties also discussed the objections served by Sean Boyd, Susan Marshall, and Armstrong & Associates.  [Hughes Dec. ¶ 21.]  In this conversation, Plaintiff's counsel stated that she did not prepare the objections served by any of these subpoena-deponents.  [*Id*.]  Plaintiff's counsel, however, stated that she provided Plaintiff with a template for objections.  [*Id*.]  She further stated that she saw text messaged between Plaintiff and Ms. Marshall regarding this matter.  [*Id*.]

**B.      It Is Improper to Quash or Modify a Subpoena that Seeks Non-Privileged Documents That Are Relevant to the Parties' Claims or Defenses.**

It is improper to quash or modify a subpoena that seeks non-privileged documents that are relevant to the parties' claims or defenses because a party lacks standing to quash or modify a subpoena served upon a third party unless the subpoena seeks disclosure of privileged or other protected materials.  FED. R. CIV. PROC. 45(3)(A)(iii).  Indeed, a federal court may only quash or modify a subpoena if the subpoena requests production of privileged documents or disclosure of trade secret or other confidential commercial information.  Id.  Where a subpoena only seeks production of documents and materials that are "relevant to the claim or defense of any party"

1   and "not privileged," the subpoena is proper and cannot be modified or quashed.  FED. R. CIV.

2   PROC. 26(b)(1).

3       A party moving to modify or quash a subpoena carries the initial and heavy burden of

4   persuasion to demonstrate that the documents sought by the subpoena are improper because of

5   privilege or irrelevance.  Moon v. SCP Pool Corp., 232 F.R.D. 633, 637 (C.D. Cal. 2005).

6   Although a party may have a right to prevent discovery of matters constitutionally recognized as

7   being private, this right does not allow a party to preclude discovery of any matters that might

8   implicate private matters.  Ragge v. MCA/Universal Studios, 165 F.R.D. 601, 604  (C.D. Cal.

9   1995); Rubin v. Regents of Univ. of Calif., 114 F.R.D. 1, 2 (N.D. Cal. 1986).  When a party

10  asserts a privilege based in privacy, the need for the materials sought must be balanced against

11  the asserted privacy interest.  Id.

12      **1.      The Armstrong & Associates records are relevant to Plaintiff's claim**

13  **that he was an unsophisticated investor.**

14      Plaintiff's Motion to Quash or Modify the subpoena should be denied because the

15  subpoena seeks documents that are relevant to the parties' claims and defenses and proportional

16  to the needs to the case.  The subpoena seeks documents regarding prior investments made by

17  Plaintiff, the source of funds Plaintiff allegedly invested into Defendants, Plaintiff's overall

18  sophistication as an investor and knowledge of commercial investment matters, and Plaintiff's

19  own testimony that he suffers from memory issues and mental impairment.  These documents are

20  relevant and proportional to this matter because they pertain to Defendants' affirmative defense

21  that Plaintiff was a sophisticated investor, they bear importance on the nature and extent of

22  Plaintiff's claims of investment fraud, and they go to Plaintiff's overall credibility as a witness.

23      The subpoena to Armstrong & Associates is both relevant and proportional to the parties'

24  claims and defenses because the documents sought pertain to Plaintiff's own claim that he was

25  an unsophisticated investor.  The documents Defendants seek from Armstrong & Associates

26  relate to Plaintiff's employment as a licensed commercial insurance broker.  These documents

27  are relevant to the claims and defenses raised by the parties because this information relates to

28  Plaintiff's claim that he was an unsophisticated investor.   Plaintiff testified at his deposition that

Joint Statement Regarding Discovery Disagreement as to Plaintiff's Motion to Quash and/or Modify Third
Party Subpoenas and/or Subpoenas Duces Tecum Issued to Armstrong & Associates Insurance Services, Sean Boyd,
Brigham Young University, University of California-Berkeley, Daniel C. Cohen, Vujadin Jovic, Susan Marshall,
Christian Morrow & Todd Owen
14

he does not consider himself a sophisticated investor.  [Ex. A, 30:24-31:1.]  In fact, Plaintiff testified that he did not know what the word "sophisticated" meant, despite having a $35,000,000 real estate portfolio, [Ex. A, 266:11-267:18], and despite spending "many" years as a licensed commercial insurance broker [Ex. A, 37:17-38:5].   Documents produced in discovery demonstrate that Plaintiff used his email address from Armstrong & Associates to recruit potential investors for DPG Investments, LLC and its subsidiaries.  The employment records sought from Armstrong & Associates are therefore relevant to the claims and defenses because they pertain to the extent and nature of Plaintiff's commercial experience and transactional work, his training and expertise in commercial and financial matters, and the overall quality of his work—the latter of which weighs on his credibility issues that he put at issue when he testified that he suffers from memory loss that apparently affect his ability to comprehend and evaluate financial and commercial transactions.  [Ex. A, 71:14-15; 72:9-10; 80:18-22; 129:8-9; 176:10-11; 208:6-13; 208:25-209:1; 275:12-25; 276:1-22; 213:1-11.]

Because the subpoena to Armstrong & Associates seeks documents that bear on Plaintiff's sophistication as an investor, his experience in commercial and financial matters, and his own testimony that he is unsophisticated and suffers from mental impairments, Plaintiff's efforts to preclude Defendants' discovery should be denied.

**2.      The documents sought are not protected by privilege or other basis for protection.**

Not only do the records sought by the subpoena outweigh Plaintiff's purported privacy interest because of the relevance of the records, but Plaintiff also waived any privacy claims as to these records because Plaintiff has already produced some documents from Armstrong & Associates in discovery.

Plaintiff's Motion should be denied because Plaintiff has failed to satisfy his burden of establishing that the documents sought by the subpoena are subject to privilege or other basis for protection.  The purported privacy right that Plaintiff asserts to preclude Defendants from discovering relevant information is not a sufficient basis on which to modify, much less quash, the subpoena because even if Plaintiff had a privacy right in the documents sought, Defendants

have agreed during meet and confer discussions to limit the scope of the subpoena to exclude certain private and proprietary matters. The importance of the remaining materials sought by Defendants' subpoena outweigh any purported privacy interest Plaintiff may have because the requested documents are relevant to Plaintiff's claims and Defendants' affirmative defenses and proportional to the needs of the case.

Plaintiff cannot seek to preclude Defendants' legitimate discovery efforts by claiming privacy in records he has already produced. This is particularly true given that he used his employer's email to correspond with Defendants and recruit potential investors. Even if Plaintiff had a privacy right in some of these records, the information sought is relevant to Plaintiff's claims and testimony that he has "difficulty reading and writing" [Ex. A, 72:9-10; 80:21-22], "struggle[s] with [his] learning disability" [Ex. A, 275:24-25] and suffers from dyslexia [Ex. A, 276:1-7] that apparently affects his ability to evaluate and comprehend complex commercial transactions. Given that Plaintiff seeks to use these mental impairments as evidence of his lack of sophistication and his purported susceptibility, the employment records are essential to Defendants ability to assess whether Plaintiff's alleged mental conditions affected his ability to engage in commercial transactions. All of this information pertains to the parties' claims and defenses and goes directly to the weight of Plaintiff's own testimony regarding his sophistication.

## II.   SEAN BOYD

Plaintiff seeks to modify the following categories of the deposition subpoena to Sean Boyd:

"1.    All DOCUMENTS and CORRESPONDENCE regarding, referring, or relating to any and all INVESTMENT opportunities YOU discussed with PLAINTIFF in the last ten (10) years.

2.    All DOCUMENTS and CORRESPONDENCE memorializing any and all INVESTMENT opportunities entered into by PLAINTIFF in the last ten (10) years, any payments thereof, and any resulting profits or losses.

Joint Statement Regarding Discovery Disagreement as to Plaintiff's Motion to Quash and/or Modify Third Party Subpoenas and/or Subpoenas Duces Tecum Issued to Armstrong & Associates Insurance Services, Sean Boyd, Brigham Young University, University of California-Berkeley, Daniel C. Cohen, Vujadin Jovic, Susan Marshall, Christian Morrow & Todd Owen

16

3.      All DOCUMENTS and CORRESPONDENCE memorializing the financial status of any and all INVESTMENTS entered into by PLAINTIFF in the last ten (10) years, including but not limited to bank statements, income statements, balance sheets, statements of cash flows, and profit and loss statements.

4.      All DOCUMENTS and CORRESPONDENCE memorializing any and all monetary transactions by PLAINTIFF in the last ten (10) years related or pertaining to his INVESTMENTS, including but not limited to transfers of funds, deposits, and withdrawals.

5.      All DOCUMENTS memorializing any testimony YOU gave in any investigatory, administrative, or legal proceeding, including but not limited to testimony at depositions, hearings, and trials, in the last ten (10) years regarding, referring, or relating to PLAINTIFF.

6.      All DOCUMENTS memorializing any testimony PLAINTIFF gave in any investigatory, administrative, or legal proceeding, including but not limited to testimony at depositions, hearings, and trials, in the last ten (10) years regarding, referring, or relating to YOU.

11.     All DOCUMENTS and CORRESPONDENCE between YOU and PLAINTIFF in the last ten (10) years regarding, referring, or relating to any of the following individuals and entities, including any employee thereof: Daniel Galvanoni; Wesley Anderson; William Brooksbank; Jerome (Joe) Joseph; Gerald Hudspeth; DPG Investments, LLC; DPG Golden Eagle, LLC; Spring Tree Lending, LLC; Spring Tree Holdings, LLC; Spring Tree Financial, LCC; Skibo Holdings, LLC; and American Credit Acceptance."

## **PLAINTIFF'S ARGUMENTS**

### A.      **Summary of Grounds for Motion to Modify**

Plaintiff seeks an order modifying document requests Nos. 1, 2, 3, 4, 5, 6 & 11 of the deposition subpoena to his accountant, Sean Boyd, so as to exclude Plaintiff's tax returns and/or bank records, on the grounds that Plaintiff's tax returns and bank records are privileged and confidential under California law, such documents are not relevant to Plaintiff's claims, and those documents are duplicative of other financial information which Plaintiff has provided or

Joint Statement Regarding Discovery Disagreement as to Plaintiff's Motion to Quash and/or Modify Third Party Subpoenas and/or Subpoenas Duces Tecum Issued to Armstrong & Associates Insurance Services, Sean Boyd, Brigham Young University, University of California-Berkeley, Daniel C. Cohen, Vujadin Jovic, Susan Marshall, Christian Morrow & Todd Owen

17

agreed to provide.  Mr. Boyd has served objections to these requests on similar grounds.  (Exhs. 14 & 16 to Steuer Decl.)

### B.    Legal Discussion

In diversity cases such as this, questions of privilege are controlled by California state law.  (*In Re California Public Utilities Com'n,* 892 F.2d 778, 781 (9th Cir. 1989); *Otto v. Abott Labs, Inc.*, 2013 U.S. Dist. LEXIS 198045 at *5 (C.D. Cal. 2013).)  Tax returns are privileged under California law.  (*Schnabel v. Superior Court,* 5 Cal.4th 704, 718-721; *Weingarten v. Superior Court*, 102 Cal. App.4th 268, 274 (2002).)  A Plaintiff's claim for damages is insufficient to overcome the tax return privilege.  (*Palacios v. Ameriwood Indus., Inc.,* 2015 U.S. Dist. LEXIS 163837 at *5-8 (N.D. Cal. 2015).)

Further, under California law, bank records are protected by a right to privacy which requires a compelling showing of relevance.  (*Valley Bank of Nevada v. Superior Court,* 15 Cal.3d 652, 656-658 (1975).)  Accordingly, individuals whose banking records are subpoenaed have a privacy interest in their personal financial affairs that gives them standing to move to quash subpoena served on a non-party  (*Crispin, supra,* 717 F. Supp.2d at 974.)

Here, the requests in question to Mr. Boyd encompass Plaintiff's tax returns and bank records, because they seek all financial records pertaining to Plaintiff without limitation, and because Plaintiff's tax returns and/or bank records contain information regarding Plaintiff's investments and the status thereof.  As discussed above, such records are privileged.  They are also not relevant or necessary.  As Defendants acknowledge, Plaintiff has testified about his other investments and produced records pertaining to those investments.  Plaintiff has also agreed to produce additional records which will show his other investments and their status, subject to a protective order.  (Exh. 1 to Steuer Decl.)  In short, Defendants do not need Plaintiff's tax returns or bank records to ascertain the nature and amount of Plaintiff's other investments.  Further, Plaintiff has not alleged that he was incapable of evaluating the proposed investments into Defendants sub-prime automobile loan business, but rather that he was misled about them.

Defendants also assert that they need Plaintiff's tax returns and bank records in order to

determine the source of the monies he invested.  The source of Plaintiff's monies has no bearing on the Plaintiff's claims that Defendants defrauded him, breached fiduciary duties, and failed and refused to secure his investments or return any of his money or any of Plaintiff's other claims.

In addition, Defendants assert that Plaintiff's tax returns and bank records are relevant to show his financial strength.  That is not the case.  Plaintiff has already provided Defendants with detailed financial information and has agreed to produce additional financial information, subject to a protective order.  (Steuer Decl. ¶ 2; Exh. 1 to Steuer Decl.)  Moreover, Plaintiff has not alleged that he lacked the financial resources to make the investments at issue, in any event.

Defendants' waiver argument is equally unmeritorious.  Plaintiff did not provide Defendants with his actual tax returns or bank records.  Indeed, if he had done so, then the subpoena to Sean Boyd should be quashed on the grounds that it seeks records that the Defendants already have.

Lastly, Defendants' assertion that they agreed to exclude Plaintiff's tax returns is not accurate.  Defense counsel stated only that they would discuss amongst themselves whether to exclude portions of Plaintiff's tax returns.  (Steuer Decl. ¶ 17)  This motion also remains necessary and appropriate as to Mr. Boyd, in any event, because Defendants have refused to exclude bank records and because Defendants have not withdrawn nor modified the subpoena to Mr. Boyd to exclude the tax returns, nor sent moving counsel any writing indicating that they have advised Mr. Boyd of this exclusion.

## DEFENDANTS' ARGUMENTS

### A.   It Is Improper to Quash or Modify a Subpoena that Seeks Non-Privileged Documents That Are Relevant to the Parties' Claims or Defenses.

Defendants rely on the same legal authorities discussed in arguments pertaining to the subpoena to Armstrong & Associates to support the present argument.

#### 1.   The documents sought from Sean Boyd are relevant to Plaintiff's sophistication as an investor.

The documents sought from Sean Boyd, CPA, are relevant and proportional to the parties' claims and defenses because the bank records bear on Plaintiff's sophistication as an

investor and Plaintiff's source of funds for the alleged subject investments. Indeed, Plaintiff concedes the relevance of these documents when he claims that the documents sought are "duplicative." [Plaintiff's Motion, 2:8-9.] The records sought are relevant to Plaintiff's claims that he is an unsophisticated investor [Ex. A, 30:24-31:1] and that he does not even know what the word "sophisticated" meant, despite having a $35,000,000 real estate portfolio [Ex. A, 266:11-267:18]. The financial records from Mr. Boyd will confirm or refute the claims that Plaintiff is not a high-net-worth investor who is considered to have depth of experience and market knowledge of commercial and financial issues.

The records are also relevant to Plaintiff's investment experience because Plaintiff both served verified discovery responses in which he identified prior investments that he made [Hughes Dec., ¶ 13] and testified about his $35,000,000 real estate portfolio [Ex. A, 266:11-267:18] and involvement with prior investments that resulted in losses in excess of $575,000 [Ex., A, 299:19-300:9]. The nature and scope of his financial affairs are thus relevant to Plaintiff's purported lack of sophistication, as this information bears on whether Plaintiff had sufficient knowledge and experience in commercial transactions to evaluate the risks and merits of his alleged investments with Defendants.

The documents sought by the Subpoena to Sean Boyd also outweigh any privacy right claimed by Plaintiff because Plaintiff waived his privacy rights when he disclosed his bank and tax information to Defendants on the Personal Financial Statement he prepared, as well as during the course of this litigation. Given the prior disclosures, which directly relate to the ability of Plaintiff to take advantage of investment opportunities, Plaintiff cannot legitimately claim that his right to privacy trumps Defendants' legitimate interest in assessing the nature and extent of Plaintiff's sophistication as an investor.

The records that Defendants seek are further relevant and proportional to the claim given Plaintiff's own testimony that he was unable to identify the source of the funds that he allegedly invested into Defendants. [Ex. 241:10-15.] Plaintiff's financial records thus bear on his sophistication because this information pertains to Plaintiff's financial strength and his ability to ensure that his investments are sufficiently diversified and monitored regularly.

Finally, Plaintiff's claim that the documents sought by the Subpoena seek privileged tax returns is untenable inasmuch as the Subpoena does not expressly request these records.  Indeed, Defendants even agreed during meet and confer discussions with Plaintiff's counsel to expressly exclude tax records from the Subpoena but Plaintiff's counsel refused to accept this proposal. [Hughes Dec., ¶ 19.]

        **2.**      **The documents sought are not protected by privilege or other basis for protection.**

Plaintiff's Motion should be denied because Plaintiff has failed to satisfy his burden of establishing that the documents sought by the Subpoenas are subject to privilege or other basis for protection.  The purported privacy right that Plaintiff asserts to preclude Defendants from discovering relevant information is not a sufficient basis on which to modify, much less quash, the Subpoenas because even if Plaintiff had a privacy right in the documents sought, Defendants have agreed during meet and confer discussions to limit the scope of the Subpoenas to exclude certain private and proprietary matters.  The importance of the remaining materials sought by Defendants' Subpoenas outweigh any purported privacy interest Plaintiff may have because the requested documents are relevant to Plaintiff's claims and Defendants' affirmative defenses and proportional to the needs of the case.

### III.    SUBPOENAS DUCES TECUM TO BRIGHAM YOUNG UNIVERSITY AND UNIVERSITY OF CALIFORNIA-BERKELEY

The subpoena *duces tecum* to Brigham Young University requests the following documents: "All academic and disciplinary records of or relating to John Marshall (J.D., attended from 1986-1989) in your possession, custody, or control."  The subpoena issued to the University of California, Berkeley requests the following documents: "All academic and disciplinary records of or relating to John Marshall (B.A. International Finance, attended from 1982-1986) in your possession, custody, or control."

### PLAINTIFF'S ARGUMENTS

### A.    Summary of Grounds for Motion to Modify

Plaintiff seeks an order modifying the subpoenas duces tecum to University of

California-Berkeley and Brigham Young University to limit the scope of the subpoenas to documents sufficient to identify the names of the classes Plaintiff took, on the grounds that the other documents sought by Defendants are privileged and confidential and are not relevant to Plaintiff's claims and because the subpoenas are overly broad.

## B.     Legal Discussion

In *Hendricks, supra,* the court held that subpoena issued to the Plaintiffs' former colleges and universities for any and all educational records pertaining to Plaintiff should be quashed because the material was confidential, the requested documents were not relevant, and the subpoenas were overly broad.  (*Hendricks, supra,* 275 F.R.D. at 254-256.)  The same is true here.  Plaintiff's disciplinary and academic records from over thirty years ago have no relevance to this investment dispute pertaining to investments he made in 2015 and 2016.  Defendants' requests for such records are an unwarranted invasion of Plaintiff's privacy rights.  Further, Defendants do not need Plaintiff's academic records to assert Plaintiff's education as a defense to their wrongdoing, because there is no dispute regarding the degrees Plaintiff earned or the dates he earned them.

Plaintiff does not believe that any of his coursework is relevant to this case.  However, as an accommodation to Defendants, moving counsel has proposed modifying the subpoenas to limit their scope to identification of the courses Plaintiff took.  Plaintiff's proposed modification is sufficient to show whether Plaintiff took any classes relating to the automobile sub-prime loan business, or any other pertinent topic, when he attended college and law school in the 1980's.

Defendants also assert that the subpoenas for Plaintiff's academic records will prove that Plaintiff is not dyslexic and that he is lying about his learning disability.  That is not the case.  These subpoenas will not shed any light on the nature and extent of Plaintiff's learning disability because the institutions have not retained those records.  (Marshall Decl. ¶ 4; Exh. 2 to Marshall Decl.)  Likewise, such records will not show whether Plaintiff was given accommodations in school for his learning disabilities, or how those accommodations impacted his academic performance.  (Marshall Decl. ¶ 4; Exh. 2 to Marshall Decl.)  Most importantly, the issues in this case relate to Defendants' fraud and misuse of Plaintiff's monies, and their refusal to comply

1   with their agreements to pay Plaintiff back.  Plaintiff's learning disabilities have minimal to no
2   impact on those issues.
3        Lastly, the subpoenas should also be quashed and/or modified, in any event, because they
4   are overly broad on their face.  Specifically, the subpoenas seek all records pertaining to
5   Plaintiff, without any limitation as to time frame or scope.
6                          **DEFENDANTS' ARGUMENTS**
7   **A.   It Is Improper to Quash or Modify a Subpoena that Seeks Non-Privileged**
8   **Documents That Are Relevant to the Parties' Claims or Defenses.**
9        Defendants rely on the same legal authorities discussed in arguments pertaining to the
10  subpoena to Armstrong & Associates to support the present argument.
11       **1.    The subpoenas to BYU Law and UC Berkeley bear on Plaintiff's**
12  **credibility and his sophistication as an investor.**
13       Plaintiff's Motion to modify the Subpoenas to BYU Law and UC Berkley should be
14  denied because the records sought from these entities goes directly to Plaintiff's credibility and
15  his sophistication as an investor.  Plaintiff claims that he was an unsophisticated investor [Ex. A,
16  30:24-31:1], does not know what the word "sophisticated" meant [Ex. A, Ex. A, 266:11-267:18]
17  and yet, he was a college graduate from a prestigious university who included a "J.D."
18  designation in his e-mail signature block [Ex. A, 19:3-20] when soliciting potential investors and
19  communicating with Defendants about the subject financial matters underlying Plaintiff's
20  operative complaint.  As Plaintiff concedes in his moving papers, the academic records from
21  both BYU Law and UC Berkeley are relevant to establishing the extent of Plaintiff's legal
22  knowledge and, ultimately, whether he was a sophisticated investor with knowledge of securities
23  and/or contract law.  Plaintiff's academic performance in courses pertaining to securities law,
24  business transactions, and tax law is likewise relevant as this is evidence that would refute or
25  support Plaintiff's claim that he lacked sufficient knowledge to weigh potential risks and benefits
26  of investment opportunities.  This information also goes to the overall credibility of Plaintiff's
27  claims about the existence of a written loan/investment agreement with Defendants, which serves
28  the basis for his fraud claims.

Joint Statement Regarding Discovery Disagreement as to Plaintiff's Motion to Quash and/or Modify Third
Party Subpoenas and/or Subpoenas Duces Tecum Issued to Armstrong & Associates Insurance Services, Sean Boyd,
Brigham Young University, University of California-Berkeley, Daniel C. Cohen, Vujadin Jovic, Susan Marshall,
Christian Morrow & Todd Owen
23

The academic records are likewise relevant and proportional to Plaintiff's credibility and his claims that he suffers from memory loss that apparently affect his ability to comprehend and evaluate financial transactions.  [Ex. A, 71:14-15; 72:9-10; 80:18-22; 129:8-9; 176:10-11; 208:6-13; 208:25-209:1; 275:12-25; 276:1-22; 213:1-11. ] Plaintiff testified that he obtained academic accommodations  at both BYU and UC Berkley because of his "learning disabilities," "difficulty with reading and writing," and "dyslexia." [Ex. A, 275:24-276:22.]   The academic records are thus directly relevant to evaluating the weight of Plaintiff's testimony and his overall credibility. This is especially true in light of the fact that Plaintiff testified that he specifically told Mr. Galvanoni that he "struggled with understanding, reading, and writing" before he invested money.  [Ex. A, 276:24-277:3.]   Plaintiff's academic performance in college and legal courses is something that is affected by his alleged mental conditions and thus, this information goes to the weight of Plaintiff's testimony and his overall credibility as a witness.  Because the information sought is relevant and proportional to the parties' claims and defenses, including Plaintiff's credibility, the Motion to modify these Subpoenas should be denied.

> **2.     The documents sought are not protected by privilege or other basis for protection.**

Plaintiff's Motion should be denied because Plaintiff has failed to satisfy his burden of establishing that the documents sought by the Subpoenas are subject to privilege or other basis for protection.  The purported privacy right that Plaintiff asserts to preclude Defendants from discovering relevant information is not a sufficient basis on which to modify, much less quash, the Subpoenas because even if Plaintiff had a privacy right in the documents sought, Defendants have agreed during meet and confer discussions to limit the scope of the Subpoenas to exclude certain private and proprietary matters.  The importance of the remaining materials sought by Defendants' Subpoenas outweigh any purported privacy interest Plaintiff may have because the requested documents are relevant to Plaintiff's claims and Defendants' affirmative defenses and proportional to the needs of the case.

## IV.     SUBPOENA DUCES TECUM TO DANIEL COHEN, M.D.

The subpoena *duces tecum* to Dr. Daniel Cohen requests the following documents: "All documents and records pertaining to the care, treatment, and examination of JOHN MARSHALL (DOB: 11/05/1962, SS #: UNKNOWN), including but not limited to, any itemized statement of billing charges, sign-in sheets, inpatient and outpatient charts and records, emergency room and lab reports, pathology reports, prescription and pharmacy records, and any other records pertaining to JOHN MARSHALL, from the first date of treatment to and including the present. Billing records include, but are not limited to, any records/documents that may be stored digitally and/or electronically: Charges, explanation of benefits, payments, adjustments, write-offs, balances due, insurance records, and itemized billing charges regarding any and all care, treatment, and/or examination pertaining to JOHN MARSHALL."

## PLAINTIFF'S ARGUMENTS

### A.      Summary of Grounds for Motion to Modify

Plaintiff seeks an order modifying the subpoena duces tecum issued to his physician, Daniel C. Cohen, to limit the scope of this subpoena to documents pertaining to his memory and/or any impairment thereof and/or to his dyslexia, on the grounds that Plaintiff's other medical records are privileged and confidential, and have no relevance to any disputed issue in this matter.

### B.      Legal Discussion

During meet and confer discussions, defense counsel agreed at one point in the conversation to limit the scope of this subpoena to documents pertaining to Plaintiff's memory and dyslexia.  Moving counsel is agreeable to those proposed limitations.   This motion is not moot, however, because: 1) defense counsel also stated, in this same conversation, that they wished to obtain medical records relating to any depression suffered by Plaintiff and other unspecified medical records relating to Plaintiff's purported "anger" issues; and 2) defense counsel has not withdrawn the existing subpoena, nor issued a new modified subpoena, nor provided moving counsel with any writing indicating that they have informed Dr. Cohen or Kaiser Permanente of the proposed limitations.   (Steuer Decl. ¶. 16)  Accordingly, an order modifying the subpoena to limit its scope to records pertaining to Plaintiff's memory and

1  dyslexia is necessary and justified because those are the only medical conditions which Plaintiff

2  has put into issue in this case.  (*Otto, supra,* 2013 U.S. Dist. LEXIS 198045 at *4-5.)

3  **DEFENDANTS' ARGUMENTS**

4  **A.     It Is Improper to Quash or Modify a Subpoena that Seeks Non-Privileged**

5  **Documents That Are Relevant to the Parties' Claims or Defenses.**

6  Defendants rely on the same legal authorities discussed in arguments pertaining to the

7  subpoena to Armstrong & Associates to support the present argument.

8  **1.     The records from Dr. Cohen bear directly on Plaintiff's credibility**

9  **and testimony that he suffers from memory issues and dyslexia.**

10  The records sought from Dr. Daniel Cohen are relevant to Plaintiff's credibility and

11  sophistication as an investor because Plaintiff testified that he suffers from memory issues and

12  dyslexia that prevented him from understanding the nature and risks associated with investment

13  opportunities.  Indeed, Plaintiff placed his memory at issue when he testified at deposition, no

14  less than 10 times, that he suffers from memory loss that apparently affect his ability to

15  comprehend and evaluate financial transactions.  [Ex. A, 71:14-15; 72:9-10; 80:18-22; 129:8-9;

16  176:10-11; 208:6-13; 208:25-209:1; 275:12-25; 276:1-22; 213:1-11. ]  Plaintiff's claim of

17  privacy is untenable given that he specifically identified Dr. Cohen as the only medical provider

18  from whom he sought treatment for his mental conditions.  [Ex. A., 304:15-18. ]  This

19  information goes to the weight of Plaintiff's testimony and his overall credibility as it provides

20  objective information about the nature and extent of Plaintiff's alleged "learning disabilities" and

21  difficulty understanding, which in turn, bears on his sophistication as an investor and ability to

22  evaluate potential risks and benefits associated with investments, which Plaintiff claims he could

23  not do.  Defendants expressly agreed to limit the Subpoena to Dr. Cohen to seek only those

24  records that pertain to Plaintiff's memory issues and dyslexia, thus rendering Plaintiff's Motion

25  to modify this Subpoena moot.

26  **2.     The documents sought are not protected by privilege or other basis**

27  **for protection.**

28

Joint Statement Regarding Discovery Disagreement as to Plaintiff's Motion to Quash and/or Modify Third
Party Subpoenas and/or Subpoenas Duces Tecum Issued to Armstrong & Associates Insurance Services, Sean Boyd,
Brigham Young University, University of California-Berkeley, Daniel C. Cohen, Vujadin Jovic, Susan Marshall,
Christian Morrow & Todd Owen

Plaintiff's Motion should be denied because Plaintiff has failed to satisfy his burden of establishing that the documents sought by the Subpoenas are subject to privilege or other basis for protection.  The purported privacy right that Plaintiff asserts to preclude Defendants from discovering relevant information is not a sufficient basis on which to modify, much less quash, the Subpoenas because even if Plaintiff had a privacy right in the documents sought, Defendants have agreed during meet and confer discussions to limit the scope of the Subpoenas to exclude certain private and proprietary matters.  The importance of the remaining materials sought by Defendants' Subpoenas outweigh any purported privacy interest Plaintiff may have because the requested documents are relevant to Plaintiff's claims and Defendants' affirmative defenses and proportional to the needs of the case.

## V.    DEPOSITION SUBPOENA TO VUJADIN JOVIC

Plaintiff seeks to quash the following document requests set forth in the subpoena to testify at deposition issued to Vujadin Jovic:

1.    All DOCUMENTS and CORRESPONDENCE regarding, referring, or relating to any and all INVESTMENT opportunities discussed and/or actually entered into between YOU and PLAINTIFF in the last ten (10) years.

2.    All DOCUMENTS and CORRESPONDENCE memorializing any and all INVESTMENT agreements entered into between YOU and PLAINTIFF in the last ten (10) years, any payments thereof, and any resulting profits or losses.

3.    All DOCUMENTS and CORRESPONDENCE memorializing the financial status of any and all INVESTMENTS entered into between YOU and PLAINTIFF in the last ten (10) years, including but not limited to bank statements, income statements, balance sheets, statements of cash flows, and profit and loss statements.

4.    All DOCUMENTS and CORRESPONDENCE memorializing any and all monetary transactions between YOU and PLAINTIFF in the last ten (10) years, including but not limited to transfers of funds, deposits, and withdrawals.

5.     All DOCUMENTS memorializing any testimony YOU gave in any investigatory, administrative, or legal proceeding, including but not limited to testimony at depositions, hearings, and trials, in the last ten (10) years regarding, referring, or relating to PLAINTIFF.

6.     All DOCUMENTS memorializing any testimony PLAINTIFF gave in any investigatory, administrative, or legal proceeding, including but not limited to testimony at depositions, hearings, and trials, in the last ten (10) years regarding, referring, or relating to YOU.

7.     All DOCUMENTS and CORRESPONDENCE between YOU and the United States Securities and Exchange Commission in the last ten (10) years regarding, referring, or relating to PLAINTIFF, including but not limited to any complaints, investigations, and any investigative reports or findings.

1.     All DOCUMENTS and CORRESPONDENCE between YOU and the Federal Bureau of Investigation or any other LAW ENFORCEMENT in the last ten (10) years regarding, referring, or relating to PLAINTIFF, including but not limited to any complaints, investigations, and any investigative reports or findings.

### A.     Summary of Grounds for Motion to Quash

Plaintiff seeks an order quashing document requests Nos. 1, 2, 3, 4, 5, 6, 7 & 9 of the deposition subpoena to Vujadin Jovic, on the grounds that such documents seek privileged and confidential personal financial information of Plaintiff that is not relevant to this matter, as well as documents protected by the settlement communications and/or mediation privileges, and because the subpoena is overbroad and compliance would be unduly burdensome.

### B.     Legal Discussion

Subpoenas which seek all documents and communications between a Plaintiff and a third party without any specificity or any limitation as to scope and time are properly subject to being quashed on relevancy grounds and for being overly broad.  (See e.g. *Barkley, supra,*  2017 U.S. Dist. LEXIS 67017 at *5 [holding that requests in third party subpoenas for any and all communications sent to or received from the Plaintiff were not reasonably limited in scope and were not relevant to the Plaintiff's civil rights claims]; *Moon, supra,* 232 F.R.D. at 637-638 [holding that a subpoena to a third party which sought all documents over a period of ten years or

greater relating to the Defendant and the third party regarding pool winter covers was overbroad on its face and exceeded the bounds of fair discovery because they sought information over a ten year or greater period and sought information regarding all pool winter covers, not just those in the region at issue].)  Further, a third-party subpoena should be quashed if the documents in question can be obtained from a party.  (*Moon, supra,* 232 F.R.D. at 638.)

Here, the requests in question seek all documents, correspondence and financial records between Plaintiff and Mr. Jovic, without any limitation as to scope or time.  Plaintiff has already agreed to produce the investment agreements that he and Fortam LLC (an entity owned by Plaintiff) made with Mr. Jovic, subject to a protective order.  (Exh.1 to Steuer Decl.)  Those investment agreements are sufficient to show the nature, dates, extent, and amounts of the real estate investments that Plaintiff and/or Fortam LLC made with Mr. Jovic.  These documents will also show whether Plaintiff and/or Fortam LLC considered themselves to be lenders or investors, and whether Plaintiff executed written agreements regarding these investments. Plaintiff does not consider such documents to be relevant, but has agreed to produce them in order to reasonably accommodate Defendants.

Defendants' subpoena to Mr. Jovic goes far beyond what could conceivably be relevant, because it is not limited to the actual investment agreements.  Instead, Defendants have demanded all documents, correspondence and financial records of any kind between Plaintiff and Mr. Jovic.  As the authorities above hold, Defendants' blanket demand for all communications between Plaintiff and Mr. Jovic pertaining to investments is plainly overbroad.

That is especially true here, because the investments that Fortam LLC and Plaintiff made with Mr. Jovic are direct investments in commercial buildings and rental properties. Accordingly, the responsive documents include many thousands of documents relating to tenants, building improvements, environmental issues, lawsuits, accountings, construction issues and multiple other issues that are not relevant to this investment fraud dispute.  Responsive documents also include personal financial and bank records of Plaintiff and of third parties who were involved in the same investments as Plaintiff, as well as confidential information pertaining to tenants. (Marshall Decl. ¶ 19)  Further, since approximately 2017, Mr. Jovic and Plaintiff,

often through counsel, have been attempting to unwind their relationship and resolve financial issues pertaining to those investments.  (Marshall Decl. ¶ 19)  Consequently, many of the communications and records Defendants have demanded are covered by the settlement communications privilege, mediation privilege and/or attorney-client privilege.  (Marshall Decl. ¶ 19)  The communications at issue also include other personal information that is unrelated to the terms of the specific investments.  (Marshall Decl. ¶ 19)  None of the foregoing information is relevant to any issue in this case.

Compliance with the subpoena to Mr. Jovic would also impose an undue burden upon Plaintiff because he would need to review every page of every document to ascertain whether it contained privileged or confidential information pertaining to himself or third parties.  As discussed above, the responsive documents are many thousands of pages.  The burden of reviewing them all for privileged or confidential information would also be particularly onerous for Plaintiff because he has difficulty reading due to his dyslexia.  (Marshall Decl. ¶ 4)

Lastly, the subpoena to Mr. Jovic should be quashed as to the requests at issue, in any event, because the documents at issue, including the investment contracts which Plaintiff has already agreed to produce (subject to a protective order), can be obtained from Plaintiff.

## DEFENDANTS' ARGUMENTS

**A.     It Is Improper to Quash or Modify a Subpoena that Seeks Non-Privileged Documents That Are Relevant to the Parties' Claims or Defenses.**

Defendants rely on the same legal authorities discussed in arguments pertaining to the subpoena to Armstrong & Associates to support the present argument.

**1.     The investment records from Vujadin Jovic relate to Plaintiff's sophistication as an investor.**

The investment records sought from Vujadin Jovic are relevant and proportional to the parties' claims and defenses because the nature and extent of Plaintiff's prior investments, financial transactions, and business dealings bears on his sophistication as an investor.  Plaintiff testified that he participated in investments and financial transactions with Mr. Jovic involving at least $500,000 [Ex. A,  299:11-24]  and yet, Plaintiff nevertheless claims that he was an

Joint Statement Regarding Discovery Disagreement as to Plaintiff's Motion to Quash and/or Modify Third Party Subpoenas and/or Subpoenas Duces Tecum Issued to Armstrong & Associates Insurance Services, Sean Boyd, Brigham Young University, University of California-Berkeley, Daniel C. Cohen, Vujadin Jovic, Susan Marshall, Christian Morrow & Todd Owen

30

"unsophisticated" investor [Ex. A, 30:24-31:1] with insufficient financial and business knowledge.  The testimony and documents sought from Mr. Jovic are therefore relevant to establishing the nature and extent of Plaintiff's prior investments, including his experience and involvement in commercial funding and financial transactions; whether Plaintiff considered himself a lender or investor with respect to the subject investments; whether Plaintiff could weigh the risks and benefits of investment opportunities; and whether he executed written agreements in the outside investments with Mr. Jovic in which he participated.  Indeed, Plaintiff concedes the relevance of this information in his responses to written discovery, which identify his prior investments with Mr. Jovic and state that Plaintiff would produce these records. [Hughes Dec., ¶ 13.]  Because records and information regarding prior investments pertains to Plaintiff's investing experience and sophistication as an investor, Plaintiff's Motion to quash the Subpoena to Mr. Jovic should be denied.

**2.    The documents sought are not protected by privilege or other basis for protection.**

Plaintiff's Motion should be denied because Plaintiff has failed to satisfy his burden of establishing that the documents sought by the Subpoenas are subject to privilege or other basis for protection.  The purported privacy right that Plaintiff asserts to preclude Defendants from discovering relevant information is not a sufficient basis on which to modify, much less quash, the Subpoenas because even if Plaintiff had a privacy right in the documents sought, Defendants have agreed during meet and confer discussions to limit the scope of the Subpoenas to exclude certain private and proprietary matters.  The importance of the remaining materials sought by Defendants' Subpoenas outweigh any purported privacy interest Plaintiff may have because the requested documents are relevant to Plaintiff's claims and Defendants' affirmative defenses and proportional to the needs of the case.

**VI.    DEPOSITION SUBPOENA TO SUSAN MARSHALL**

Plaintiff seeks to quash the following document requests set forth in the subpoena to testify at a deposition issued to Susan Marshall:

1.    All DOCUMENTS and CORRESPONDENCE regarding, referring, or relating to

any and all INVESTMENT opportunities discussed and/or actually entered into between YOU and PLAINTIFF.

2.      All DOCUMENTS and CORRESPONDENCE memorializing any and all INVESTMENT agreements entered into between YOU and PLAINTIFF, any payments thereof, and any resulting profits or losses.

3.      All DOCUMENTS and CORRESPONDENCE memorializing the financial status of any and all INVESTMENTS entered into between YOU and PLAINTIFF, including but not

4.      limited to bank statements, income statements, balance sheets, statements of cash flows, and profit and loss statements.

5.      All DOCUMENTS and CORRESPONDENCE memorializing any and all monetary transactions related to any INVESTMENTS entered into between YOU and PLAINTIFF, including but not limited to transfers of funds, deposits, and withdrawals.

6.      All DOCUMENTS and CORRESPONDENCE memorializing any monetary transfers from bank accounts YOU shared with PLAINTIFF, including bank accounts in the names of YOUR children, to any of the following individuals and entities: PLAINTIFF; Daniel Galvanoni; DPG Investments, LLC; DPG Golden Eagle, LLC; Spring Tree Lending, LLC; Sprint Tree Holdings, LLC; Spring Tree Financial, LLC; Skibo Holdings, LLC; and American Credit Acceptance.

7.      All DOCUMENTS memorializing any testimony YOU gave in any investigatory, administrative, or legal proceeding, including but not limited to testimony at depositions, hearings, and trials, regarding, referring, or relating to any of PLAINTIFF'S INVESTMENTS.

8.      All DOCUMENTS contained in the court file pertaining to YOUR divorce from PLAINTIFF.

9.      All DOCUMENTS and CORRESPONDENCE between YOU and the United States Securities and Exchange Commission regarding, referring, or relating to PLAINTIFF, including but not limited to any complaints, investigations, and investigative reports or findings.

10.     All DOCUMENTS and CORRESPONDENCE between YOU and the Federal Bureau of Investigation or any other LAW ENFORCEMENT regarding, referring, or relating to

PLAINTIFF, including but not limited to any complaints, investigations, and investigative reports or findings.

## PLAINTIFF'S ARGUMENTS

### A.   Summary of Grounds for Motion to Quash

Plaintiff seeks an order quashing categories 1, 2, 3, 4, 5, 6, 7, 8 & 10 of the deposition subpoena to his ex-wife, Susan Marshall, on the grounds that such documents seek privileged and confidential personal financial information of Plaintiff that is not relevant to this matter, as well as documents protected by the settlement communications and/or mediation privileges.  Further, the subpoena is overly broad.  Lastly, if any of the documents in question were relevant, they could be obtained from Plaintiff without involving his ex-wife.  Susan Marshall has served objections to the subpoena on similar grounds.  (Exhs. 15 & 16 to Steuer Decl.)

### B.   Legal Discussion

Plaintiff divorced his ex-wife, Susan Marshall, in 2003.  (Marshall Decl. ¶ 14)  They divided up all their assets, including their investments, at the time of the divorce.  (Marshall Decl. ¶ 14)  They had an acrimonious divorce.  (Marshall Decl. ¶ 14)  They have not communicated since their divorce unless it is absolutely necessary.  (Marshall Decl. ¶ 14)  Such communications have been minimal. (Marshall Decl. ¶ 14)  Plaintiff has never communicated with his ex-wife about the Defendants.  (Marshall Decl. ¶ 14)  Plaintiff has not made any investments with his ex-wife since their divorce.  (Marshall Decl. ¶ 14)  In short, there is no valid or reasonable basis to believe that Ms. Marshall has any documents of any relevance or any knowledge about the other investments Plaintiff had in 2015, when he made the investments at issue herein.  Further, Plaintiff's financial status and investments as of the time of his divorce, which was twelve years before the investments at issue, is outside the scope of any reasonable time frame. (See e.g. *Moon, supra,* 232 F.R.D. at 637-638 [holding that a subpoena to a third party which sought all documents over a period of ten years or greater relating to the Defendant and the third party regarding pool winter covers was overbroad on its face and exceeded the

bounds of fair discovery because they sought information over a ten year or greater period].)

Defendants' assertion that the document requests would show the source of the monies Plaintiff invested is particularly specious.  First, the source of Plaintiff's investments is not relevant to any disputed issue in this case.  Further, Defendants' argument is based upon the false statement that Plaintiff used his minor daughter's monies to make some of the investments at issue.  Specifically, at Plaintiff's deposition, defense counsel accused Plaintiff of using his minor daughter's monies to make some of the investments at issue, because two of the wire transfer forms for transfers of $25,000.00 each erroneously identified Plaintiff's daughter, rather than Plaintiff, as the account holder.  (Marshall Decl. ¶ 15; Exh. 20 to Steuer Decl. at pp. 131:20-24, 241:1-12)  In order to dispel those false accusations, Plaintiff obtained a letter from Patelco Credit Union on April 8, 2019, certifying that the wire transfers at issue incorrectly stated that the sender's name was Madison Marshall, when it should have been Plaintiff's name, and confirming that the monies at issue came from Plaintiff's account.  (Marshall Decl. ¶ 16; Exh. 3 to Marshall Decl.)  In short, Defendants' assertions that Plaintiff used his daughter's savings to make the investments at issue are false.  Such assertions also have nothing to do with Plaintiff's purported investment sophistication.  On the contrary, it is apparent that the purpose of subpoenaing Susan Marshall is to stir up acrimony between Plaintiff and his ex-wife by causing his ex-wife to believe that Plaintiff used their minor daughter's monies to make investments, when that is clearly not the case.  Most importantly, there is no reason to believe that Susan Marshall has any knowledge regarding the investments at issue.  The exact opposite is true. (Marshall Decl. ¶ 14)

Defendants also assert that Plaintiff's divorce file and/or other documents that they have requested from Ms. Marshall are relevant to disprove Plaintiff's assertions that he has an acrimonious relationship with his ex-wife.  Plaintiff's relationship with his ex-wife is not relevant to any issue in this case.  Further, the fact that Ms. Marshall does not want to be involved in this lawsuit, or have divorce records produced, and her assertion of valid objections, does not refute Plaintiff's attestations regarding their relationship.  Lastly, moving counsel did not "review" any text messages between Plaintiff and his ex-wife concerning this litigation.

1   (Steuer Decl. ¶s. 9 & 14)  A text message was simply the medium by which Ms. Marshall

2   appears to have transmitted her objections.  (Steuer Decl. ¶s 9 & 14)

3          In addition to the lack of relevance, the requests at issue should also be quashed because

4   they are overly broad.  Specifically, the requests seek the entirety of Plaintiff's divorce records as

5   well as all documents and communications of any kind between Plaintiff and his ex-wife,

6   without any limitation as to scope and time.  (Exh. 10 to Steuer Decl.)

7          Finally, the subpoena should be quashed because, if any of the information at issue was

8   relevant, it could be obtained from Plaintiff without involving his ex-wife in this matter.

9                                    **DEFENDANTS' ARGUMENTS**

10  **A.      It Is Improper to Quash or Modify a Subpoena that Seeks Non-Privileged**

11  **Documents That Are Relevant to the Parties' Claims or Defenses.**

12         Defendants rely on the same legal authorities discussed in arguments pertaining to the

13  subpoena to Armstrong & Associates to support the present argument.

14         **1.      The information and records from Susan Marshall relate to Plaintiff's**

15  **investing experience and source of funding.**

16         The information records sought from Susan Marshall are relevant and proportional to the

17  parties' claims and defenses because Ms. Marshall is expected to have knowledge pertaining to

18  the nature and extent of Plaintiff's prior investments, his sophistication as an investor, and his

19  memory and dyslexia conditions.  Plaintiff testified at deposition that he is unable to identify the

20  source of funds he used in connection with the underlying investments.  [Ex. A, 131:11-22; 132-

21  99-12.]  Indeed, Plaintiff testified that one of the wire transfers he made for $25,000 to

22  Defendants originated from his minor daughter's account at Patelco Credit Union. [Ex. A,

23  131:11-22; 132-99-12.]  Plaintiff testified that he did not discuss the funds being taken out of

24  Madison's account with his ex-wife and, "the money that is my money, I can invest my money,

25  and I didn't discuss with others."  [Ex. A, 241:10-15.]   Any notice or communications Susan

26  Marshall had with Plaintiff regarding the use of their daughter's savings in Plaintiff's personal

27  business deals is directly relevant to Plaintiff's sophistication as an investor and goes to whether

28  Plaintiff considered himself a lender or investor in his deals with DPG Investments, LLC.

Indeed, it is unreasonable to conclude, as Plaintiff urges this Court to do, that he was "unsophisticated" and had difficulty understanding, reading, and writing but nonetheless used $25,000 of his minor daughter's money without discussing this use with his ex-wife Susan Marshall. This information is directly relevant to Plaintiff's claims, credibility, and purported "unsophistication."

The information from Ms. Marshall likewise bears on Plaintiff's credibility given his claim that he has an acrimonious relationship with Ms. Marshall and does not communicate with her at all. Plaintiff's counsel admitted during meet and confer discussions that she provided a template for objections to Plaintiff, who subsequently gave and spoke to Ms. Marshall about the objections. [Hughes Dec., ¶ 21.] Plaintiff's counsel also identified text messages that she reviewed in which Plaintiff spoke to Ms. Marshall about this litigation. [Id.] The Subpoena to Ms. Marshall is thus relevant to Plaintiff's credibility as a witness because of the inconsistencies between Plaintiff's testimony, claims, and actions.

**2.    The documents sought are not protected by privilege or other basis for protection.**

Plaintiff's Motion should be denied because Plaintiff has failed to satisfy his burden of establishing that the documents sought by the Subpoenas are subject to privilege or other basis for protection. The purported privacy right that Plaintiff asserts to preclude Defendants from discovering relevant information is not a sufficient basis on which to modify, much less quash, the Subpoenas because even if Plaintiff had a privacy right in the documents sought, Defendants have agreed during meet and confer discussions to limit the scope of the Subpoenas to exclude certain private and proprietary matters. The importance of the remaining materials sought by Defendants' Subpoenas outweigh any purported privacy interest Plaintiff may have because the requested documents are relevant to Plaintiff's claims and Defendants' affirmative defenses and proportional to the needs of the case.

**VII.    DEPOSITION SUBPOENA TO CHRISTIAN MORROW**

Plaintiff seeks to modify the following document requests set forth in the subpoena to testify at deposition issued to Christian Morrow:

Joint Statement Regarding Discovery Disagreement as to Plaintiff's Motion to Quash and/or Modify Third Party Subpoenas and/or Subpoenas Duces Tecum Issued to Armstrong & Associates Insurance Services, Sean Boyd, Brigham Young University, University of California-Berkeley, Daniel C. Cohen, Vujadin Jovic, Susan Marshall, Christian Morrow & Todd Owen

36

1.      All DOCUMENTS and CORRESPONDENCE regarding, referring, or relating to any and all INVESTMENT opportunities discussed and/or actually entered into between YOU and PLAINTIFF in the last ten (10) years.

2.      All DOCUMENTS and CORRESPONDENCE memorializing any and all INVESTMENT agreements entered into between YOU and PLAINTIFF in the last ten (10) years, any payments thereof, and any resulting profits or losses.

3.      All DOCUMENTS and CORRESPONDENCE memorializing the financial status of any and all INVESTMENTS entered into between YOU and PLAINTIFF in the last ten (10) years, including but not limited to bank statements, income statements, balance sheets, statements of cash flows, and profit and loss statements.

4.      All DOCUMENTS and CORRESPONDENCE memorializing any and all monetary transactions between YOU and PLAINTIFF in the last ten (10) years, including but not limited to transfers of funds, deposits, and withdrawals.

5.      All DOCUMENTS memorializing any testimony YOU gave in any investigatory, administrative, or legal proceeding, including but not limited to testimony at depositions, hearings, and trials, in the last ten (10) years regarding, referring, or relating to PLAINTIFF.

6.      All DOCUMENTS memorializing any testimony PLAINTIFF gave in any investigatory, administrative, or legal proceeding, including but not limited to testimony at depositions, hearings, and trials, in the last ten (10) years regarding, referring, or relating to YOU.

7.      All DOCUMENTS and CORRESPONDENCE between YOU and the United States Securities and Exchange Commission in the last ten (10) years regarding, referring, or relating to PLAINTIFF, including but not limited to any complaints, investigations, and any investigative reports or findings.

8.      All DOCUMENTS and CORRESPONDENCE between YOU and the Federal Bureau of Investigation or any other LAW ENFORCEMENT in the last ten (10) years regarding, referring, or relating to PLAINTIFF, including but not limited to any complaints, investigations, and any investigative reports or findings.

## PLAINTIFF'S ARGUMENTS

### A.  Summary of Grounds for Motion to Modify

Plaintiff seeks an order modifying document requests Nos. 1, 2, 3, 4, 5, 6, 7 & 9 of the deposition subpoena to Christian Morrow, an individual with whom Plaintiff made a real estate investment that is not at issue in this matter, to limit the scope of those requests to investments. This order is sought on the grounds that the requests are overly broad and encompass privileged and confidential personal financial information of Plaintiff that is not relevant to this matter and because documents pertaining to the investment with which Mr. Morrow was involved have already been produced to Defendants.

### B.  Legal Discussion

In 2007, eight years before he made the investments at issue, Plaintiff made an investment with Defendant Galvanoni in a real estate venture in Costa Rica, with which Mr. Morrow was also involved.  Although that investment is not at issue, Plaintiff produced documents sufficient to show the amount, nature, terms and status of that investment. Plaintiff also does not object to the subpoena to Mr. Morrow insofar as it pertains to that investment. The issue here, however, is that the subpoena seeks all documents and communications between Plaintiff and Mr. Morrow, without limitation.  Consequently, the subpoena is overly broad and encompasses irrelevant documents, including documents relating to a personal loan that Plaintiff made to Mr. Morrow.

Plaintiff's counsel therefore proposed modifying this subpoena to limit it to documents pertaining to the Costa Rica investment and/or to Mr. Galvanoni.  (Steuer Decl. ¶ 20) Defendants refused to agree to this proposed modification, or to any other modification.  (Steuer Decl. ¶ 20) There is no valid rationale for their refusal to do so.  Indeed, Defendants' only stated reason in their opposition for this subpoena is to acquire information about the investment Plaintiff made in which Mr. Morrow was involved.

In addition, the subpoena is properly subject to being quashed because Plaintiff has produced the relevant documents.

## DEFENDANTS' ARGUMENTS

**A.      It Is Improper to Quash or Modify a Subpoena that Seeks Non-Privileged Documents That Are Relevant to the Parties' Claims or Defenses.**

Defendants rely on the same legal authorities discussed in arguments pertaining to the subpoena to Armstrong & Associates to support the present argument.

**1.      The subpoena to Christian Morrow is relevant to Plaintiff's sophistication as an investor and financial knowledge.**

The records sought from Chris Morrow are relevant and proportional to the parties' claims and defenses because the information pertains to Plaintiff's sophistication as an investor, understanding of financial and business transactions, and ability to assess the potential risks and benefits of the transactions underlying his operative complaint.  Plaintiff specifically identified Mr. Morrow as an individual Plaintiff transacted with on prior investments, including investments in which Plaintiff lost money of approximately $75,000.  [Ex. A, 300:2-9.]  (This is in addition to the approximately $500,000 in investments that Plaintiff made with Mr. Jovic [Ex. A, 299:11-22] and Plaintiff's $35,000,000 real estate portfolio [Ex. A, 266:11-267:18.]   The nature and extent of these prior investments and Plaintiff's participation in these financial transactions goes directly to Plaintiff's overall understanding of investment opportunities.  This information also speaks to the credibility and relative weight of Plaintiff's testimony that he was a passive investor in the subject financial transactions with no investment experience and "unsophisticated" [Ex. A, 30:24-31:1].  Because this information is relevant to refuting or supporting Plaintiff's claims that he was an unsophisticated investor, Plaintiff's Motion to Quash the Subpoena to Mr. Morrow should be denied.

**2.      The documents sought are not protected by privilege or other basis for protection.**

Plaintiff's Motion should be denied because Plaintiff has failed to satisfy his burden of establishing that the documents sought by the Subpoenas are subject to privilege or other basis for protection.  The purported privacy right that Plaintiff asserts to preclude Defendants from discovering relevant information is not a sufficient basis on which to modify, much less quash, the Subpoenas because even if Plaintiff had a privacy right in the documents sought, Defendants

have agreed during meet and confer discussions to limit the scope of the Subpoenas to exclude certain private and proprietary matters.  The importance of the remaining materials sought by Defendants' Subpoenas outweigh any purported privacy interest Plaintiff may have because the requested documents are relevant to Plaintiff's claims and Defendants' affirmative defenses and proportional to the needs of the case.

## VIII.   DEPOSITION SUBPOENA TO TODD OWEN

Plaintiff seeks to modify the following document requests set forth in the subpoena to testify at deposition issued to Todd Owen:

1.      All DOCUMENTS and CORRESPONDENCE regarding, referring, or relating to any and all INVESTMENT opportunities discussed and/or actually entered into between YOU and PLAINTIFF in the last ten (10) years.

2.      All DOCUMENTS and CORRESPONDENCE memorializing any and all INVESTMENT agreements entered into between YOU and PLAINTIFF in the last ten (10) years, any payments thereof, and any resulting profits or losses.

3.      All DOCUMENTS and CORRESPONDENCE memorializing the financial status of any and all INVESTMENTS entered into between YOU and PLAINTIFF in the last ten (10) years, including but not limited to bank statements, income statements, balance sheets, statements of cash flows, and profit and loss statements.

4.      All DOCUMENTS and CORRESPONDENCE memorializing any and all monetary transactions between YOU and PLAINTIFF in the last ten (10) years, including but not limited to transfers of funds, deposits, and withdrawals.

5.      All DOCUMENTS memorializing any testimony YOU gave in any investigatory, administrative, or legal proceeding, including but not limited to testimony at depositions, hearings, and trials, in the last ten (10) years regarding, referring, or relating to PLAINTIFF.

6.      All DOCUMENTS memorializing any testimony PLAINTIFF gave in any investigatory, administrative, or legal proceeding, including but not limited to testimony at depositions, hearings, and trials, in the last ten (10) years regarding, referring, or relating to YOU.

7.      All DOCUMENTS and CORRESPONDENCE between YOU and the United States Securities and Exchange Commission in the last ten (10) years regarding, referring, or relating to PLAINTIFF, including but not limited to any complaints, investigations, and any investigative reports or findings.

9.      All DOCUMENTS and CORRESPONDENCE between YOU and the Federal Bureau of Investigation or any other LAW ENFORCEMENT in the last ten (10) years regarding, referring, or relating to PLAINTIFF, including but not limited to any complaints, investigations, and any investigative reports or findings.

### A.      Summary of Grounds for Motion to Modify

Plaintiff seeks an order modifying document requests Nos. 1, 2, 3, 4, 5, 6, 7 & 9 of the deposition subpoena to Todd Owen, a former co-worker of Plaintiff's with whom he made investments that are not at issue in this matter, so as to exclude documents that do not relate to Plaintiff's investments.  This order is sought on the grounds that the requests are overly broad and encompass privileged and confidential personal financial information of Plaintiff, information regarding Plaintiff's customers, and personal information pertaining to Plaintiff's divorce, that is not relevant to this matter.  In addition, Defendants have not made any showing that the relevant documents could not be acquired from Plaintiff.

### B.      Legal Discussion

Todd Owen and Plaintiff were both involved with the investments at issue.  (Marshall Decl. ¶ 21)   Mr. Owen is also the person who introduced Plaintiff to Mr. Galvanoni.  (Marshall Decl. ¶ 21) Accordingly, Plaintiff does not dispute that Mr. Owen has relevant information.  The issue here is that the subpoena to Mr. Owen is so broad that it encompasses information and documents which are not relevant.  Specifically, Mr. Owen and Plaintiff worked together for many years.  (Marshall Decl. ¶ 21)  While Plaintiff was going through his divorce, Mr. Owen handled some of his insurance accounts.   (Marshall Decl. ¶ 21)  Plaintiff also talked to Mr. Owen about his divorce and custody dispute with his ex-wife.  (Marshall Decl. ¶ 21)  In addition, Plaintiff made a personal loan to Mr. Owen.  (Marshall Decl. ¶ 21)  The subpoena Defendants issued to Mr. Owen encompasses information and documents relating to Plaintiff's

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

insurance customers, his divorce, and the personal loan. Such information is clearly not relevant. Accordingly, moving counsel proposed that the subpoena to Mr. Owen be limited to investments and/or to Mr. Galvanoni. (Steuer Decl. ¶ 21) Defense counsel refused to agree to this proposed limitation or to any other. (Steuer Decl. ¶ 21) There is no valid basis for Defendants' position. Moving counsel is seeking a reasonable modification of the subpoena requests which would provide Defendants with the information regarding any investments Plaintiff made with Mr. Owen that they claim to be seeking, while excluding non-relevant information pertaining to Plaintiff's customers, his divorce, and his personal loan.

## DEFENDANTS' ARGUMENTS

**A.      It Is Improper to Quash or Modify a Subpoena that Seeks Non-Privileged Documents That Are Relevant to the Parties' Claims or Defenses.**

Defendants rely on the same legal authorities discussed in arguments pertaining to the subpoena to Armstrong & Associates to support the present argument.

**1.      The investment records from Todd Owen relate to Plaintiff's sophistication as an investor.**

The investment records sought from Todd Owen are relevant and proportional to the parties' claims and defenses because the nature and extent of Plaintiff's prior investments, financial transactions, and business dealings bears on his sophistication as an investor. Plaintiff testified that he participated in investments Mr. Owen [Ex. A, 301:15-20]—among numerous other individuals—but claims that he lacked sufficient knowledge to understand the risks and benefits associated with the underlying subject transactions. The records and information from Mr. Own thus bear directly on Plaintiff's claim that he "unsophisticated" [Ex. A, 30:24-31:1] and lacks knowledge and experience in financial and business matters such that he could sufficiently evaluate the risks and benefits of the subject investments.

Plaintiff's claim that these records are protected by his right to privacy is untenable given that he identified prior investments with Mr. Jovic in his verified discovery responses as relevant but excluded these. [See Hughes Dec., Ex. 13.] All of Plaintiff's investment experience is

relevant to the parties' claims and defenses because it is the weight of this experience and knowledge that bears on Plaintiff's sophistication. This information is necessary to establish the credibility and weight of Plaintiff's claim that he was merely an inactive or unsophisticated investor.

**2.      The documents sought are not protected by privilege or other basis for protection.**

Plaintiff's Motion should be denied because Plaintiff has failed to satisfy his burden of establishing that the documents sought by the Subpoenas are subject to privilege or other basis for protection. The purported privacy right that Plaintiff asserts to preclude Defendants from discovering relevant information is not a sufficient basis on which to modify, much less quash, the Subpoenas because even if Plaintiff had a privacy right in the documents sought, Defendants have agreed during meet and confer discussions to limit the scope of the Subpoenas to exclude certain private and proprietary matters. The importance of the remaining materials sought by Defendants' Subpoenas outweigh any purported privacy interest Plaintiff may have because the requested documents are relevant to Plaintiff's claims and Defendants' affirmative defenses and proportional to the needs of the case.

Dated:   May 24, 2019                      LAW OFFICES OF MELINDA JANE STEUER

By: _____

Melinda Jane Steuer

Attorney for Plaintiff JOHN MARSHALL

Dated:   May 24, 2019                      CLARK HILL LLP

Joint Statement Regarding Discovery Disagreement as to                        lify Third
Party Subpoenas and/or Subpoenas Duces Tecum Issued to Armstrong & Associates Insurance Services, Sean Boyd,
Brigham Young University, University of California-Berkeley, Daniel C. Cohen, Vujadin Jovic, Susan Marshall,
Christian Morrow & Todd Owen
43

By: _____

Bradford G. Hughes
Tiffany B. Hunter

Attorneys for Defendants DANIEL P.
GALVANONI; DPG INVESTMENTS, LLC;
DPG GOLDEN EAGLE, LLC; SPRING TREE
LENDING, LLC; SPRING TREE HOLDINGS,
LLC; SPRING TREE FINANCIAL, LLC; and
SKIBO HOLDINGS, LLC

Joint Statement Regarding Discovery Disagreement as to Plaintiff's Motion to Quash and/or Modify Third
Party Subpoenas and/or Subpoenas Duces Tecum Issued to Armstrong & Associates Insurance Services, Sean Boyd,
Brigham Young University, University of California-Berkeley, Daniel C. Cohen, Vujadin Jovic, Susan Marshall,
Christian Morrow & Todd Owen