UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN MARSHALL, | No. 2:17-cv-00820-KJM-CKD |
| Plaintiff, | |
| v. | ORDER |
| DANIEL P. GALVANONI, et al., | |
| Defendant. | |

Plaintiff's motion to quash and motion for protective order came on regularly for hearing on June 5, 2019. Melinda Steuer appeared for plaintiff. Bradford Hughes appeared for defendants. Upon review of the documents in support and opposition, upon hearing the arguments of counsel, and good cause appearing therefor, THE COURT FINDS AND ORDERS AS FOLLOWS:

I.     Local Rule 251

As a preliminary matter, the court notes that the parties did not fully comply with the Local Rules in connection with the instant discovery motions. See L.R. 251. The parties are directed to review Local Rule 251, which provides specific provisions for a joint statement re discovery disagreement. The parties are cautioned that any future failures to comply with the Local Rules may result in a motion being taken off calendar or improper filings not being considered. Alternatively, the parties can choose to resolve discovery disputes outside the formal

1

Local Rule 251 procedures by conducting an informal telephonic conference. Guidelines for the telephonic conference can be found on the undersigned's case management procedures.

II.   Relevant Allegations and Background

Plaintiff's second amended complaint ("SAC") (ECF No. 47) alleges 18 separate claims, including fraud-intentional misrepresentation, negligent misrepresentation, fraud-false promise, and fraud-omissions. The SAC is based on investments plaintiff allegedly made with defendants between June 2015 and March 2016. (ECF No. 47 at ¶¶ 28–43.) Plaintiff alleges in part that the investments at issue "were not safe but rather were highly risky and illiquid investments that were only suitable for sophisticated investors who wished to speculate, and who were willing and able to bear the risk of losing the entire amount of their investment." (ECF No. 47 at 20:6–8; 29:6–8; 34:25–27.) Plaintiff alleges throughout his SAC that he relied on defendants for investment decisions. (ECF No. 47 at 17:12; 20:27; 25:28; 30:107; 40:6; 45:4; 55:17; 55:22; 59:22; 62:28.)

Fact discovery is scheduled to close on June 14, 2019. (ECF No. 81.)

On March 14, 2019, defendants took plaintiff's deposition. (ECF No. 89-1 at 2.) In his deposition, plaintiff testified that he had mental impairments that affected his ability to read and write, and did not consider himself a sophisticated investor. He also identified some of the individuals whose records were subpoenaed that are at issue in the instant motion to quash and motion for protective order. Approximately six weeks later, on April 24, 2019, defendants issued nine subpoenas for the production of records and depositions, based in part on plaintiff's deposition testimony. (ECF No. 91-1 at 18–104.)

On May 7, 2019, plaintiff filed the instant motions to quash and for protective order. (ECF Nos. 87–88.) On May 22, 2019, defendants filed oppositions to the motions. (ECF Nos. 89–90.) On May 29, 2019, plaintiff filed a motion to quash and motion for protective order that were related to the instant motions and attached the declarations of Melinda Steuer and John Marshall.[1]  (ECF Nos. 91–92.) On May 30, 2019, the parties filed joint statements regarding their discovery disputes. (ECF Nos. 93–94.)

---

[1] The court notes that on June 5, 2019, these entries were modified to include a notation to "disregard – filed in error."

2

On May 31, 2019, the parties filed a stipulated protective order. (ECF No. 95.)

Pursuant to the court's order during the June 5, 2019 hearing, on June 10, 2019, defendants filed a document titled "status report" that contains amended subpoenas. (ECF No. 99.)

III.   Legal Standard

Regarding a motion to quash, the Ninth Circuit has "yet to address the question of whether a party has standing to bring a motion to quash since usually only the subpoenaed non-party may move to quash. The general rule, however, is that a party has no standing to quash a subpoena served upon a third party, except as to claims of privilege relating to the documents being sought." Cal. Sportfishing Prot. All. v. Chico Scrap Metal, Inc., 299 F.R.D. 638, 643 (E.D. Cal. 2014) (citing Windsor v. Martindale, 175 F.R.D. 665, 668 (D. Colo. 1997)); see also Cal. Prac. Guide Fed. Civ. Pro. Before Trial Ch. 11(IV)-F.  Under this general rule, plaintiff lacks standing to object to the subpoena on grounds of relevance or undue burden. A party cannot seek to quash a Rule 45 subpoena except to the extent that it has "a personal right or privilege in the information sought to be disclosed." Freed v. Home Depot U.S.A., Inc., No. 18CV359-BAS (LL), 2019 WL 582346, at *2 (S.D. Cal. Feb. 13, 2019) (quoting Chevron Corp. v. Donziger, 2013 WL 4536808, at *4 (N.D. Cal. Aug. 22, 2013)).

Federal courts recognize, in general, an evidentiary privilege based upon a constitutional right to privacy. To evaluate whether privacy interests should prevail over the interest in fully discovering a case, the court must balance the party's need for the information against the individual's privacy rights. Thierno v. Rite Aid Corp., 2008 WL 3287035 (N.D. Cal. 2008) (citing Ragge v. MCA/Universal, 165 F.R.D. 601, 604 (C.D. Cal. 1995)).

Regarding a motion for protective order, a party can move for a protective order with regard to a subpoena issued to a non-party if it believes its own interests are jeopardized by discovery sought from a third party and has standing under Rule 26(c) to seek a protective order regarding subpoenas issued to non-parties which seek irrelevant information.  A party seeking a protective order must show "good cause" why a protective order is necessary. Rivera v. NIBCO, Inc., 364 F.3d 1057, 1063 (9th Cir. 2004) (noting that a substantial and particularized harm must

be established); Phillips ex rel Estates of Byrd v. General Motors Corp., 307 F.3d 1206, 1210–11 (9th Cir. 2002). Good cause requires the movant to demonstrate "specific prejudice or harm" if no protective order is granted. Phillips, 307 F.3d at 1210–11. Broad unsubstantiated allegations of harm are not sufficient. Id. at 1211. Where harm is demonstrated, a court must balance the parties' and public's interests in deciding whether a protective order is necessary. Id.

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence." Fed. R. Evid. 401. "If no claim of privilege applies, a non-party can be compelled to produce evidence regarding any matter 'relevant to the subject matter involved in the pending action' or 'reasonably calculated to lead to the discovery of admissible evidence.'" Shoen v. Shoen, 5 F.3d 1289, 1292 (9th Cir. 1993) "This broad right of discovery is based on the general principle that litigants have a right to 'every man's evidence,' and that wide access to relevant facts serves the integrity and fairness of the judicial process by promoting the search for the truth." Id. (quoting United States v. Bryan, 339 U.S. 323, 331 (1950)).

IV. Discussion

    a. Armstrong & Associates Insurance Services

Armstrong & Associates Insurance Services ("Armstrong") is plaintiff's current employer. On June 10, 2019, defendants submitted an amended subpoena to produce the following records: "All employment, disciplinary, and financial records of or pertaining to John Marshall in your possession, custody, or control. Any and all proprietary customer lists, trade secrets, confidential customer information, and documentation regarding, referring, or relating to Armstrong & Associates' customers shall be excluded." (ECF No. 99-1 at 2.)

On a motion to quash, the only ground that plaintiff has standing to pursue is his privacy interest in his employment records, which necessarily implicates relevance. Plaintiff separately seeks a protective order forbidding the subpoena to protect him from annoyance, embarrassment, an undue burden, and harassment because his employment records are not relevant to this dispute. (ECF No. 88 at 2; ECF No. 94 at 6–11.)

In response, defendants state they have raised the affirmative defense for sophisticated investor and that plaintiff claims he suffers from memory difficulty and various learning disabilities that impacted his ability to understand the investment transactions. (ECF No. 93 at 11.) Defendants agreed to narrow the subpoena to exclude the company's proprietary information and any customer lists or information. (Id. at 13:5–7; see also ECF No. 99-1 at 2.)

During the hearing, plaintiff's counsel confirmed that it is undisputed that plaintiff used his Armstrong email address to conduct business because he received an accommodation from his employer to use his work email address to conduct email because that way staff can help him read the emails and expand emails so the words are bigger. Counsel also explained that there were some limited communications when defendants were thinking of buying insurance through Armstrong, which communications have been produced. In response, defense counsel argued that defendants should be entitled to discover documents supporting plaintiff's contention that he went to Armstrong for an accommodation and has a hard time reading and understanding emails. Defense counsel further argued that discovery of this information is relevant to one of the key issues in the case, which is the fact that after the investments failed, plaintiff told defendants that he is dyslexic and did not understand anything defendants told him regarding the investments.

Plaintiff is correct that he has a right of privacy in his employment records. El Dorado Savings & Loan Assn. v. Superior Court, 190 Cal. App. 3d 342, 345–46 (1987), disapproved of on other grounds by Williams v. Superior Court, 3 Cal. 5th 531, 557, n.8 (2017). However, this right is not absolute.

Defendants have not shown that all of plaintiff's employment records are relevant to this dispute. For example, there is no showing that plaintiff's employment records will provide information relevant to: (1) the source of funds plaintiff allegedly invested with defendants,

5

(2) plaintiff's overall sophistication as an investor, (3) the nature and extent of plaintiff's claims of investment fraud, (4) plaintiff's commercial experience relevant to his allegations, or (5) plaintiff's credibility as a witness. (See ECF No. 93 at 14:16–22; 15:4–13; 16:6–18; ECF No. 94 at 14–16.) Although these issues are relevant to the parties' dispute, defendants do not affirmatively show how exactly plaintiff's employment records with Armstrong have bearing on any of these items.

Defendants argue that plaintiff brought his place of employment and potential information therein within the scope of his claim by using his Armstrong email account for nearly all correspondence pertaining to investments, thereby waiving any purported privacy concerns. (ECF No. 94 at 15.) Defendants also argue that plaintiff used his Armstrong email address to recruit potential investors for DPG Investments, LLC and its subsidiaries. (ECF No. 94 at 15:7–13.) However, plaintiff testified that it was not his job to try to find other investors to "come into the enterprise" and he was only on calls concerning strategic decisions "to make sure [his] money was being secured." (Id. at 25, 78:24–79:18.) Defendants provide no authority for the proposition that by using his work email for communications regarding the investments at issue in this litigation, plaintiff waived any and all privacy rights in his Armstrong personnel (employment, disciplinary, and financial) records.

That said, however, plaintiff testified in deposition that he used his Armstrong email address to conduct DPG investment opportunity business because he has "a difficult time sometimes on Yahoo reading some of the stuff," (ECF No. 90-1 at 23, 71:10–15), and there is some merit to discovering the extent of the accommodations plaintiff sought and received from his employer. These records are relevant to plaintiff's claim that he did not understand what defendants told him about the investments because of his learning disability and memory.

For these reasons, plaintiff's motion to quash is GRANTED in part and DENIED in part. Defendants are permitted to discover plaintiff's personnel records limited to documents showing accommodations sought and received from Armstrong for plaintiff's learning disabilities and memory issues. Plaintiff's motion for protective order is DENIED as moot.

////

6

b. Sean Boyd

Sean Boyd ("Boyd") is plaintiff's certified public accountant. The court notes that Sean Boyd stated in his objections that he will not comply with request numbers 1–6 as currently phrased and does not have documents responsive to request numbers 7–15. (ECF No. 91-1 at 109–114.) In light of this response, the court only addresses request numbers 1–6.[2]

Plaintiff moves to quash the subpoena and seeks a protective order limiting the subpoena to preclude his tax returns and bank records. Defendants agreed to exclude tax records and provided an amended subpoena that specifically notes "Plaintiff's tax returns shall be excluded from production." (ECF No. 99-1 at 19.)

Plaintiff opposes production of his bank records on the ground that they are not relevant to this dispute. However, plaintiff's counsel during the hearing only said it is "possible" Boyd may have some bank statements, but they are not sure one way or the other. Moreover, plaintiff stated in his motion that his "allegations are supported by bank records." (ECF No. 93 at 5:11–12; ECF No. 94 at 5.) In opposition, defendants argue that plaintiff waived any privacy right when he disclosed his bank information, and the records bear on plaintiff's claim that he was unable to identify the source of funds he allegedly invested into defendants and his financial strength. With regard to any bank records that Boyd may have, defense counsel stated during the hearing that defendants are willing to limit the time period of the investments, which is between June 2015 and March 2016. (ECF No. 47 at ¶¶ 28–43.)

Reviewing request numbers 1–6 (ECF No. 91-1 at 33), they are targeted at discovering information regarding plaintiff's investment and monetary transactions, which are relevant to his allegations that the investments at issue were only suitable for a sophisticated investor and his deposition testimony that he does not consider himself a sophisticated investor. Defense counsel reiterated this position during the hearing in which he explained defendants are seeking

---

[2] Defendants submitted an amended subpoena that contains 91 requests for production of documents compared to the subpoena plaintiff moved to quash or modify, which contained only 15 requests for production. (Compare ECF No. 91-1 at 33–35 with ECF No. 99-1 at 25–32.) These are not the amendments the court directed defendants to make, which the court stated should memorialize the limitation agreements discussed during the June 5, 2019 hearing. The court does not provide any opinion on defendants' new requests for production.

7

documents to compare against the personal financial statement plaintiff provided to defendants in an effort to assess whether or not he is a sophisticated investor.

Plaintiff failed to establish his bank records are privileged under California law. Plaintiff also fails to establish his bank records are not relevant to this dispute or that he will suffer a specific prejudice or harm if the records are produced. Phillips, 307 F.3d at 1210–11 (broad unsubstantiated allegations of harm are not sufficient). However, in light of defense counsel's agreement during the hearing to limit any bank records Boyd may have to the relevant time period, the court will grant plaintiff's motion for protective order consistent with this stipulation.

For these reasons, plaintiff's motion to quash is DENIED. Plaintiff's motion for protective order is GRANTED in part and DENIED in part. Defendants may discover any bank records Boyd has limited to the time frame of June 2015 to March 2016.

    c. Brigham Young University and University of California-Berkeley

Brigham Young University and University of California-Berkeley are institutions plaintiff attended between 1982 and 1989. Defendants seek "[a]ll academic and disciplinary records of or relating to [plaintiff] . . . in [each university's] possession, custody, or control." (ECF No. 99-1 at 5, 8.)

Plaintiff seeks an order quashing the subpoena and limiting the scope to documents sufficient to identify the names of classes plaintiff took on the grounds that "the other documents sought by Defendants are privileged and confidential and are not relevant" to plaintiff's claims and because the subpoenas are overly broad. (ECF No. 93 at 22:1–4.)

As noted above, the general rule is that a party has no standing to quash a subpoena served upon a third party, except as to claims of privilege relating to the documents being sought." Cal. Sportfishing, 299 F.R.D. at 643. Plaintiff's only authority in support of his argument that the records are protected is Hendricks v. Total Quality Logistics, LLC, 275 F.R.D. 251, 254–56 (S.D. Ohio 2011). (ECF No. 93 at 22; ECF No. 94 at 23.) Plaintiff argues that in Hendricks the court quashed the subpoena for educational records "because the material was confidential, the requested documents were not relevant, and the subpoenas were overly broad." (ECF No. 93 at 22; ECF No. 94 at 23.) In Hendricks, the court quashed the subpoenas to the plaintiffs' former

8

colleges and universities because academic records including, "among other things, standardized test scores and evaluations by professors" were "entirely irrelevant to whether plaintiffs were exempt from the FLSA's overtime pay requirements." Hendricks, 275 F.R.D. at 256. This case does not support that academic records are privileged under California law, which, as plaintiff acknowledged, "[i]n diversity cases such as this, questions of privilege are controlled by California state law." (ECF No. 93 at 18.) Plaintiff provides no authority supporting his assertion. Plaintiff's motion to quash is DENIED.

Regarding plaintiff's motion for protective order, plaintiff argues that the documents are not relevant to plaintiff's claims and the subpoenas are overly broad. (ECF No. 94 at 23:2–6.) Plaintiff again relies on Hendricks in which the court quashed subpoenas to the plaintiffs' former colleges and universities because academic records were "entirely irrelevant" to the plaintiffs' FLSA overtime claims. Hendricks, 275 F.R.D. at 256. However, plaintiff did not raise overtime claims on which his academic records have no bearing. In that regard, defendants argue that the academic records are relevant to plaintiff's credibility, his legal knowledge, and his sophistication as an investor. (ECF No. 94 at 24:25–28, 25:9–16.) However, defendants have not shown how plaintiff's academic disciplinary records are relevant to the claims and defenses in this case. On the other hand, plaintiff did not establish that his academic records are not relevant to, for example, whether he credibly testified that he has a learning disability for which he received accommodations (extra time to take tests) while attending both schools[3] or whether he is knowledgeable in securities and contract law. Nor did plaintiff show a specific prejudice or substantial and particularized harm that will result if no protective order is granted. Phillips, 307 F.3d at 1210–11.

Plaintiff's motion for protective order is GRANTED in part and DENIED in part.

---

[3] It appears that Brigham Young University Accessibility Center may not have information showing plaintiff has a learning disability. (ECF No. 92-2 at 14.) Plaintiff's counsel stated during the hearing that the schools responded stating the they do not keep records regarding learning disabilities or dyslexia, which were attached as exhibit two to plaintiff's declaration. However, only one school provided a letter; and it suggests records may be available from other sources within the school. (See id. ("[w]e recommend contacting the J. Rueben Clark Law school in particular, or going to the group that first gave you a diagnosis . . .").)

Defendants are permitted to discover plaintiff's academic records from Brigham Young University and University of California-Berkeley, excluding any and all disciplinary records.

d.  Daniel C. Cohen, M.D.

Dr. Cohen is plaintiff's physician.  Plaintiff moves to quash or modify the subpoena to limit the scope to documents regarding only his memory and/or any impairment and/or to his dyslexia.  (ECF No. 93 at 25; ECF No. 94 at 26.)  In response and during the June 5, 2019 hearing, defendants argue plaintiff's motion on this subpoena is moot as defendants agreed to limit the subpoena to seek only records that pertain to plaintiff's memory issues and dyslexia.  (See ECF No. 26 at 23–25.)  Defendants submitted an amended subpoena that seeks documents "for dyslexia and/or memory conditions only."  (ECF No. 99-1 at 14 (emphasis omitted).)

Plaintiff's motion to quash and motion for protective order are DENIED as moot.

e.  Vujadin Jovic

Vujadin Jovic ("Jovic") is an individual with whom plaintiff engaged in investment and financial transactions.  (See ECF No. 89-2 at 3:23–25.)  Plaintiff argues that the documents sought are privileged and confidential personal financial information, are not relevant to this matter, and the requests are over broad.  (ECF No. 93 at 28–30; ECF No. 94 at 17–20.)

Regarding his motion to quash, plaintiff cites <u>Barkley v. Cal. Corr. Health Care Servs.</u>, 2017 U.S. Dist. LEXIS 67017, *4 (E.D. Cal., May 2, 2017) in support of his position that he can seek to quash a subpoena that is overly broad.  However, in <u>Barkley</u>, the subpoena sought the plaintiff's medical records, health care appeals, and communications related to these records.  Here, the subpoenas are not related to medical records that are protected by specific privileges.  Plaintiff failed to provide any argument or authority establishing standing to quash a subpoena served upon a third party on the grounds of a personal privilege relating to the documents being sought.  <u>Cal. Sportfishing</u>, 299 F.R.D. at 643; <u>Freed</u>, 2019 WL 582346, at *2 (plaintiff must establish a personal right or privilege in the information sought to be disclosed).  Plaintiff argues that the responsive documents "include many thousands of documents relating to tenants, building improvements, environmental issues, lawsuits, accountings, construction issues, and multiple other issues that are not relevant to this investment fraud dispute.  Responsive documents

10

also include personal financial and bank records of Plaintiff and of third parties who were involved in the same investments as Plaintiff, as well as confidential information pertaining to tenants." (ECF No. 93 at 29:23–28.) Plaintiff submitted a declaration stating that he "believe[s] that many of the communications and records defendants have demanded are covered by the settlement communications privilege, mediation privilege and/or attorney-client privilege." (ECF No. 91-2 at 6, ¶ 19.) But no legal authority or description of documents was provided to support this position. It is difficult to find any privilege attaches given plaintiff's conclusory arguments. That plaintiff "believes" communications are privileged is insufficient to carry his burden here, and the court will not guess whether a privilege applies to the unidentified documents at issue. In any event, defendants agreed to exclude settlement and/or mediation protected communications. (See ECF No. 99-1 at 61.)[4] Plaintiff's motion to quash is DENIED.

Regarding his motion for protective order, plaintiff cites F.T.C. v. AMG Servs., Inc., 291 F.R.D. 544, 553 (D. Nev. 2013), which explains that "the 'objecting party must specifically detail the reasons why each request is irrelevant' and may not rely on boilerplate, generalized, conclusory, or speculative arguments." (quoting Painters Joint Committee v. Employee Painters Trust Health & Welfare Fund, No. 2:10–CV–1385 JCM (PAL), 2011 WL 4573349, at *5 (D.Nev. 2011), modified on other grounds, 2011 WL 5854714 (D. Nev. 2011)).

Here, plaintiff does not detail the reasons why each of the 15 requests he seeks to limit responses to are irrelevant, arguing broadly that "the other documents and information sought by Defendants is privileged and confidential personal financial information of Plaintiff that is not relevant to this matter, and is also protected by the settlement communications and/or mediation privileges." (ECF No. 94 at 30.) Nor does plaintiff explain why his financial records are not relevant to the claims and defenses in this case considering it involves plaintiff's financial investments and claims that he is not a sophisticated investor.

---

[4] The court notes that again defendants submitted an amended subpoena that contains 91 requests for production of documents compared to the subpoena plaintiff moved to quash or modify, which contained only 15 requests for production. (Compare ECF No. 91-1 at 60–62 with ECF No. 99-1 at 62–69.) These are not the amendments the court directed defendants to make, which the court stated should memorialize the limitation agreements discussed during the June 5, 2019 hearing. The court does not provide any opinion on defendants' new requests for production.

11

In response, defendants argue that the records sought are relevant to the parties' claims and defenses because the nature and extent of plaintiff's prior investments, financial transactions, and business dealings bears on his sophistication as an investor. (ECF No. 94 at 33 (citing ECF No. 89-1 at 81, 298:18–299:24 (plaintiff testifying that Jovic was a person he lost money with but did not take to the SEC or FBI).) Defendants further argue that the testimony and documents sought from Jovic pertain to their investment relationship and "are therefore relevant to establishing the nature and extent of Plaintiff's prior investments, including his involvement in business funding, whether he considered himself a lender or investor, whether he could weigh the risks and benefits of investment opportunities, and whether he executed agreements in those ventures." (ECF No. 94 at 33.)

As noted above, plaintiff did not establish a privilege attaching to any of the documents sought. Regarding whether the documents are relevant or overbroad, plaintiff argues that "Defendants have subpoenaed all documents, correspondence and financial records between Plaintiff and Mr. Jovic, without any limitation as to scope or time." (ECF No. 94 at 31.) However, with the exception of request numbers 14 and 15, all requests are limited to the last 10 years and are therefore not unlimited in time as plaintiff claims. (ECF No. 91-1 at 60–62.) Plaintiff does not articulate any specific reason why a scope of 10 years is over broad in light of the facts in this case, and the court will not make this argument for plaintiff.

Plaintiff next argues that he agreed to produce investment agreements that he and an entity plaintiff owned made with Mr. Jovic. (ECF No. 94 at 31.) However, this cannot serve as a means to prevent production of other records sought from a third party, and such an argument only cuts against plaintiff's position that "the scope of the documents Defendants have subpoenaed from [Jovic] goes far beyond what could conceivably be relevant." (ECF No. 94 at 31.) Next, copying his motion to quash, plaintiff again argues that documents responsive to the requests "include[] many thousands of documents relating to tenants, building improvements, environmental issues, lawsuits, accountings, construction issues, and multiple other issues that are not relevant to this investment fraud dispute. Responsive documents also include personal financial and bank records of Plaintiff and of third parties who were involved in the same

investments as Plaintiff, as well as confidential information pertaining to tenants." (ECF No. 94 at 32.)

As noted above, plaintiff did not carry his burden to show that documents responsive to any specific request are privileged. Similarly, plaintiff's generalized, conclusory, and speculative arguments that the documents sought are irrelevant fail to carry his burden on a motion for protective order. Plaintiff did not identify which specific request(s) will yield these thousands of documents relating to, for example, tenants or construction issues—this is in light of the fact that plaintiff's counsel represented during the hearing that she reviewed at least some of the documents. F.T.C., 291 F.R.D. at 553 (explaining the objecting party must detail the reasons why *each request* is irrelevant) (citing E.E.O.C. v. Caesars Entertainment, Inc., 237 F.R.D. 428, 432 (D. Nev. 2006) ("Rule 26(c) requires more than broad allegations of harm, unsubstantiated by specific examples or articulated reasoning. The party seeking the order must point to specific facts that support the request, as opposed to conclusory or speculative statements . . .") (internal quotations omitted))). Nor did plaintiff establish that he will suffer a specific prejudice or substantial and particularized harm if the records are produced. Phillips, 307 F.3d at 1210–11 (broad unsubstantiated allegations of harm are not sufficient) (citing San Jose Mercury News, Inc. v. U.S. Dist. Court--N. Dist. (San Jose), 187 F.3d 1096, 1102 (9th Cir. 1999) (holding that to gain a protective order the party must make "particularized showing of good cause with respect to any individual document")).

Plaintiff's motion for protective order is DENIED.

f. Christian Morrow

Plaintiff made at least one investment with Christian Morrow ("Morrow") and defendant Galvanoni. (ECF No. 93 at 38.) Defendants sought production of records from Morrow that, according to their amended subpoena, exclude "[c]ustomer information, trade secrets, and information pertaining to Plaintiff's divorce from Susan Marshall." (ECF No. 91-1 at 78–90; ECF No. 99-1 at 97–100.)

Plaintiff seeks to quash request numbers 1–7 and 9, however only lists request numbers 1–8 in the parties' joint statement. (ECF No. 93 at 37, 38:3.) A party has no standing to quash a

subpoena served upon a third party, except as to claims of privilege relating to the documents being sought." Cal. Sportfishing, 299 F.R.D. at 643. Plaintiff made now showing of "a personal right or privilege in the information sought to be disclosed" by Morrow. Freed, 2019 WL 582346, at *2. Plaintiff's motion to quash is DENIED.

Regarding a protective order, plaintiff seeks an order limiting the scope of the subpoena to Morrow to "information, documents and/or communications between Mr. Morrow and the Defendants herein, and/or related to the Costa Rica investment which Plaintiff made with Mr. Morrow and Mr. Galvanoni." (ECF No. 94 at 42.) Plaintiff sought this order on the grounds that the documents are privileged and confidential and not relevant to this matter. (Id.) As noted above, plaintiff failed to establish a privilege attaching to any of the documents sought. Regarding relevance, plaintiff argues that the subpoena "seeks all documents and communications between Plaintiff and Mr. Morrow, without limitation" and "[c]onsequently, the subpoena is overly broad and encompasses irrelevant documents, including documents relating to a personal loan that Plaintiff made to Mr. Morrow." (Id.) This is the extent of plaintiff's arguments addressing the relevance and overbreadth of the 15 document requests at issue. In opposition, defendants argue that, *inter alia*, the records sought from Morrow "pertain[] to Plaintiff's sophistication as an investor, understanding of financial and business transactions, and ability to assess the potential risks and benefits of the transactions underlying the Complaint." (ECF No. 94 at 43.)

Plaintiff did not identify which specific request(s) will yield irrelevant documents, or explain why they are irrelevant in light of the fact that plaintiff put at issue his investment sophistication when he alleged the investments were suitable for sophisticated investors and testified that he did not consider himself a sophisticated investor (ECF No. 47 at 20; ECF No. 90-1 at 13), made investments with Morrow and defendant Galvanoni at least eight years ago (ECF No. 94 at 42:19–21), and identified Morrow as a person with whom he made investments (ECF No. 90-1 at 81). As with the Jovic subpoena, plaintiff failed to meet his burden supporting a protective order or establish that he will suffer a specific prejudice or harm if the records are produced. F.T.C., 291 F.R.D. at 553; Phillips, 307 F.3d at 1210–11.

Plaintiff's motion for protective order is DENIED.

g.  Todd Owen

Todd Owen ("Owen") is plaintiff's former co-worker who made investments with plaintiff. (ECF No. 93 at 41.) Owen also introduced plaintiff to defendant Galvanoni and was involved with the investments at issue. (ECF No. 94 at 19–20.) Defendants sought production of records from Owen that, according to their amended subpoena, exclude "[c]ustomer information, trade secrets, and information pertaining to Plaintiff's divorce from Susan Marshall."[5] (ECF No. 91-1 at 102–104; ECF No. 99-1 at 79–87.)

Plaintiff seeks to quash request numbers 1–7 and 9. (ECF No. 93 at 41.) A party has no standing to quash a subpoena served upon a third party, except as to claims of privilege relating to the documents being sought." Cal. Sportfishing, 299 F.R.D. at 643. Plaintiff made no showing of "a personal right or privilege in the information sought to be disclosed" by Owen. Freed, 2019 WL 582346, at *2. Plaintiff's motion to quash is DENIED.

Regarding a protective order, plaintiff seeks an order limiting the scope of the subpoena to Owen to "information, documents and/or communications between Mr. Owen and the Defendants herein, and/or related to investments which Plaintiff made with Mr. Owen and/or Mr. Galvanoni." (ECF No. 94 at 46.) Not disputing that Owen has relevant information, plaintiff sought this order on the grounds that the documents are privileged and confidential and not relevant to this matter. (Id.) As noted above, plaintiff failed to establish a privilege attaching to any of the documents sought. Regarding relevance, plaintiff argues that Owen handled some of plaintiff's insurance accounts while plaintiff was going through his divorce and custody dispute with his ex-wife, plaintiff talked to Owen about his divorce and custody dispute, and plaintiff made a personal loan to Owen. (Id.) Plaintiff concludes that the subpoena issued to Owen "encompasses information and documents relating to Plaintiff's insurance customers, his divorce, and the personal loan."

---

[5] Again, defendants submitted an amended subpoena that contains 97 requests for production of documents compared to the subpoena plaintiff moved to quash or modify, which contained only 15 requests for production. (Compare ECF No. 91-1 at 102–104; ECF No. 99-1 at 79–87.) These are not the amendments the court directed defendants to make, which the court stated should memorialize the limitation agreements discussed during the June 5, 2019 hearing. The court does not provide any opinion on defendants' new requests for production.

(ECF No. 94 at 46–47.) The first two concerns are moot in light of the fact defendants' amended subpoena excludes customer information, trade secrets, and information pertaining to plaintiff's divorce. (ECF No. 99-1 at 79.) In opposition, defendants argue that, *inter alia*, the records sought from Owen are relevant and proportional to the parties' claims and defenses because "the nature and extent of Plaintiff's prior investments, financial transactions, and business dealings bears on his sophistication as an investor." (ECF No. 94 at 47.) Defendants further argue that plaintiff specifically identified Owen at his deposition and admits that he lost money in investment dealings with Owen, and the documents sought are pertinent to plaintiff's "claims that despite his prior investment relationships, he lacked sufficient knowledge to understand the risks and benefits associated with the investments" at issue. (Id. (citing ECF No. 89-1 at 82, 301:18–302:5).)

Plaintiff did not identify which specific request(s) will yield documents regarding a personal loan plaintiff made to Owen or explain why the loan documents are irrelevant. Plaintiff instead concludes, without reasoning or authority in support thereof, that all 15 requests should be modified because they encompass documents relating to a personal loan plaintiff made to Owen. As with the Jovic and Morrow subpoenas discussed above, plaintiff failed to meet his burden supporting a protective order or establish that he will suffer a specific prejudice or harm if the records are produced. F.T.C., 291 F.R.D. at 553; Phillips, 307 F.3d at 1210–11.

Plaintiff's motion for protective order is DENIED.

h. Susan Marshall

Susan Marshall ("Susan") is plaintiff's ex-wife and they divorced in 2003. Defendants sought documents from Susan and agreed in their amended subpoena to exclude "[i]nformation pertaining to the custody of Plaintiff's children, child support, alimony, as well as privileged settlement and/or mediation communications."[6] (ECF No. 91-1 at 74–76; ECF No. 99-1 at 42.)

---

[6] Again, defendants submitted an amended subpoena that contains 98 requests for production of documents compared to the subpoena plaintiff moved to quash or modify, which contained only 16 requests for production. (Compare ECF No. 91-1 at 74–76; ECF No. 99-1 at 43–51.) These are not the amendments the court directed defendants to make, which the court stated should memorialize the limitation agreements discussed during the June 5, 2019 hearing. The court does not provide any opinion on defendants' new requests for production.

Regarding his motion to quash, plaintiff seeks to quash request numbers 1–8 and 10. (ECF No. 93 at 33.) Susan objected to the requests, stating she no longer has any responsive documents in her possession, custody, or control for numbers 1–5 and 8–16. (ECF No. 91-1 at 116–122.) As a result, the court finds plaintiff's motion to quash request numbers 1–5, 8, and 10 moot. Request numbers 6 and 7 seek the following documents:

> 6. All DOCUMENTS memorializing any testimony YOU gave in any investigatory, administrative, or legal proceeding, including but not limited to testimony at depositions, hearings, and trials, regarding, referring, or relating to any of PLAINTIFF'S INVESTMENTS.
>
> 7. All DOCUMENTS contained in the court file pertaining to YOUR divorce from PLAINTIFF.

(ECF No. 91-1 at 74.) Plaintiff claims that the documents sought contain his privileged and confidential financial information, and documents protected by the settlement communications and/or mediation privileges. (ECF No. 93 at 33:5–12.) To the extent responsive documents are protected by a settlement communication and/or mediation privilege, defendants agreed to exclude from production "privileged settlement and/or mediation communications." (ECF No. 99-1 at 42.) Plaintiff does not make any showing that he has a personal right or privilege in the information sought to be disclosed by request numbers 6 and 7, which seek testimony Susan provided and court records. Plaintiff's motion to quash is DENIED.[7]

Plaintiff seeks a protective order precluding Susan's deposition in its entirety "in order to protect Plaintiff from embarrassment, annoyance, harassment, and undue burden." (ECF No. 94 at 36.) In support of his motion, plaintiff argues that he is not on speaking terms with Susan, Susan has no relevant information, "information pertaining to Plaintiff's divorce is privileged and confidential personal financial information of Plaintiff that is not relevant to this matter, and is also protected by the settlement communications and/or mediation privileges." (Id. at 36–37.) Defendants agreed to exclude "privileged settlement and/or mediation communications" and this argument is therefore moot. (ECF No. 99-1 at 42.)

---

[7] Plaintiff did not separately seek a protective order on these requests and the court will not infer one from plaintiff's briefing.

1   In response to plaintiff's argument that the source of funds for some of the investments at
2   issue were misidentified as coming from plaintiff's daughter's account, defendants argue that
3   plaintiff is "either unwilling or unable to identify the source of at least some of the funds he
4   invested with Defendants." (ECF No. 94 at 39 (citing ECF No. 89-1 at 38, 131:8–22, 132:9–12
5   (plaintiff's deposition testimony regarding a wire transfer on February 11, 2016 and another wire
6   transfer a few days later).)  However, defendants fail to establish that Susan has knowledge of the
7   source of the funds plaintiff invested considering she and plaintiff have been divorced since 2003.
8   Defendants also fail to explain how the source of funds is relevant to the claims and defenses in
9   this case, namely plaintiff's sophistication as an investor.  Moreover, the source of funds appears
10  to have been addressed in the April 8, 2019 letter Patelco Credit Union sent to plaintiff wherein
11  the branch manager of the financial institution explains that "the two wire transfers sent on
12  2/19/16 & 2/11/16 in the amount of $25,000 each we sent with the incorrect senders name" and
13  that "[t]he funds transferred were transferred from an account owned & operated by John
14  Marshall."  (See ECF No. 92-2 at 16.)[8]

15      As for defendants' remaining arguments that Susan has "knowledge pertaining to the
16  nature and extent of Plaintiff's prior investments, his sophistication as an investor, and his
17  memory and dyslexia conditions," (ECF No. 94 at 39), there is some merit to these arguments in
18  light of the fact plaintiff alleged the investments at issue were only suitable for sophisticated
19  investors and testified that he did not consider himself a sophisticated investor (ECF No. 47 at 20;
20  ECF No. 90-1 at 13), and separately testified that he has difficulty with reading and writing.  (See,
21  e.g., ECF No. 89-1 at 23, 72:9–10; at 25, 80:21–22; at 38, 129:8–9; at 49, 176:10–11; at 57,
22  208:8–11; at 58, 209:1.)  Plaintiff cites Gadbury v. GMRI, Inc., No. 08-1406-JTM-DWB, 2009
23  WL 2414005 (D. Kan. Aug. 6, 2009) in support of his motion for protective order.  In Gadbury,
24  the court explained that although it is possible evidence may be excluded at trial, that possibility
25  should not necessarily prevent a party from conducting the requested discovery.  Id. at *3; see

---

[8] The court notes again that plaintiff's "motion for protective order" and declarations in support thereof (ECF No. 92) have since been modified to include a notation to "disregard – filed in error."  This document was considered by the court in preparation for the June 5, 2019 hearing and before this notation was added.

also id. at *4 (explaining that when considering a request for a protective order concerning discovery, the court has broad discretion to specify terms and conditions for discovery (citing Fed. R. Civ. P. 26(c)(1)); see also Seattle Times Co. v. Rhinehart, 467 U.S. 20, 36 (1984) (Rule 26 confers "broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required"). However, a party should not necessarily be allowed unbridled leeway into questioning of witnesses. Gadbury, 2009 WL 2414005, at *3. Similarly, here, defendants should not be given unfettered freedom to question Susan during her deposition on matters that have no bearing on the claims and defenses in this case.

For these reasons, plaintiff's motion for protective order is GRANTED in part and DENIED in part. Defendants are permitted to take the deposition of Susan Marshall limited to questions regarding the following topics: (1) plaintiff's prior investments, (2) plaintiff's sophistication as an investor, and (3) plaintiff's memory and dyslexia conditions.

V. Conclusion

For the foregoing reasons, plaintiff's motion to quash (ECF No. 87) and motion for protective order (ECF No. 88) are DENIED in part and GRANTED in part.

To the extent defendants submitted amended subpoenas that modify and/or add new requests for production of documents, those subpoenas are not approved to be served on the third parties. Defendants are only permitted to serve the nine subpoenas addressed in this order in their original form (containing the original requests for production) with the additional limitations discussed herein. Defendants are cautioned that any attempt to modify and/or add new requests to the nine subpoenas addressed herein will be considered a violation of this order.

IT IS SO ORDERED.

Dated: June 14, 2019

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

15 marshall820.mtq.mpo