CLARK HILL LLP
Bradford G. Hughes (SBN 247141)
bhughes@ClarkHill.com
Tiffany B. Hunter (SBGooN 306382)
thunter@ClarkHill.com
1055 West Seventh Street, Suite 2400
Los Angeles, CA 90017
Telephone:    (213) 891-9100
Facsimile:    (213) 488-1178

KAUFMAN & FORMAN, P.C.
Alex B. Kaufman (SBN GA 136097)
abk@kauflaw.net
Matthew D. Treco (SBN GA 802181)
mdt@kauflaw.net
8215 Roswell Rd., Building 800
Atlanta, Georgia 30350-6445
Telephone: 770.390.9200
Facsimile: 770.395.6720

Attorneys for Defendants DANIEL P. GALVANONI; DPG INVESTMENTS, LLC; DPG GOLDEN EAGLE, LLC; SPRING TREE LENDING, LLC; SPRING TREE HOLDINGS, LLC; SPRING TREE FINANCIAL, LLC; and SKIBO HOLDINGS, LLC

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN MARSHALL, an individual,<br><br>Plaintiff,<br><br>v.<br><br>DANIEL P. GALVANONI, an individual; DPG INVESTMENTS, LLC, a foreign limited liability company; DPG GOLDEN EAGLE, LLC, a foreign limited liability company; SPRING TREE LENDING, LLC, a foreign limited liability company; SPRING TREE HOLDINGS, LLC, a foreign limited liability company; SPRING TREE FINANCIAL, LLC, a foreign limited liability company; SKIBO HOLDINGS, LLC, a foreign limited liability company; GERALD T. HUDSPETH, an individual; JEROME L. JOSEPH, an individual; WILLIAM J. BROOKSBANK, an individual; AND DOES 1-100, inclusive,<br><br>Defendants. | Case No. 2:17-CV-00820-KJM-CKD<br><br>**JOINT STATEMENT RE DISCOVERY DISAGREEMENT AS TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER PERTAINING TO SUBPOENAS OF WELLS FARGO BANK AND BBVA COMPASS**<br><br>Date:         June 26, 2019<br>Time:         10:00 a.m.<br>Courtroom:  Courtroom 24, 8th Floor<br><br>Judge:        Hon. Carolyn K. Delaney |

1
2

# **TABLE OF CONTENTS**

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

I.      INTRODUCTION ............................................................................1

II.     DISCOVERY DISPUTES ..............................................................1

        A.      Subpoena Duces Tecum to Wells Fargo Bank ...................1

        B.      Subpoena Duces Tecum to BBVA Compass.......................2

III.    DEFENDANTS' ARGUMENTS......................................................2

        A.      Procedural History .............................................................2

                1.      Plaintiff Issues Subpoenas to Wells Fargo Bank and
                        BBVA Compass .......................................................3

                2.      The Subpoenas Seek Information That Plaintiff Had
                        Not Previously Sought Through Party Discovery.....................3

                3.      Defendants Object to Both Subpoenas .....................3

                4.      The Parties Meet and Confer Regarding Both
                        Subpoenas..................................................................4

        B.      A Protective Order Is Appropriate to Prevent Disclosure of
                Defendants' Protected Information ......................................5

        C.      The Subpoenas Seek Information That Is Protected By
                Financial Privilege and Is Not Relevant or Proportional to
                the Needs of the Case...........................................................7

                1.      The subpoenas seek irrelevant information that is
                        disproportionate to the needs of the case ...................7

                2.      The subpoenas require disclosure of information
                        protected by the doctrines of financial privilege and
                        confidential commercial information .........................9

                3.      The subpoenas are unduly burdensome and harassing.............10

        D.      Conclusion..........................................................................10

IV.     PLAINTIFF'S ARGUMENTS ......................................................11

        A.      Subpoena to BBVA Compass ...........................................11

                1.      The documents requested from BBVA Compass Bank
                        are not privileged ...................................................11

                2.      The checks written on the BBVA account are highly
                        relevant ..................................................................12

JOINT STATEMENT RE DISCOVERY DISAGREEMENT

3. The BBVA checks are not trade secrets ...................................15

4. There is no valid basis for a protective order...........................16

B. Subpoena to Wells Fargo Bank...........................................................16

1. The documents requested from Wells Fargo are not privileged..................................................................................17

2. The documents requested from Wells Fargo are highly relevant......................................................................................17

3. The Wells Fargo bank statements and checks are not trade secrets .........................................................................19

4. There is no valid basis for a protective order...........................20

2:17-CV-00820-KJM-CKD

JOINT STATEMENT RE DISCOVERY DISAGREEMENT

1

## <u>TABLE OF AUTHORITIES</u>

2

3 **Cases**

4 *Alper v. United States*, 190 F.R.D. 975
   190 F.R.D. 975 (D. Mass. 2000)............................................................ 7

5 *Concord Boat Corp. v. Brunswick Corp.*
   169 F.R.D. 44 (S.D.N.Y. 1996) ........................................................... 7

6 *Davis v. Leal*, 43 F. Supp. 2d 1102 (E.D. Cal. 1999)……………………………....6

7 *Foltz v. State Farm Mutual Auto. Ins. Co.*
   331 F.3d 1122 (9th Cir. 2003) ............................................................ 5

8 *Fortunato v. Superior Court*
9    114 Cal. App. 4th 475 (2003) .................................................6, 9, 12

10 *Haworth, Inc. v. Caruthers-Wallace Coutenay, Inc.*
    998 F.2d 975 (Fed. Cir. 1993) ............................................................ 7

11 *Lectroalarm Custom Sys., Inc. v. Pelco Sales, Inc.*
    212 F.R.D. 567 (E.D. Cal. 2002) ......................................................... 5

12 *Miller v. Ghirardelli Chocolate Co.*
    No. C 12-4936 LB, 2013 WL 6774072 (N.D. Cal. 2013) ..............................6, 10
13
14 *Nutratech Inc. v. Syntech (SSPF) Int'l, Inc.*
    242 F.R.D. 552 (C.D. Cal. 2007) .....................................................6, 10

15 *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*
    307 F.3d 1206 (9th Cir. 2002) ............................................................ 5

16 *Premium Serv. Corp. v. Sperry & Hutchinson Co.*
    511 F.2d 225 (9th Cir. 1975) ............................................................ 6

17 *Richard of Rockford, Inc. v. Pacific Gas & Elec. Co.*
    71 F.R.D. 388 (N.D. Cal. 1993)........................................................... 7

18 *SCC Acquisitions, Inc. v. Superior Court*
19    243 Cal. App. 4th 741 (2015) ...................................................6, 12, 17

20 *Travers v. Shalala*, 20 F.3d 993 (9th Cir. 1994)......................................5

21 *Valley Bank of Nevada v. Superior Court*
    15 Cal.3d 652 (1975)........................................................................6, 12

**Statutes**

22 Cal. Corp. Code. § 17704.10........................................................15, 19

23 Fed. R. Civ. Proc. 26..................................................................... 5-6

24 Fed. R. Civ. Proc. 45....................................................................7, 11

25

26

27

28

JOINT STATEMENT RE DISCOVERY DISAGREEMENT

I.     **INTRODUCTION**

Pursuant to Rule 251 of the Local rules of the United States District Court for the Eastern District of California, plaintiff John Marshall ("Plaintiff") and defendants Daniel P. Galvanoni, DPG Investments, LLC, DPG Golden Eagle, LLC, Spring Tree Lending, LLC, Spring Tree Holdings, LLC, Spring Tree Financial, LLC, and Skibo Holdings, LLC (collectively "Defendants") hereby submit this Joint Statement re Discovery Disagreement.

This discovery dispute arises from Defendants' Motion for Protective Order regarding the third-party subpoenas issued by Plaintiff to Wells Fargo Bank, National Association ("Wells Fargo") and BBVA Compass Bancshares, Inc. ("BBVA").

II.    **DISCOVERY DISPUTES**

Defendants object to both subpoenas in their entirety.  The subpoenas provide as follows:

A.     **Subpoena Duces Tecum to Wells Fargo Bank**

The subpoena to Wells Fargo Bank, National Association commands production of the following documents:

"1.    All bank statements for all accounts of Spring Tree Lending, LLC for the period of June 1, 2015 – July 31, 2016.

2.     All checks of $1,000 or more written on any accounts of Spring Tree Lending, LLC for the period of June 1, 2015 – July 31, 2016.

3.     All bank statements for all accounts of Spring Tree Holdings, LLC for the period of June 1, 2015 – July 31, 2016.

4.     All checks of $1,000 or more written on any accounts of Spring Tree Holdings, LLC for the period of June 1, 2015 – July 31, 2016.

5.     All bank statements for all accounts of Spring Tree Financial, LLC for the period of June 1, 2015 – July 31, 2016.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

6.     All checks of $1,000 or more written on any accounts of Spring Tree Financial, LLC for the period of June 1, 2015 – July 31, 2016.

7.     All bank statements for all accounts of Skibo Holdings, LLC for the period of June 1, 2015 – July 31, 2016.

8.     All checks of $1,000 or more written on any accounts of Skibo Holdings, LLC for the period of June 1, 2015 – July 31, 2016.

9.     All bank statements for all accounts of Golden Eagle Lending, LLC for the period of June 1, 2015 – July 31, 2016.

10.     All checks of $1,000 or more written on any accounts of Golden Eagle Lending, LLC for the period of June 1, 2015 – July 31, 2016."

**B.    Subpoena Duces Tecum to BBVA Compass**

The subpoena to BBVA Compass Bancshares, Inc. commands the production of: "Copies of all checks issues from the account of DPG Golden Eagle, LLC (Acct# 6730216716) on 7/22/15, 7/24/15, 8/19/15, 9/9/15, 1/15/16, 2/12/16, 2/22/16, 2/24/16, 2/29/16, 3/4/16 and 3/9/16."

## III.   **DEFENDANTS' ARGUMENTS**

### A.   Procedural History

This case arises from an investment agreement between Plaintiff and Defendants between June 2015 and March 2016.  (ECF No. 47 at ¶¶ 28-43; Declaration of Bradford Hughes ("Hughes Decl.") ¶ 4.)  Plaintiff's Second Amended Complaint ("SAC") alleges that Defendants breached various duties owed to Plaintiff arising out of his investments with Defendants.  (*Id.*)  The parties have engaged in extensive discovery consisting of written interrogatories, requests for production of documents, depositions, and the issuance of subpoenas.  (Hughes Decl. ¶ 5.)  Fact discovery was scheduled to close on June 14, 2019.  (ECF No. 81; Hughes Decl. ¶5.)

//

//

### 1.      Plaintiff Issues Subpoenas to Wells Fargo Bank and BBVA Compass

On May 8, 2019, Plaintiff issued two subpoenas *duces tecum* to Wells Fargo Bank, National Association ("Wells Fargo") and BBVA Compass Bancshares, Inc. ("BBVA").  (Hughes Decl. ¶ 6-7.)  The subpoena to Wells Fargo seeks "all bank statements for all accounts" of Spring Tree Lending, Spring Tree Holdings, Spring Tree Financial, Skibo Holdings, and Golden Eagle Lending, as well as "all checks of $1,000.00 or more written on any accounts" of these entities from June 1, 2015 through July 31, 2016.  (Hughes Decl. ¶ 6, Ex. A.)  The subpoena to BBVA seeks "[c]opies of all checks issued from the account of DPG Golden Eagle, LLC" on eleven dates.  (Hughes Decl. ¶ 7, Ex. B.)  Both subpoenas require production on June 7, 2019.  (Hughes Decl. ¶ 6-7.)

### 2.      The Subpoenas Seek Information That Plaintiff Had Not Previously Sought Through Party Discovery

Plaintiff had not previously requested the information sought by the subpoenas to Wells Fargo and BBVA.  (Hughes Decl. ¶ 7a, Ex. C.)  Rather, by way of written Requests for Production to each defendant, Plaintiff  requested "[e]ach and all of [Defendants'] bank account statements for the period of January 1, 2015 through the present."  (*Id*.)  Plaintiff made no requests for checks written from Defendants' bank accounts.  (*Id*.)

On November 8, 2018, Defendants objected to these requests as overbroad in time and scope, burdensome and oppressive, and not proportional to the needs of the case.  (Hughes Decl. ¶ 7b, Ex. D.)   Plaintiff did not respond to Defendants' objections until May 8, 2019, at which time Plaintiff provided a meet and confer letter refusing to narrow the scope of the request.  (Hughes Decl. ¶ 7c, Ex. E.)

### 3.      Defendants Object to Both Subpoenas

On May 22, 2019, Defendants served objections to both subpoenas. (Hughes Decl. ¶ 8, Ex. F.)

With respect to the Wells Fargo subpoena, Defendants objected to each

JOINT STATEMENT RE DISCOVERY DISAGREEMENT

demand for bank statements on the grounds that they require the production of financial information that is confidential and/or privileged, and that they are overbroad, irrelevant, unduly burdensome, oppressive, and not reasonably calculated to lead to the discovery of admissible evidence to the extent they seek "all bank statements for all accounts" of the identified entities and are not specific to Plaintiff's transactions with these entities.  (*Id.*)  Defendants also objected to each demand for checks of $1,000 or more on the ground of financial privilege and/or confidentiality, as well as overbreadth, irrelevance, undue burden, oppression, and likelihood to lead to the discovery of admissible evidence to the extent these requests are not limited to Plaintiff's transactions with the identified entities, but, rather, require the production of financial records pertaining to any and all customers of the identified entities during the specified time period.  (*Id.*)

Defendants also objected to the subpoena of BBVA on the grounds of confidentiality and/or financial privilege to the extent the subpoena required production of Defendants' private financial information, and on the grounds of overbreadth, relevance, undue burden, oppression, and likelihood to lead to the discovery of admissible evidence to the extent the subpoena is not specific to Plaintiff's financial transactions with DPG Golden Eagle and requires the production of DPG Golden Eagle's financial records pertaining to any and all of its customers during the specified time period.  (*Id.*)

### 4. The Parties Meet and Confer Regarding Both Subpoenas

On May 28, 2019, counsel for Defendants delivered a meet and confer letter to Plaintiff's counsel.  (Hughes Decl. ¶ 9, Ex. G.)  Defendants reiterated their objections and requested that the subpoenas be withdrawn or, in the alternative, narrowed in scope to include only Plaintiff's financial transactions with the entities referenced in the subpoenas.  (*Id.*)

On June 5, 2019, Plaintiff's counsel responded to Defendants' objections. (Hughes Decl. ¶ 10, Ex. H.)  Plaintiff stated that the subpoena to BBVA was

withdrawn because it was incorrectly issued to "BBVA Compass Bancshares, Inc.," but that they "will soon be issuing a subpoena to [the correct entity,] BBVA Compass." (*Id.*)  Plaintiff also responded that the subpoena to BBVA seeks information relevant to establishing Defendants' use of invested funds, and that this information does not include customer information and is not protected by financial privilege. (*Id.*)  Plaintiff similarly responded that the subpoena to Wells Fargo seeks information relevant to establishing Defendants' use of invested funds; that the subpoena does not seek customer information; and that the information is not protected by financial privilege. (*Id.*)  Plaintiff ultimately declined to withdraw or modify the subpoenas. (*Id.*)

Defendants filed the instant Motion for Protective Order on June 5, 2019. (ECF 98.)

## B.    A Protective Order Is Appropriate to Prevent Disclosure of Defendants' Protected Information

Protective orders are proper when there is "good cause" to protect a party of person from annoyance, embarrassment, oppression, or undue burden or expense. F.R.C.P. 26(c)(1).  Good cause exists when a specific prejudice or harm will result if no protective order is granted.  *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1210-1211 (9th Cir. 2002); *Foltz v. State Farm Mutual Auto. Ins. Co.*, 331 F.3d 1122, 1131 (9th Cir. 2003).  Courts routinely grant protective orders when the discovery sought is not relevant, and when the discovery is unduly burdensome or harassing.  See *Travers v. Shalala*, 20 F.3d 993, 999 (9th Cir. 1994) (protective order proper to preclude discovery of irrelevant matters pursuant to F.R.C.P. 26(b)(1)); *Lectroalarm Custom Sys., Inc. v. Pelco Sales, Inc.*, 212 F.R.D. 567, 573 (E.D. Cal. 2002) (issuing protective order where "burdensome and harassing nature of the requests clearly outweighs the minimal need" for information requested by subpoena).

Information is relevant when it relates to the claims and defenses of the

parties.  F.R.C.P. 26(b)(1).  Privileged information is not relevant.  F.R.C.P.

26(b)(1).  Whether information is protected is determined by state law in federal

diversity actions.  *Davis v. Leal*, 43 F. Supp. 2d 1102, 1108 (E.D. Cal. 1999).  In

California, financial information, including tax returns, check, and bank

statements, is protected by the right to privacy and therefore presumptively

privileged.[1]  *Valley Bank of Nevada v. Superior Court*, 15 Cal.3d 652, 657 (1975);

*Fortunato v. Superior Court*, 114 Cal. App. 4th 475, 480 (2003) ("[T]here is a right

to privacy in confidential customer information *whatever* form it takes, whether

that form be tax returns, checks, statements, or other account information")

(original emphasis).  Internal financial information, such as pricing, sales and

revenue data, is also protected as confidential commercial information.  See *Miller

v. Ghirardelli Chocolate Co.*, No. C 12-4936 LB, 2013 WL 6774072, at *4 (N.D.

Cal. Dec. 20, 2013) (granting motion to quash subpoena seeking confidential

pricing information); *Nutratech, Inc. v. Syntech (SSPF) Int'l, Inc.*, 242 F.R.D. 552,

555 fn. 4 (C.D. Cal. 2007) (finding sales and revenue information is confidential

commercial information).

Relevant information must also be proportionate to the needs of the case,

taking into consideration the importance of the issues at stake, the amount in

controversy, the parties' resources and access to relevant information, the

importance of discovery in resolving the issues, and whether the burden or expense

of the proposed discovery outweighs its likely benefit.  *Id*; *Premium Serv. Corp. v.

Sperry & Hutchinson Co.*, 511 F.2d 225, 229 (9th Cir. 1975) (the court must

balance the needs of party requesting discovery against burden imposed by

---

[1] In California, corporate entities are afforded privacy rights, albeit to a lesser degree than individuals.  Indeed, the very authority cited by Plaintiff for the proposition that corporations are not afforded privacy rights states, "While corporations do have a privacy right, it is not a constitutional right."  *SCC Acquisitions, Inc. v. Superior Court*, 243 Cal. App. 4th 741, 756 (2015).  The difference is merely the degree of protection.  *Id*.  The principals underlying financial privilege are therefore also applicable to corporations and are proper grounds for objection to the instant subpoenas.

subpoena).

When analyzing the burden imposed by a subpoena, courts take into account such factors as the breadth and particularity of the document request, relevance, and the need of the party for the requested documents.  F.R.C.P. 45(d)(3)(iv); *Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 53 (S.D.N.Y. 1996).  In general, litigants must seek discovery from the parties before attempting to burden non-parties with discovery requests by way of a subpoena.  *Haworth, Inc. v. Caruthers-Wallace Coutenay, Inc.*, 998 F.2d 975, 978 (Fed. Cir. 1993); *Alper v. United States*, 190 F.R.D. 281 (D. Mass. 2000); *Richard of Rockford, Inc. v. Pacific Gas & Elec. Co.*, 71 F.R.D. 388, 391 (N.D. Cal. 1993).

   **C.     The Subpoenas Seek Information That Is Protected By Financial Privilege and Is Not Relevant or Proportional to the Needs of the Case**

A protective order is proper because the subpoenas to Wells Fargo and BBVA requires the disclosure of information protected by financial privilege and/or confidentiality, which is not relevant or proportional to the needs of the case, and sought solely for the purposes of harassing Defendants.

   **1.     The subpoenas seek irrelevant information that is disproportionate to the needs of the case**

Good cause exists for a protective order because the subpoenas to Wells Fargo and BBVA are overbroad on their face and are therefore, not directly relevant to this case.  Further, there is no compelling public interest in the subpoenas because the information they request could be obtained from the parties through written discovery.

   **a.     The subpoenas are facially overbroad and do not seek information relevant to the case**

As written, the subpoenas seek "*all* bank statements for *all* accounts," "*all* checks of $1,000 or more written on *any* accounts," and "*all* checks issued" during the specified time period (emphasis added).  These requests are therefore overbroad on their face, as they are not limited to the disputed transactions

between Plaintiff and Defendants.  Compliance with the subpoenas as written requires the production of unredacted bank statements and all checks written from Defendants' accounts to any person or entity during the specified time period, essentially disclosing Defendants' entire financial history during a fourteen-month period.  Such information is overbroad because it necessarily encompasses information unrelated to the transactions disputed by Plaintiff and therefore has no bearing on the claims or defenses raised by Plaintiff or Defendants.  The subpoenas, therefore, are not relevant to this action as they necessarily encompass information that has no bearing on the claims and defenses at issue in the underlying action.  A protective order is therefore proper because the subpoenas, as written, seek information that is irrelevant to the instant action.

**b.**     **There is no compelling need for the subpoenas because the information requested could be obtained from the parties**

Even if the information sought was relevant, which it is not, Plaintiff is further unable to demonstrate a need sufficient to justify the subpoenas because the information could be obtained from Defendants by way of specific and narrowly tailored written request for production of documents.  To date, Plaintiff has not requested from Defendants any of the information he seeks by way of the subpoenas (Hughes Decl. ¶ 7a-c), ostensibly because he knows that such requests would draw appropriate objections.  Rather, Plaintiff issued only  requests seeking "[e]ach and all of your bank account statements for the period of January 1, 2015 through the present." (Hughes Decl. ¶ 7a.)  No requests were made as to checks written from Defendants' accounts (*id.*), again, in order to avoid Defendants serving their appropriate and lawful objections.

The fact that Plaintiff issued one broad request to Defendants to obtain a category of documents generally overlapping with those sought by the subpoenas does not evidence a compelling need for the subpoenas.  Defendants need not comply with unlawfully overbroad requests, as such requests constitute an abuse of

8

the discovery process.  Moreover, Plaintiff's failure to narrow this request during the meet and confer process demonstrates bad faith.  A party cannot issue overbroad discovery requests to the parties, only to create a manufactured basis for an overbroad subpoena to a third party.  The proper vehicle for Plaintiff to obtain Defendants' financial records is still by way of written discovery requests to the Defendants. Indeed, Plaintiff knows this, but does not want to endeavor to establish why such information is relevant, thus why Plaintiff elected not to meet and confer regarding Defendants prior discovery responses. The fact that Plaintiff's initial request was overbroad does not preclude Plaintiff from narrowing the request or serving a supplemental request to obtain documents omitted from the initial requests and does not provide a basis for an improper and overbroad subpoena as a work around to their discovery obligations and Defendants' rights.

The subpoenas to Wells Fargo and BBVA are therefore improper, and the Court should issue a protective order.

### 2. The subpoenas require disclosure of information protected by the doctrines of financial privilege and confidential commercial information

The subpoenas to Wells Fargo and BBVA, even if relevant, require the disclosure of protected financial information.  By their terms, the subpoenas seek all "bank statements" and copies of checks during the time periods requested— information explicitly protected by the California doctrine of financial privilege. *Fortunato v. Superior Court*, *supra* at 480.  Indeed, as requested the subpoena would also require copies of checks issued to any other individual, employee, or contractor, in contravention of those individuals right to financial privacy.

No exception to this privilege applies to the present case, and Defendants have not waived this privilege because they have not previously produced any of the requested records.  Moreover, Defendants' bank statements and reproduction of checks issued from their bank accounts constitute confidential commercial information.  As with pricing and sales revenue, bank statements and check

JOINT STATEMENT RE DISCOVERY DISAGREEMENT

reproductions necessarily reveal business patterns and practices, which courts have recognized to be confidential information.  See *Miller*, *supra*, at *4; *Nutratech*, *supra*, at 555.  Disclosure of each defendant-entity's financial records without limitation to the transactions disputed by this action will necessarily reveal confidential information such as customer names, business partners, and the frequency and amount of transactions.  Public disclosure of this confidential will significantly undermine Defendants' competitive advantage by making the information public and therefore accessible to any and all of Defendants' competitors.

A protective order is therefore necessary to the extent the subpoenas are not limited to Plaintiff's transactions with Defendants.

### 3.      The subpoenas are unduly burdensome and harassing

The nature of the subpoenas to Wells Fargo and BBVA makes clear that the subpoenas are unduly burdensome and harassing.  As the language of the subpoenas makes clear, these subpoenas seek information that is both explicitly protected by financial privilege and is irrelevant to the claims and defenses at issue in this action.  Inasmuch as the information has no relevance to the instant action, is apparent that Plaintiff's intent is solely to harass, embarrass, and burden Defendants by seeking a comprehensive disclosure of their financial history.  This is beyond the permissible scope of discovery, and a protective order is therefore necessary.

### D.      Conclusion

Defendants are entitled to a protective order pertaining to the subpoenas issued to Wells Fargo and BBVA to prevent the disclosure of Defendants' privileged and/or confidential information.  Specifically, Defendants request that the subpoena *duces tecum* to Wells Fargo be limited to production of all bank statements for the accounts of the identified defendant-entities, redacted to reflect each entity's transactions with plaintiff John Marshall only, and to production of

all checks issued to or from John Marshall during the specified time period.

Defendants further request that the subpoena *duces tecum* issued to BBVA

Compass Bancshares be limited to production of all checks issued to or from John

Marshall only.

## IV.   PLAINTIFF'S ARGUMENTS

### A.   Subpoena to BBVA Compass

The subpoena to BBVA Compass Bank ("BBVA") seeks the production of

twelve checks issued from the bank account of Defendant DPG Golden Eagle,

LLC ("DPG-GEL") at BBVA on eleven specified dates in 2015 and 2016.  (Exh. 1

to Declaration of Melinda Jane Steuer ("Steuer Decl."))  The dates and amounts of

those checks are identified in the bank statements from BBVA that were

previously produced in this case by Plaintiff, Defendants, and/or third-party

Westley Anderson, who was the Chief Operating Officer for Defendant DPG-GEL

during the relevant time frame.  (Steuer Decl. ¶ 4; Exh. 15 to Steuer Decl. at p.

19:7-12)  As discussed further herein, these checks are highly relevant to show that

a significant portion of the monies which Plaintiff provided to Defendants for

investment were instead withdrawn by Daniel Galvanoni for his personal use

and/or used to make payments to other insiders and/or investors.  Such information

shows fraudulent conduct, breach of fiduciary duty, negligence, and breach of

contractual obligations.  Further, Plaintiff is an equity investor in the Defendant

entities and therefore has a right to the disclosure of their financial information, in

any event.

### 1.   The documents requested from BBVA Compass Bank are not privileged

A third party has standing to move to quash a subpoena if it requires the

disclosure of privileged or other protected matter, or subjects a person to undue

burden.  (F.R.C.P. 45(c)(3)(A)(iii)(iv).)  Here, there is no applicable privilege

because the checks that Plaintiff is seeking were written on the bank account of a

corporate entity, DPG-GEL.  Corporate entities do not have any constitutionally protected privacy rights.  (*SCC Acquisitions, Inc. v. Superior Court,* 243 Cal. App.4th 741, 755-756 (2015).)

*Valley Bank of Nevada v. Superior Court,* 15 Cal.3d 652 (1975), cited by Defendants, is inapposite because it concerned an individual customer's bank records, not those of a corporate entity.  Further, *Valley Bank* does not provide for an absolute privilege as to bank records, but rather for a qualified privilege which balances the relevance of the information sought against the privacy rights of the individual bank customers.  (*Id.* at 656-658.)  Defendants' reliance on *Fortunato v. Superior Court,* 114 Cal. App.4th 475, 480 (2003) is equally misplaced.  *Fortunato* holds only that tax returns are privileged under California law.  The subpoena to BBVA does not seek any tax returns.

In short, there is no recognizable privilege which justifies quashing or modifying the subpoena to BBVA for checks written on the account of DPG-GEL.

Lastly, any purported privilege was waived by the fact that a) several of the bank statements from BBVA were provided to Plaintiff by the Defendant entities before this action was filed; b) Defendants produced several bank statements from BBVA; and c) Mr. Anderson produced all of the bank statements from BBVA pursuant to a subpoena, without any objection from Defendants.  (Steuer Decl. ¶¶ 4-5; Declaration of John Marshall ("Marshall Decl.") ¶ 2.)

## 2.   The checks written on the BBVA account are highly relevant

Plaintiff wire transferred $175,000.00 into DPG-GEL's bank account with BBVA in June of 2015.  (Marshall Decl. ¶ 3; Exh. 3 to Steuer Decl.)  Plaintiff wire transferred another $25,000 into DPG-GEL's bank account with BBVA in August of 2015.  (Marshall Decl. ¶ 3; Exh. 5 to Steuer Decl.)  Plaintiff wire transferred another $100,000.00 into DPG-GEL's bank account with BBVA in February and March of 2016.  (Marshall Decl. ¶ 3; Exhs. 11 and 12 to Steuer Decl.)  Plaintiff

believed, and Mr. Anderson testified, that those monies were supposed to be transferred to Skibo Holdings, LLC ("Skibo") and/or Spring Tree Lending, LLC ("STL") to buy sub-prime automobile loans.  (Marshall Decl. ¶ 3; Exh. 15 to Steuer Decl. at pp. 68:9-70:4, 118:23-119:5)   However, the BBVA bank statements reflect that much of the monies that Plaintiff and others wired into DPG-GEL were not transferred to Skibo and/or STL, and were instead used to pay other investors and/or insiders, or to write checks on the account.  (Exhs. 4, 5, 6, 10, 11 and 12 to Steuer Decl.; Exh. 15 to Steuer Decl. at pp. 119:21-120:4))  Defendant Daniel Galvanoni ("Galvanoni") has admitted that at least $40,000.00 of those checks were made out to him.   (Exh. 14 to Steuer Decl.)  Mr. Anderson also testified that most, if not all, of those checks were made out to Galvanoni.  (Exh. 15 to Steuer Decl. at pp. 154:17-156:25, 161:2-12)

Specifically, on February 11, 2016, Plaintiff wired $25,000.00 into the DPG-GEL bank account at BBVA Compass.  (Exh. 11 to Steuer Decl.)  The following day, two checks totaling $14,000.00 were written on the DPG-GEL account.  (Exh. 11 to Steuer Decl.)

On February 22, 2016, Plaintiff wired another $25,000.00 into the DPG-GEL account.  (Exh. 11 to Steuer Decl.)  That same day, a check for $8,000.00 was written on the DPG-GEL account.  (Exh.11 to Steuer Decl.)   On February 24, 2016, a check for $3,200.00 was written on the DPG-GEL account.  (Exh. 11 to Steuer Decl.)

 On February 29, 2016, Plaintiff wired another $25,000.00 into the DPG-GEL account. (Exh. 11 to Steuer Decl.)  That same day, a check for $8,250.00 was written on the account.  (Exh. 11 to Steuer Decl.)  On March 4, 2016, another check for $8,000.00 was written on the DPG-GEL account.   (Exh. 12 to Steuer Decl.)

On March 7, 2016, Plaintiff wired $25,000.00 into the DPG-GEL account.  (Exh. 12 to Steuer Decl.)  On March 9, 2016, a check for $30,000.00 was written

on the DPG account.   (Exh. 12 to Steuer Decl.)

In total, $71,450.00 of the $100,000.00 that Plaintiff wired into DPG-GEL in February and March of 2016 were used to write checks on the account, rather than being transferred to Skibo and/or STL.[2]   (Exhs. 11 and 12 to Steuer Decl.)  On August 9, 2016, an individual named Holly, who appears to have been affiliated with Spring Tree Financial ("STF") sent an email to Galvanoni asking about three of those checks.  (Exh. 14 to Steuer Decl.)   Galvanoni responded: "40k is at least expenses I was covering that got reimbursed over 6 months-9 months".   (Exh. 14 to Steuer Decl.)

The production of the foregoing checks will show the exact amount of monies which Galvanoni withdrew from DPG-GEL from the monies Plaintiff had wired; who else, if anybody, received those monies; and whether any of the checks to Galvanoni contain a notation regarding their purpose and, if so, what those notations state.   Plaintiff has a right to know how his monies were used, whether some or all of the monies that he believed he was investing were withdrawn by Galvanoni or used for other purposes than investment, and the amount of his monies that were taken by Galvanoni and/or other insiders.

Likewise, on August 12, 2015, Plaintiff wired $25,000.00 into the DPG-GEL account at BBVA.  (Exh. 5 to Steuer Decl.)  On August 19, 2016, a check was written on the DPG-GEL account for $14,250.00.  (Exh. 5 to Steuer Decl.)  Production of this check is relevant to show the recipient of those monies, and whether those monies were withdrawn by Galvanoni or another insider, and/or the purpose for which Plaintiff's monies were used.

Checks were also written on the DPG-GEL account at BBVA on July 22, 2015, July 24, 2015, September 9, 2015 and January 1, 2015, for the total amount

---

[2]   Another $20,500.00 of Plaintiff's monies were used to make payments to DPG insiders, including Mr. Galvanoni's brother.  (Exh. 12)  An additional $15,000.00 from Plaintiff's monies was used to pay accountants.  (Exh. 12)

of $13,650.00.  (Exhs. 4, 6 and 10 to Steuer Decl.)  Production of those checks is relevant to show whether these monies were also withdrawn by Galvanoni and/or other insiders rather than being used for the sub-prime automobile loan business.

In short, production of the twelve checks written on the BBVA account of DPG-GEL will show that much of Plaintiff's monies and the monies invested by others were not actually invested into the automobile sub-prime loan business, but were instead withdrawn by Galvanoni and/or other company insiders for their personal use.

Further, Plaintiff was and continues to be an equity investor and/or member of the Defendant entities.  (Exh. 15 to Steuer Decl. at pp. 95:23-97:9, 111:2-5 ,128:18-23; Marshall Decl. ¶ 4)   As such, he is entitled to the disclosure of the entities' financial information, including checks written on the account into which he wired his monies.  (Cal. Corp. Code § 17704.10)

### 3.    The BBVA checks are not trade secrets

Defendants assert that the checks written on the BBVA account include confidential pricing, sales and/or revenue information.  That is not the case. Plaintiff is simply seeking checks written on the bank account into which he wired $300,000.00.  Defendants' assertion is particularly disingenuous because DPG-GEL did not do any business, nor have any employees.  (Exh. 15 to Steuer Decl. at pp. 23:25-25:13, 60:6-13, 63:14-21)   On the contrary, DPG-GEL was a shell entity whose sole purpose was to serve as a holding company for Skibo and Spring Tree Holdings, LLC ("STH").   (Exh. 15 to Steuer Decl. at pp. 23:25-25:13, 60:6-13, 63:14-21)

Moreover, if the checks were trade secrets, then the appropriate remedy would be to label them as confidential in accordance with the stipulated protective order executed by counsel that has been submitted to the court, not withhold them from Plaintiff.

### 4.      There is no valid basis for a protective order

Defendants' motion also fails because the grounds for a protective order are not met here.  The production of twelve specified checks written over a nine-month time frame is hardly oppressive, unduly burdensome, and/or expensive, especially since Defendants are not being tasked with that production.   Further, the checks are highly relevant for the reasons stated above.

Accordingly, Plaintiff has the right to subpoena them from the bank on whose account they were written, and who has possession, custody and control of those documents or copies thereof.

### B.      Subpoena to Wells Fargo Bank

The subpoena to Wells Fargo Bank seeks the production of bank statements for Defendants STL, STH, STF, Skibo, and Golden Eagle Lending, LLC ("GEL") from June, 1, 2015 to July 31, 2016, and of checks of $1,000.00 or more that were written on those accounts during the foregoing time frame.  (Exh. 2 to Steuer Decl.)  Plaintiff wired the first installment of his monies to Defendants in June of 2015, and the last installment in March of 2016.  (Marshall Decl. ¶ 3; Exhs. 3 and 12 to Steuer Decl.)  As discussed further below, the requested documents are highly relevant to show how Plaintiff's monies were used, whether any of Plaintiff's monies were invested into Defendants' automobile sub-prime loan business, the extent to which Plaintiff's monies and the monies of others were siphoned off by Galvanoni and/or other insiders, the profitability of the Defendant entities, and that the Defendant entities were alter egos of each other.  Plaintiff has ascertained that the foregoing entities had accounts with Wells Fargo Bank during the relevant time frame because a handful of bank statements for STF were produced in this case, along with a couple of spreadsheets that identified the entities' accounts as being at Wells Fargo.  (Steuer Decl. ¶ 8)

//

//

### 1.     The documents requested from Wells Fargo are not privileged

As previously discussed, there is no applicable privilege which warrants quashing or modifying the subpoena to Wells Fargo Bank because the subpoena only seeks bank records of corporate entities, who do not have any constitutionally protected privacy rights.   (*SCC Acquisitions, supra,* 243 Cal. App.4th at 755-756.)

Further, any purported privilege as to STF was waived by the production of some of its bank statements in this case.   (Steuer Decl. ¶ 8)

### 2.     The documents requested from Wells Fargo are highly relevant

The requested documents are highly relevant for several reasons.  First, the BBVA bank statements for June of 2015 and July of 2015 reflect that the $175,000.00 which Plaintiff wired to DPG-GEL in June of 2015 was then wired to Skibo, as were most of the monies invested by others during that time frame. (Exhs. 3 and 4 to Steuer Decl.)  The BBVA bank statements also reflect that a portion of the monies which Plaintiff wired to DPG-GEL in August of 2015 were subsequently wired to Skibo.  (Exh. 5 to Steuer Decl.)  The account statements and checks for Skibo are highly relevant to show how those monies were used once they were wired to Skibo's bank account.  Such documents would show whether any of those monies were used to purchase sub-prime automobile loans.  The responsive documents would also show whether Galvanoni and/or other insiders withdrew any, or all, of those monies for themselves.  Plaintiff has valid justification to believe that could be the case because it appears that most or all of the monies that he wired to DPG-GEL in August of 2015 and February and March of 2016 were withdrawn by Galvanoni or used to make payments to insiders and/or other investors.  (Exhs. 11, 12 and 14 to Steuer Decl.)

The Skibo account statements are also relevant to show how monies that DPG-GEL received from other investors were used, and whether any of those monies were used to buy sub-prime automobile loans, or were withdrawn by

Galvanoni and other insiders, or were used to make payments to Galvanoni, other insiders and/or personal creditors of Galvanoni's.

The same is true with respect to the STL account statements.  Specifically, the BBVA bank statements reflect that monies that were wired in by others into DPG-GEL in December of 2015 and March of 2016 were then wired to STL. (Exhs. 9, 10 and 13 to Steuer Decl.)  The STL account statements will show how those monies were used, and whether any of those monies were used to buy sub-prime automobile loans or were also withdrawn by Galvanoni and/or other insiders.

The requested documents are also relevant to show the profitability of the subprime loan business during the relevant time frame and how those revenues were used.  Plaintiff was told at the time, and Mr. Anderson testified at his deposition, that the revenues from the sub-prime automobile loan portfolio exceeded the expenditures of the Spring Tree entities who were operating the portfolio.  (Marshall Decl. ¶ 5; Exh. 15 to Steuer Decl. at pp. 86:12-87:10, 150:9-12)  The requested documents would show whether that was the case, and the extent to which the revenues of the portfolio exceeded operating expenses.  The requested documents would also show how profits were used, and whether some or all of the profits were withdrawn by Galvanoni and/or other insiders and/or used for their benefit.  Such information is directly relevant to refute Defendants' assertions that the sub-prime automobile loan business did not have sufficient revenues to repay Plaintiff.  Such information would also support Plaintiff's claims that Defendants chose to keep all the business profits for themselves or to use the profits to pay other investors, rather than to repay Plaintiff any portion of the monies that he wired to Defendants.

The requested documents as to Skibo and GEL are also relevant to show Defendants' lack of due diligence with respect to the Skibo entities, which include GEL.  Specifically, such documents would show whether Defendants knew or

reasonably should have known material information regarding Skibo's and GEL's operations and finances, that were apparent from their bank statements and checks, that they did not disclose to Plaintiff, or which they misrepresented to Plaintiff.

The requested documents are also relevant to support Plaintiff's claims that the Defendant entities are alter egos of each other.  Specifically, the requested documents would show whether Skibo and/or STL transferred any of the monies that they received from DPG-GEL to another Defendant entity or to Galvanoni or to other insiders, when such transfers occurred, and whether any consideration was received for such transfers.  The requested documents would show whether the Defendant entities intermingled funds, whether one or more of the Defendant entities was under-capitalized at all relevant times, and whether corporate formalities were followed with respect to the transfer of monies between and among the Defendant entities.

Further, as discussed above, Plaintiff was an equity investor and/or member of the Defendant entities.  (Exh. 15 to Steuer Decl. at pp. 95:23-97:9, 111:2-5 ,128:18-23; Marshall Decl. ¶ 4)   Accordingly, he is entitled to the disclosure of their financial information, including bank records and checks written on their bank accounts.   (Cal. Corp. Code § 17704.10)

### 3.    The Wells Fargo bank statements and checks are not trade secrets

As previously discussed, Plaintiff is simply seeking bank statements and checks written on the bank accounts of $1,000.00 or more, over a thirteen-month time frame which encompasses the time when he invested with Defendants.  Bank statements and checks are clearly not confidential trade secrets of Defendants.  Defendants' assertion is also disingenuous because most of the entities did not do any business nor have any employees.  Specifically, STH was a shell entity whose sole purpose was to serve as a holding company for STF and STL.  (Exh. 15 to Steuer Decl. at pp. 42:10-21, 60:6-13, 63:14-21, 70:9-11, 115:12-15)  Likewise,

Skibo did not hold any loans, and was merely a holding company for GEL. (Exh. 15 to Steuer Decl. at p. 46:15-18) STL did not have any employees. (Exh. 15 to Steuer Decl. at p. 61:7-12) STL's only purpose was to buy loans. (Exh. 15 to Steuer Decl. at p. 70:1-8)

In short, the only entities in question who appear to have done any business, or had any employees and/or customers, were GEL and STF, who serviced the loans. (Exh. 15 to Steuer Decl. at pp. 46:15-18, 70:1-8) The subpoena does not seek any customer information as to those two entities, because it does not request any of the checks that were deposited into any accounts. It is only seeking the bank statements, and checks written on the accounts of $1,000.00 or more. Further, in the unlikely event that bank statements and/or checks written by those entities were to contain any confidential business information, then the appropriate remedy would be to designate them as confidential in accordance with the stipulated protective order executed by counsel, not to withhold them from Plaintiff.

### 4. There is no valid basis for a protective order

Defendants' motion also fails because the grounds for a protective order are not met here. The subpoena is limited to a thirteen-month time frame, and only seeks bank statements and checks of $1,000.00 or more. Most importantly, it is directed to a third party, not to Defendants. Accordingly, there is no valid basis for a protective order because no burden or expense is being imposed upon Defendants as a result of this subpoena.

//
//
//
//
//
//

JOINT STATEMENT RE DISCOVERY DISAGREEMENT

1   Respectfully submitted this 19th day of June, 2019.

2

3

4   Dated:  June 19, 2019                    CLARK HILL LLP

5

6                                           By: _____

7                                               Bradford G. Hughes
                                                Tiffany B. Hunter
8
                                            Attorneys for Defendants DANIEL P.
9                                           GALVANONI; DPG INVESTMENTS, LLC;
                                            DPG GOLDEN EAGLE, LLC; SPRING
10                                          TREE LENDING, LLC; SPRING TREE
                                            HOLDINGS, LLC; SPRING TREE
11                                          FINANCIAL, LLC; and SKIBO HOLDINGS,
                                            LLC
12

13  Dated:  June 19, 2019                    LAW OFFICES OF MELINDA JANE
                                            STEUER
14

15

16                                          By: _____

17                                              Melinda Jane Steuer

18                                          Attorney for Plaintiff JOHN MARSHALL

19

20

21

22

23

24

25

26

27

28

JOINT STATEMENT RE DISCOVERY DISAGREEMENT